## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MELODY STOOPS,<br><br>        Plaintiff,<br><br>   vs.<br><br>WELLS FARGO BANK, N.A.,<br><br>       Defendant. | Case No. 3:15-cv-00083-KRG |

## WELLS FARGO BANK, N.A.'S NOTICE OF MOTION AND MOTION FOR
## <u>SUMMARY JUDGMENT AND MEMORANDUM OF POINTS AND AUTHORITIES</u>

## NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

Defendant Wells Fargo Bank, N.A. ("Wells Fargo") hereby moves for judgment on the claims of Melody Stoops ("Plaintiff") pursuant to Rule 56 of the Federal Rules of Civil Procedure.[1]

This Motion is based upon the fact that Wells Fargo is entitled to judgment as a matter of law in this case as Plaintiff intentionally manufactured a sterile statutory violation in a bid to collect penalties, without having suffered actionable harm or an "injury-in-fact" and is otherwise equitably barred from bringing a claim against Wells Fargo under the TCPA.

This motion is based on this notice of motion and motion, the accompanying memorandum of points and authorities, Wells Fargo's Concise Statement of Undisputed Material Facts, Wells Fargo's Appendix In Support of  its Motion for Summary Judgment and the

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[1] Pursuant to Judge Kim Gibson's Chamber Rule II.A., the Court will issue an appropriate order if it deems oral argument necessary.

documents attached thereto, the Complaint, other records on file in this action, and any further

briefs, evidence, authorities, or argument presented before or at the hearing of this motion.

By: _/s/ Divya S. Gupta_ _____
      Divya S. Gupta

Divya S. Gupta, pro hac vice
Eric J. Troutman, pro hac vice
SEVERSON & WERSON
The Atrium
19100 Von Karman Avenue, Suite 700
Irvine, California 92612
Telephone: (949) 442-7110
Facsimile: (949) 442-7118
dsg@severson.com

Martin C. Bryce, Jr. (I.D. No. 59409)
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Telephone: 215.864.8238
Facsimile: 215.864.8999
bryce@ballardspahr.com

Attorneys for Defendant
WELLS FARGO BANK, N.A.

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................1

I. INTRODUCTION ......................................................................................................1

II. SUMMARY OF FACTS—PLAINTIFF HAS EMPLOYED A SOPHISTICATED
     SCHEME TO MANUFACTURE WRONG NUMBER CALLS AND SUE FOR
     THEM .......................................................................................................................1

    A.     Melody Stoops' Scheme to Create TCPA Lawsuits ..................................1

    B.     Wells Fargo Falls Into Plaintiff's Trap .....................................................3

III. WELLS FARGO IS ENTITLED TO JUDGMENT ON PLAINTIFF'S CLAIM AS
     THERE IS NO GENUINE DISPUTE AS TO ANY MATERIAL FACT AND
     WELLS FARGO IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ...............4

    A.     Standard on Rule 56 Motion ......................................................................4

    B.     Plaintiff Manufactured The Very TCPA Claims She Now Sues For ......................5

    C.     Plaintiff Consented to Receive the Calls as a Matter of Law and Admitted
          She Was "Ok With" them Anyway ...........................................................7

        1.     Plaintiff "Gratuitously Created Circumstances that Would Support
            a Legal Claim" and thereby Consented to Calls As a Matter of Law .........7

        2.     Plaintiff "Expressly Consented" to Receipt of the Calls As Well ..............9

    D.     Plaintiff Assumed the Risk of Receiving Calls from an ATDS or an
          Artificial or Prerecorded Voice...............................................................10

    E.     Plaintiff is not a Member of the Class the TCPA was Designed to Protect
          and She Did Not Suffer the Type of Harm the TCPA was Designed to
          Prevent ...................................................................................................13

    F.     Plaintiff Lacks Article III Standing to Assert a Claim...........................16

IV. CONCLUSION......................................................................................................19

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)..................................................................................................4

*Barnes v. Am. Tobacco Co.*,
161 F.3d 127 (3d Cir. 1998)...............................................................................11, 12

*Barrett v. Fredavid Builders, Inc.*,
454 Pa. Super. 162 (Pa. Super. 1996) ...................................................................12

*Beyond Systems, Inc. v. Kraft Foods, Inc.*,
777 F.3d 712 (4th Cir. Feb. 4, 2015) .......................................................1, 7, 8, 9

*Busching v. Sup. Ct.*,
12 Cal.3d 44 (1974) ................................................................................................7

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)................................................................................................4

*Charlton v. Toyota Indus. Equip.*,
714 A.2d 1043 (Pa. Super. 1998)..........................................................................11

*Childers v. Power Line Equip. Rentals, Inc.*,
452 Pa. Super. 94 (1996) ................................................................................11, 12

*Country Vintner of NC v. E. & J. GALLO WINERY*,
718 F. 3d 249 ..........................................................................................................5

*Gager v. Dell Fin. Servs., LLC*,
727 F.3d 265 (3d Cir. 2013).............................................................................10, 14

*Gasaway v. Northwestern Mut. Life Ins.*
Co. 26 F.3d. 957, 960 (9th Cir. 1994)....................................................................5

*Gordon v. Virtumundo*,
575 F.3d 1040 (9th Cir. 2009) (Gould, J., concurring)...........................................7

*Holy Trinity Church v. United States*,
143 U.S. 457 (1892)..............................................................................................13

*Huricks v. Shopkick, Inc.*,
No. C-14-2464 MMC, 2015 WL 5013299 (N.D. Cal. Aug. 24, 2015) ...................6

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
   No. 13-4300, 2015 WL 6875340 (3d Cir. Nov. 10, 2015) ....................................................16

*In re Rouss*,
   221 N.Y. 81, 116 N.E. 782 (1917) (Cardozo, J.) ....................................................13

*In re Rules and Regulations Implementing the Telephone Consumer Protection
   Act of 1991*,
   30 FCC Rcd. 7961 (July 10, 2015) ........................................................................6

*Kaplan v. Exxon Corp.*,
   126 F.3d 221 (3d. Cir. 1997)........................................................................12

*LeVan v. Independence Mall, Inc.*,
   940 A. 2d 929 (Del. 2007) ........................................................................5

*Leyse v. Bank of Am. Nat. Ass'n*,
   804 F.3d 316 (3d Cir. 2015)........................................................................9

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)........................................................................16

*McKenna v. WhisperText*,
   No. 5:14-CV-00424-PSG, 2015 WL 5264750 (N.D. Cal. Sept. 9, 2015) ................................6

*Michael A. Crooker v. Credit Bureau Ass'N Northeast, et al*,
   Case No. 3:09-cv-240-KRG-KAP ........................................................................1

*Mims v. Arrow Financial Services, LLC*,
   132 S. Ct. 740 (2012)........................................................................14, 16

*Ruiz v. 1st Fid. Loan Servicing, LLC*,
   829 N.W.2d 53 (Minn. 2013)........................................................................5

*Ryabyshchuck v. Citibank (S. Dakota) N.A.*,
   No. 11-CV-1236-IEG WVG, 2012 WL 5379143 (S.D. Cal. Oct. 30, 2012).......................9, 15

*Satterfield v. Simon & Schuster, Inc.*,
   569 F. 3d 946 (9th Cir. 2009) ........................................................................15

*Shager v. Upjohn Co.*,
   913 F.2d 398 (7th Cir. 1990) ........................................................................7

*Spokeo, Inc. v. Robins*,
   135 S. Ct. 1892 (2015)........................................................................17, 18

*Sunbelt Rentals, Inc. v. Victor*,
   43 F. Supp. 3d 1026, 1034 (N.D. Cal. 2014) ........................................................17

*US Fax Law Ctr., Inc. v. iHire, Inc.*,
    476 F.3d 1112 (10th Cir. 2007) ...........................................................11

*Wilcher v. City of Wilmington*,
    924 F. Supp. 613 (D. Del. 1996) ........................................................17

*Yitzchok Majerowitz v. Stephen Einstein & Associate*s, *P.C.*,
    No. 12 CIV. 4592 ILG RLM, 2013 WL 4432240 (E.D.N.Y. Aug. 15, 2013)........................13

**STATUTES**

15 U.S.C.
    § 7704(a)(1), (2) ...............................................................................8
    § 7704(a)(3), (a)(5) ..........................................................................8
    § 7706(g)(1), (3) ..............................................................................8

28 U.S.C.
    § 1651 ..............................................................................................1

47 U.S.C.
    § 227(b)(1)(A) .............................................................................5, 9
    § 227(b)(3) .....................................................................................11

Federal Rule of Civil Procedure 36(a)(3) ........................................2, 4, 6, 10

Federal Rule of Civil Procedure 56(a) ...................................................4

**OTHER AUTHORITIES**

137 Cong. Rec. 30821-30822 (1991)...................................................15

Black's Law ........................................................................................7

John F. Manning, The Absurdity Doctrine, 116 Harv. L.Rev. 2387 (2003)...................................13

Restatement (Second) of Torts § 892...............................................7, 10

S.Rep. No. 102-178, at 1 (1991), reprinted in 1991 U.S.C.C.A.N. 1968 ......................................14

Article III of the U.S. Constitution ...........................................16, 17, 18

iv

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### I.  INTRODUCTION

Plaintiff invited, sought out, and manufactured the wrong number calls for which she now sues.  As such, she is actually the party guilty of the high crime of "initiating" the wrong number calls at issue in this case—hers was the *mens rea* and the design, Defendant Wells Fargo Bank, N.A. ("Wells Fargo") was merely the instrumentality through which that design was manifested.  But Plaintiff is no more a "victim" here than a person who creates numerous e-mail addresses merely for the purpose of collecting spam messages.  In such circumstances, the doors to the courthouse are closed, even if the party successfully manufactures a violation of a federal statute by their conduct, because one cannot invent their own lawsuit.  *Beyond Systems, Inc. v. Kraft Foods, Inc.*, 777 F.3d 712, 718-19 (4th Cir. Feb. 4, 2015).

This case involves abuse of process of the worst order: a premeditated for-profit scheme to exploit a federal statute—and this Court's jurisdiction—by manufacturing the very harm for which she now sues.  This Court "has the power and the obligation to protect its jurisdiction from being misused" in such a manner.  *Michael A. Crooker v. Credit Bureau Ass'N Northeast, et al*, Case No. 3:09-cv-240-KRG-KAP, Document 5, page 1 of 3 (W.D.P.A. Sep. 22, 2009) (Gibson, K.); 28 U.S.C. § 1651.  By this motion, Wells Fargo asks the Court to acknowledge that obligation and exercise its power by entering summary judgement in Wells Fargo's favor.

### II.  SUMMARY OF FACTS—PLAINTIFF HAS EMPLOYED A SOPHISTICATED SCHEME TO MANUFACTURE WRONG NUMBER CALLS AND SUE FOR THEM

**A.     Melody Stoops' Scheme to Create TCPA Lawsuits**

While serving a felony probation sentence for theft and forgery, Plaintiff Melody Stoops devised a scheme to create a for-profit "business" by manufacturing  claims against unsuspecting

callers.  *See* Wells Fargo Bank, N.A.'s Concise Statement of Undisputed Material Facts ("Statement of Facts"), ¶2.[2]

The details of Plaintiff's scheme show a sophisticated understanding of the challenges faced by creditors in tracking customer cell phone numbers as well as her dedication to exploit these challenges for personal profit.  Plaintiff's scheme begins with her purchase of more than 35 cell phones and cell phone numbers with prepaid minutes, specifically with the purpose to manufacture TCPA lawsuits.  Statement of Facts, ¶3.  Unlike the purchase of her one personal cell phone, these other 35 plus cell phones were purchased and used solely to bring TCPA lawsuits.  Statement of Facts, ¶7.  Plaintiff then carefully selects area codes from locations she knows to be economically depressed.  Statement of Facts, ¶8.  Despite residing in Pennsylvania, she normally selects an area code in Florida "because there is a depression in Florida" and "people would be usually defaulting on their loans or their credit cards."  Statement of Facts, ¶9.  Thus, Plaintiff purchases these cell phones and cell phone numbers with the specific intent and expectation that the phones will receive calls from creditors seeking to reach the prior owner of the phone number.  Statement of Facts, ¶10.  Indeed, Plaintiff will add minutes to the phones so they continue to receive auto-dialed or prerecorded calls from creditors.  Statement of Facts, ¶11.

Once the phones are purchased and charged, Plaintiff simply waits for the phones to ring. When a phone rings, she will sometimes answer the call to identify the caller.  Statement of Facts, ¶12.  She will always track the incoming calls to her 35 plus cell phones on a meticulously maintained call logsheet.  Statement of Facts, ¶13.  Plaintiff carries all 35 plus phones around with her when she travels so she can continue to record incoming calls.  Statement of Facts, ¶14.

---

[2] Plaintiff is a convicted fraudster and serial TCPA litigant.  In 2013, Plaintiff was convicted of a medical billing fraud and forgery scheme and sentenced to, *inter alia*, probation through at least 2017.  *See* Statement of Facts, ¶¶1, 2.

Occasionally Plaintiff would  indicate to the caller to stop calling, but would not do so for every call.  Statement of Facts, ¶15.  But this too was only part of her scheme - Plaintiff actually intended for the calls to continue because she "was hopefully going to ask [her] lawyers to do trebling with knowing and willful" violations of the TCPA if they did.  Statement of Facts, ¶16.

In the span of about one year, Plaintiff's scheme generated at least eleven (11) TCPA cases in this jurisdiction alone and at least twenty (20) pre-litigation demand letters.  Statement of Facts, ¶18.[3]

**B.      Wells Fargo Falls Into Plaintiff's Trap**

In 2014, Plaintiff purchased two cell phone numbers for the sole purpose of generating wrong number calls: 863-XXX- 6128 and 305-XXX- 4589.  Statement of Facts, ¶20.  Consistent with her overall strategy of generating the highest number of misplaced calls as possible, Plaintiff selected these area codes because she knows the 863 and 305 area codes correspond to economically depressed areas in Florida.  Statement of Facts, ¶21.

Sure enough, Wells Fargo had two delinquent customers in these area codes that had previously owned the numbers at issue.   Statement of Facts, ¶22.  Wells Fargo placed collection calls to these numbers, always trying to reach its customer and not the Plaintiff.  Statement of Facts, ¶23.

While Plaintiff stipulated that she does not contend Wells Fargo's efforts to contact her were "knowing and willful" - and admitted she suffered no actual harm - she nonetheless sues

---

[3] Plaintiff also resides with her sister, Taisha Campbell, who joined Plaintiff's scheme by filing TCPA lawsuits of her own.  Statement of Facts, ¶27.  Plaintiff and her sister are each represented by attorney Brett Freeman of the Sabatini law firm.  *Id.*

Wells Fargo for violation of the TCPA in connection with the wrong number calls she invited.

Statement of Facts, ¶¶17, 24, 25, 26.[4]

### III.  WELLS FARGO IS ENTITLED TO JUDGMENT ON PLAINTIFF'S CLAIM AS THERE IS NO GENUINE DISPUTE AS TO ANY MATERIAL FACT AND WELLS FARGO IS ENTITLED TO JUDGMENT AS A MATTER OF LAW

**A.     Standard on Rule 56 Motion**

Under Federal Rule of Civil Procedure 56(a), "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Material facts are those that may affect the outcome of the case.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   A dispute as to a material fact is "genuine" if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party."  *See Id.*

The moving party bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the pleadings, depositions, interrogatory answers, admissions and affidavits, if any, that it contends demonstrate the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of [that] party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."  *See* Fed. R. Civ. P. 56(e); *see also Liberty Lobby*, 477 U.S. at 250.

---

[4] Plaintiff failed to timely respond to Wells Fargo's Requests for Admission, Set Two, attached as Ex. B to the concurrently filed Declaration of Divya S. Gupta ("Gupta Decl."). Wells Fargo's Requests for Admission, Set Two, were served on November 5, 2015.  *See* Gupta Decl. at ¶ 3, Ex. B. Plaintiff failed to serve responses on Wells Fargo's counsel within 30 days from the date these requests for admission were served; thus, they are deemed admitted pursuant to Federal Rule of Civil Procedure 36(a)(3).  *Id.*

Mere speculation or conclusory assertions are insufficient to raise a genuine issue of material fact. *See Gasaway v. Northwestern Mut. Life Ins*. Co., 26 F.3d. 957, 960 (9th Cir. 1994).

**B.      Plaintiff Manufactured The Very TCPA Claims She Now Sues For**

The TCPA makes it unlawful to "make any call" to a cell phone using an automatic telephone dialing system ("ATDS") or an artificial or prerecorded voice, without the consent of the subscriber to the phone number called. *See* 47 U.S.C. § 227(b)(1)(A). The word "make" in this context means "to cause to exist or happen; bring about." *Ruiz v. 1st Fid. Loan Servicing, LLC*, 829 N.W.2d 53, 57 (Minn. 2013); *See also Country Vintner of NC v. E. & J. GALLO WINERY*, 718 F. 3d 249, 258-59 ("[t]o 'make' means 'to cause to happen…'"); *LeVan v. Independence Mall, Inc.*, 940 A. 2d 929, 933 (Del. 2007) ("to make means to cause (something) to exist").

Plaintiff sues contending that Wells Fargo "made" the calls at issue; but that is manifestly not so. Plaintiff caused the calls to happen, invited them and manufactured them by her own admission:

> Q.      Okay. Why do you have so many cell phone numbers?
> A.      I have a business suing offenders of the TCPA…it's what I do.
> Q.      **So you're specifically buying these cell phones in order to manufacture a TCPA lawsuit? In order to bring a TCPA lawsuit?**
> A.      **Yeah.**
> …
> Q.      So when you buy these phones, you know there's a chance that they will ring, correct?
> A.      Possibly. Yes.
> …
> Q.      Why are you selecting a Florida number?
> A.      I knew that people had hardships in Florida, that they would be usually defaulting on their loans or their credit cards.
> …

*See* Statement of Facts, ¶¶4, 5, 9, 10, and 21 (emphasis added).  Without question then, the Plaintiff engaged in a course of conduct specifically designed to create wrong number calls or "cause [them] to happen."  As such, she "made" the calls at issue.[5]

While addressed in different contexts, the FCC and numerous courts have found that calls initiated via the human intervention of a third-party are not actionable against a caller where the caller was merely the instrumentality that connected the call or facilitated the request of third-party that actually caused the call to happen.  *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7986 (July 10, 2015) (finding a jailhouse collect caller – not the collect calling service provider -  "makes" the call for purposes of the TCPA); *See also*, *Id.* at 7983-84 (TextMe app sends invitational messages when a user makes "affirmative choices" such that, taking "into account the goals and purposes of the TCPA," the "app user's actions and choices effectively program[med] the cloud-based dialer to such an extent that he or she is so involved in the making of the call as to be deemed the initiator of the call."); *Id.*at 7982-83 (YouMail did not "make" a call where it "merely ha[s] some role, however minor, in the causal chain that results in the making of a telephone call"); *McKenna v. WhisperText*, No. 5:14-CV-00424-PSG, 2015 WL 5264750, at *5 (N.D. Cal. Sept. 9, 2015) (user who uploads data into WhisperText app, resulting in WhisperText sending invitational text messages to a third party, is the "maker" of a call under the TCPA); *Huricks v. Shopkick, Inc*., No. C-14-2464 MMC, 2015 WL 5013299, at *3 (N.D. Cal. Aug. 24, 2015).

Matters are no different here.  Plaintiff caused the calls to happen—willed them into existence—by taking several measures designed to assure that she would receive these calls.  As

---

[5] Plaintiff also admitted, per Rule 36(a)(3), that "any harm [Plaintiff] suffered as alleged in [Plaintiff's Complaint] was intentionally caused by [Plaintiff] when [Plaintiff] purchased the cellular telephones for the purpose of bringing TCPA actions." *See* Statement of Facts, ¶26.

such, she intentionally "made" these calls and Wells Fargo was nothing more than the instrumentality she utilized.  Summary judgment is properly granted in favor of Wells Fargo.

**C.** **Plaintiff Consented to Receive the Calls as a Matter of Law and Admitted She Was "Ok With" them Anyway**

**1.** **Plaintiff "Gratuitously Created Circumstances that Would Support a Legal Claim" and thereby Consented to Calls As a Matter of Law**

It is a general maxim of tort law that "no wrong is done to one who consents." *Beyond Systems, Inc. v. Kraft Foods, Inc.*, 777 F.3d 712, 718-19 (4th Cir. Feb. 4, 2015); *See also* Restatement (Second) of Torts 892A cmt. a (1979).   Accordingly, "[o]ne who effectively consents to conduct of another intended to invade his interests cannot recover in an action of tort for the conduct or for harm resulting from it." *Id.* § 892A.  "This principle has been known as '*volenti non fit injuria*,' or 'to a willing person it is not a wrong.'  Black's Law Dictionary 1805 (10th ed.2014)."  *Beyond Systems, Inc.*, 777 F.3d 712, 718.  This principle is ideally suited against actions by plaintiffs who "**gratuitously created circumstances that would support a legal claim and acted with the chief aim of collecting a damage award**."  (emphasis added.) *Id.* at fn. 2 (citing to *Gordon v. Virtumundo*, 575 F.3d 1040, 1068 (9th Cir. 2009) (Gould, J., concurring)).

In a concurring opinion to *Gordon v. Virtumundo*, 575 F.3d 1040, 1068 (9th Cir. 2009), Judge Gould articulated the intolerance courts should apply to manufactured claims:

> [F]or a person seeking to operate a litigation factory, the purported harm is illusory and more in the nature of manufactured circumstances in an attempt to enable a claim. In my view, manufactured claims should not be tolerated absent a clear endorsement from Congress. Such claims would not likely have been recognized at common law...

Generally, tort-related statutes "are not exempt from common law principles," such as the principle of *volenti non fit injura.  Beyond Systems, Inc.,* 777 F.3d 712, 717-18; *Shager v. Upjohn Co.*, 913 F.2d 398, 404 (7th Cir. 1990); *See also, e.g., Busching v. Sup. Ct.*, 12 Cal.3d 44,

52 (1974) ("[I]t is not to be presumed that the legislature in the enactment of statutes intends to overthrow long-established principles of law unless such intention is made clearly to appear either by express declaration or by necessary implication.").

The Fourth Circuit's analysis of a similar statutory scheme in *Beyond Systems, Inc. v. Kraft Foods, Inc.*, is instructive.  In *Beyond Systems, Inc.*, the Fourth Circuit Court of Appeal applied the principle of *volenti non fit injura* to affirm the district court's judgment against plaintiff for manufactured claims under the Controlling the Assault of Non-Solicited Pornography and Marketing Act (" CAN-SPAM Act").  *Beyond Systems, Inc.*, 777 F.3d 712, 714.  Stated in general terms, the CAN–SPAM Act prohibits such e-mail messaging practices as transmitting messages with "deceptive subject headings" or "header information that is materially false or materially misleading."  *See* 15 U.S.C. § 7704(a)(1), (2).  The Act also imposes requirements regarding content, format, and labeling for unsolicited e-mail messages.  15 U.S.C. § 7704(a)(3), (a)(5).  Congress provided a private right of action to providers of Internet access service adversely affected by a violation of the CAN-SPAM Act, which includes statutory damages of $300 per unlawful e-mail or actual damages, whichever is greater.  15 U.S.C. § 7706(g)(1), (3).

The plaintiff in *Beyond System, Inc.*, shared stark similarities to this Plaintiff.  As an admitted business model, Beyond Systems "created fake-email addresses, solely for the purpose of gathering spam."  *Beyond Systems, Inc.*, 777 F.3d 712, 714, 718-19.  As further detailed in the opinion:

> [Beyond Systems] embedded these addresses in websites so that they were undiscoverable except to computer programs that serve no other function than to find e-mail accounts to spam.  Beyond Systems increased its e-mail storage capacity to retain a huge volume of spam, by which it hoped to increase its eventual recovery under anti-spam statutes.  And it intentionally participated in

> routing spam e-mail between California and Maryland to increase its exposure to spam and thereby allow it to sue under both states' laws.

*Id.* Thus, Beyond Systems operated with the "purpose of maximizing on spam-trap-based litigation." *Id.* at 714. This so-called "spam-trap-based litigation" accounted for 90% of Beyond Systems' income in recent years. *Id.* at 714.

On these facts, the district court held and the Court of Appeal affirmed, "that the evidence was 'overwhelming' that Beyond Systems consented to the harm it claims it suffered." *Id.* at 718-19. Applying the principle of *volenti non fit injura*, the Court of Appeal further held that "Beyond Systems' consent to—and indeed its solicitation of—the harm at issue in this case prohibits Beyond Systems from recovering under" anti-spam statutes. *Id.*

Plaintiff Melody Stoops' conduct warrants the same result here. As in *Beyond Systems, Inc.*, Plaintiff seeks to use the TCPA and this jurisdiction to operate a "litigation factory." As discussed previously herein, Plaintiff not only consented to the harm she claims to suffer, she intentionally solicited it by maximizing her potential exposure to calls from an auto-dialer or prerecorded voice. Such manufactured claims should not be tolerated by this Court or any other.

Thus, Plaintiff's claims are precluded by the principle of *volenti non fit injura* and the Court should enter judgment for Wells Fargo.

### 2. Plaintiff "Expressly Consented" to Receipt of the Calls As Well

As noted above, calls placed with the "express consent" of a "called party" are not actionable under the TCPA. *See* 47 U.S.C. § 227(b)(1)(A). Here, Ms. Stoops is a "called party" because she was the subscriber of the phone numbers at issue. *See Leyse v. Bank of Am. Nat. Ass'n*, 804 F.3d 316, 325 (3d Cir. 2015). Express consent is easily demonstrated under the TCPA. *See, e.g., Ryabyshchuck v. Citibank (S. Dakota) N.A.*, No. 11-CV-1236-IEG WVG, 2012 WL 5379143, at *3 (S.D. Cal. Oct. 30, 2012) (providing cellular phone number to defendant was

evidence of prior express consent under the TCPA).  As the Third Circuit has recognized in the context of interpreting the TCPA, consent is nothing more than "**a willingness in fact for conduct to occur**."  *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 270-71 (3d Cir. 2013) (emphasis added.), quoting Restatement (Second) of Torts § 892.

Plaintiff undeniably had such a willingness in fact.  She admitted she was "ok with" the creditors of previous cell phone owners calling her newly-acquired cell phones:

> Q.      Okay.  And it's – **is it your intention that these phones will ring from a creditor?**
> A.      **Yes.**
> Q.      Okay.  **And you are okay with that?**
> A.      **Yes.**
> Q.      Okay.  So are you – you're assuming the risk that these phones will ring.  Is that correct?
> A.      Yes.

*See* Statement of Facts, ¶¶17, 20, 26 (emphasis added).[6]

Plaintiff's admission that she was "okay with" the receipt of the very calls she now sues for is fatal to her claim. Her unambiguous confession of an express "willingness in fact" to receive calls bars her manufactured claims under the TCPA.  Accordingly, Wells Fargo is entitled to judgment in this case.

**D.      Plaintiff Assumed the Risk of Receiving Calls from an ATDS or an Artificial or Prerecorded Voice**

Plaintiff's TCPA claim fails for the separate and distinct reason that she knowingly and intentionally subjected herself to receipt of the calls at issue in this case.  Plaintiff's claim is thereby barred by the doctrine of assumption of risk.

---

[6] Plaintiff also admitted, per Rule 36(a)(3), that she purchased her cell phones and added minutes with the "goal of receiving calls from automatic telephone dialing systems." *See* Statement of Facts, ¶6.

The doctrine of assumption of risk applies in TCPA actions.  Congress made TCPA actions subject to state law.  As provided in the statute: "A person or entity may, *if otherwise permitted by the laws or rules of the court of a State*, bring in an appropriate court of that State - (A) an action based on a violation of this subsection or regulations. ..."  47 U.S.C. § 227(b)(3) (emphasis added).  Courts have interpreted this language to mean that federal courts should apply substantive state law to determine which persons or entities may bring TCPA claims.  *US Fax Law Ctr., Inc. v. iHire, Inc.*, 476 F.3d 1112, 1118 (10th Cir. 2007) ("Congress expressly directed that federal courts apply substantive state law to determine which persons or entities may bring TCPA claims in federal court.").

The State of Pennsylvania recognizes the doctrine of assumption of risk, even as it pertains to strict liability statutes.  *See Charlton v. Toyota Indus. Equip*., 714 A.2d 1043, 1047 (Pa. Super. 1998); *Barnes v. Am. Tobacco Co*., 161 F.3d 127, 148 (3d Cir. 1998).  A Defendant may demonstrate assumption of risk in a strict liability context by introducing evidence that a plaintiff  "voluntarily assumed the risk." *Charlton,* 714 A.2d 1043, 1046.  The Court in *Childers v. Power Line Equip. Rentals, Inc*., 452 Pa. Super. 94, 107 (1996) explained voluntary assumption of risk as follows:

> Voluntary assumption of the risk involves a subjective awareness of the risk inherent in an activity and a willingness to accept it.  A plaintiff has voluntarily assumed the risk where he fully understands it and voluntarily chooses to encounter it.  A plaintiff's knowledge and understanding of the risk may be shown by circumstantial evidence.

A Defendant may also demonstrate assumption of risk in a strict liability context by introducing evidence that a plaintiff  engaged in "highly reckless conduct."  *Charlton,* 714 A.2d 1043, 1046.  "To demonstrate that a plaintiff's actions are highly reckless, defendants must show plaintiff 'knew or had reason to know of facts which created a high degree of risk of [harm] to

himself or that he deliberately proceeded to act, or failed to act, in conscious disregard of that risk.'(citation omitted)." *Barnes,* 161 F.3d 127, 148.

Assumption of risk is also available in negligence claims. *See Kaplan v. Exxon Corp.*, 126 F.3d 221, 224–25 (3d. Cir. 1997). "In a negligence action, a defendant is relieved of his duty to protect the plaintiff when the plaintiff was aware of the risk and faced it voluntarily." *Barnes*, 161 F.3d 127, 148; *See Barrett v. Fredavid Builders, Inc.*, 454 Pa. Super. 162, 166-67 (Pa. Super. 1996). The Defendant must show that the "nature and extent" of the risk were "fully appreciated" and that the plaintiff voluntarily proceeded to face that risk. *Childers v. Power Line Equip. Rentals, Inc.*, 452 Pa. Super. 94, 107.

Here, Plaintiff freely admits she voluntarily assumed the risk of receiving calls to her cell phones from an ATDS or artificial or prerecorded voice. *See* Statement of Facts, ¶¶10, 17. The Court should grant judgment for Wells Fargo on this admission alone. Beyond this admission, Plaintiff's other testimony also inescapably proves she assumed the risk of receiving calls from an ATDS or artificial or prerecorded voice. Plaintiff bought over 35 cell phones, including the cell phones in this case, to pursue a TCPA "business." Statement of Facts, ¶2. Plaintiff did not give out these phone numbers or use them to call anyone. *Id.*, ¶7. The sole purpose of purchasing so many phones with recycled phone numbers was to receive as many calls from creditors as possible and bring TCPA lawsuits. *Id.*, ¶¶7, 11. Plaintiff intentionally maximizes her odds of receiving auto-dialed or prerecorded calls by selecting area codes from economically depressed locations where she knows people "would be usually defaulting on their loans or their credit cards." *Id.*, ¶21. In sum, Plaintiff operates her "business" knowing her countless cell phones are likely to ring from a creditor (*Id.*, ¶¶8, 9, 10), with the specific intention that her phones will ring from a creditor (*Id.*, ¶10), and with subjective knowledge that these actions

would help her "business" and lead to calls subject to the TCPA.  *Id.*, ¶21.  Plaintiff's so-called

"business" model has led to Plaintiff's filing of multiple TCPA lawsuits - although Plaintiff

"[doesn't] know how many" – and at least 20 pre-litigation demand letters – although, again,

Plaintiff "[doesn't] know" how many.  *Id.*, ¶18.  Whatever alleged "harm" Plaintiff contends she

experienced in this case, Plaintiff knowingly and voluntarily encountered it by operating her

TCPA "business."  *Id.*, ¶¶17, 26.

Accordingly, Plaintiff's claim is barred by the doctrine of assumption of risk and the

Court should enter judgment for Wells Fargo.

**E.**      **Plaintiff is not a Member of the Class the TCPA was Designed to Protect and She
Did Not Suffer the Type of Harm the TCPA was Designed to Prevent**

Plaintiff's claims additionally fail because she is not a member of the class of persons the

TCPA was designed to protect and she did not suffer the type of harm the TCPA was designed to

prevent.

"It is a fundamental principle of tort law that the violation of a statute will subject the

violator to liability if the person harmed was a member of the class the statute was designed to

protect against the harm the statute was designed to prevent."  *Yitzchok Majerowitz v. Stephen

Einstein & Associate*s, *P.C.,* No. 12 CIV. 4592 ILG RLM, 2013 WL 4432240, at *3 (E.D.N.Y.

Aug. 15, 2013) (granting defendant's motion for summary judgment and dismissing claims under

the FDCPA where plaintiff did not suffer the type of harm the statute was designed to prevent).

"Consequences cannot alter statutes, but may help to fix their meaning.  Statutes must be so

construed, if possible, that absurdity and mischief may be avoided."  *In re Rouss*, 221 N.Y. 81,

91, 116 N.E. 782 (1917) (Cardozo, J.); *See also Holy Trinity Church v. United States*, 143 U.S.

457, 459, (1892) ("It is a familiar rule that a thing may be within the letter of the statute and yet

not within the statute, because not within its spirit nor within the intention of its makers."); John F. Manning, The Absurdity Doctrine, 116 Harv. L.Rev. 2387 (2003).

The TCPA was never designed to protect a person from the receipt of calls he or she wanted to receive. "The TCPA is a remedial statute that was passed to protect consumers from *unwanted* automated telephone calls." *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013) (collecting cases) (emphasis added). The TCPA was enacted to "protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls to the home and to facilitate interstate commerce by restricting certain uses of facsimile machines and automatic dialers." S.Rep. No. 102-178, at 1 (1991), reprinted in 1991 U.S.C.C.A.N. 1968. The TCPA was enacted in response to an increasing number of consumer complaints arising from the increased number of telemarketing calls. *See Id*. at 2. The consumers complained that such calls are a "nuisance and an invasion of privacy." *See Id*.

In enacting the TCPA, Congress found that "unrestricted telemarketing can be an intrusive invasion of privacy." In particular, Congress reported, "[m]any consumers are outraged over the proliferation of intrusive, nuisance [telemarketing] calls to their homes." *See Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740, 746 (2012). Such "[a]utomated or prerecorded telephone calls" were rightly regarded by recipients as "an invasion of privacy." *Ibid*.

Although over half the States had enacted statutes restricting telemarketing, Congress believed that federal law was needed because "telemarketers could evade state-law prohibitions through interstate operations." *Ibid*; *See also* S.Rep. No. 102-178, p. 3 (1991), 1991 U.S.C.C.A.N. 1968, 1970 ("[B]ecause States do not have jurisdiction over interstate calls[,] [m]any States have expressed a desire for Federal legislation. . . .").

Comments made on the Senate floor by Senator Hollings, the TCPA's sponsor reflect the intended scope of the Act:

> Computerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall.
>
> . . . . .
>
> The substitute bill contains a private right-of-action provision that will make it easier for consumers to recover damages from receiving these computerized calls. The provision would allow consumers to bring an action in State court against any entity that violates the bill. The bill does not, because of constitutional constraints, dictate to the States which court in each State shall be the proper venue for such an action, as this is a matter for State legislators to determine. Nevertheless, it is my hope that States will make it as easy as possible for consumers to bring such actions, preferably in small claims court.

137 Cong. Rec. 30821-30822 (1991).

Courts have summed up the purpose and history of the TCPA as "Congress was trying to prohibit [the] use of ATDSs in a manner that would be an invasion of privacy… [so as to] to prevent the proliferation of intrusive, nuisance calls." *Ryabyshchuck v. Citibank (S. Dakota) N.A.*, No. 11-CV-1236-IEG WVG, 2012 WL 5379143, at *2 (S.D. Cal. 2012); *See also Satterfield v. Simon & Schuster, Inc.*, 569 F. 3d 946, 954 (9th Cir. 2009) ("The purpose and history of the TCPA indicate that Congress was trying to prohibit the use of ATDSs to communicate with others by telephone in a manner that would be an invasion of privacy.").

Here, Plaintiff is the polar opposite of the hypothetical consumer described by Senator Hollings who is woken up by calls in the morning, interrupted at dinner, forced to get out of bed, and "hound[ed]" until she wants to "rip the telephone right out of the wall."  Far from ripping her phone out of the wall, Plaintiff purchased more cellular phones than she can count and carries them with her wherever she goes, careful not to miss a single telephone call.  Her only use of the countless cell phones is to receive calls from creditors and thereafter make settlement demands

under the flag of the TCPA.  Plaintiff does not view the receipt of calls from an auto-dialer or

prerecorded voice as an invasion of a privacy –  she views them as an opportunity to turn a

profit.  In short, Plaintiff shares none of the privacy concerns the TCPA seeks to protect because

she *wants* to receive calls from an auto-dialer or prerecorded voice.  Accordingly, Wells Fargo is

entitled to judgment in this case.

**F.     Plaintiff Lacks Article III Standing to Assert a Claim**

Plaintiff has not suffered an injury in fact that would confer Article III standing under the

TCPA.  Article III of the U.S. Constitution limits the jurisdiction of United States District Courts

to actual "claims or controversies."  To establish Article III standing, a plaintiff must satisfy

three elements: (1) "injury in fact—an invasion of a legally protected interest which is (a)

concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2)

causation—"there must be a causal connection between the injury and the conduct complained

of"; and (3) redressability—"it must be likely, as opposed to merely speculative, that the injury

will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61

(1992) (internal quotation marks, citations, and footnote omitted).  The "injury must affect the

plaintiff in a personal and individual way."  *In re Google Inc. Cookie Placement Consumer

Privacy Litig.*, No. 13-4300, 2015 WL 6875340, at *4 (3d Cir. Nov. 10, 2015).  "The party

invoking federal jurisdiction bears the burden of establishing these elements." *Lujan,* 504 U.S.

555, 562.

Plaintiff cannot establish an invasion of a legally protected interest  – the purported

violation of a privacy right under the TCPA -  that is "actual or imminent."  *See Mims v. Arrow

Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012) (recognizing that the purpose of the TCPA is to

remedy "certain practices invasive of privacy" and "intrusive nuisance calls").  Notably, Plaintiff

does not allege or seek any actual damages in this case.  *See* Plaintiff's Complaint ("Compl."),

Docket No. 1-2, at ¶¶ 16-18. Her entire purported injury is premised upon a bare statutory violation for which she seeks statutory damages. Compl., ¶ 18. Yet, Plaintiff's claim is not premised upon any actual harm – that is, her claim does not involve any actual violation of a privacy interest protected by the TCPA. For the reasons previously discussed, Plaintiff's "business" is designed to invite calls that might otherwise fall under the purview of the TCPA. Thus, Plaintiff cannot establish any expectation of privacy regarding the phones purchased for her TCPA "business." *See, e.g.*, *Sunbelt Rentals, Inc. v. Victor,* 43 F. Supp. 3d 1026, 1034 (N.D. Cal. 2014) ("A plaintiff pursuing an invasion of privacy action must have conducted himself or herself in a manner consistent with an actual expectation of privacy, i.e., he or she must not have engaged in conduct which manifests a voluntary consent to the invasive actions of defendant.")

Even assuming *arguendo* that Plaintiff at some point held a reasonable expectation of privacy pertaining to the receipt of calls pursuant to the TCPA, she undoubtedly waived any such privacy interests by knowingly and intentionally taking steps to maximize the chances that she would receive such calls. *See, e.g.*, *Wilcher v. City of Wilmington*, 924 F. Supp. 613, 619 (D. Del. 1996) aff'd in part, vacated in part, 139 F.3d 366 (3d Cir. 1998) ("Consent to a matter that would otherwise be considered to invade privacy creates an absolute privilege, provided that the action does not exceed the scope of the consent.") Accordingly, Plaintiff cannot establish she suffered any "actual" violation of a protected interest under the TCPA that would confer Article III standing.[7]

---

[7] On April 27, 2015, the Supreme Court granted certiorari in *Spokeo, Inc. v. Robins*, 135 S. Ct. 1892 (2015) to address whether a federal statute, like the TCPA, can create Article III standing by simply authorizing a remedy for a "bare statutory violation." *See* Pet. for Writ of Cert. at i, *Spokeo, Inc. v. Robins*, No. 13-1339, 2014 WL 1802228 (U.S.), 7. Resolution of *Spokeo* could impact the Article III analysis in this case.

Likewise, Plaintiff cannot establish a "causal connection" between the purported harm and the complained of conduct.  Simply put, whatever "harm" Plaintiff incurred was intentionally self-inflicted long before she received any calls from Wells Fargo.  Her purchase of over 35 cell phones, including the two at issue in this case, adding minutes, charging the phones, and spending time to record incoming calls were all self-induced in accordance with Plaintiff's "business" plan.  Accepting Plaintiff's characterization of her scheme as a "business," each of her purported harms were "business expenses" that she incurred *to receive calls* from an auto-dialer or prerecorded voice.  On these facts, Plaintiff cannot establish a "causal connection" that would confer Article III standing under the TCPA.

Thus, the Court should grant judgment for Wells Fargo.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## IV.  CONCLUSION

For the foregoing reasons, Wells Fargo respectfully requests that judgment be entered in its favor on the Plaintiff's complaint and that the entire case now be dismissed.

By: */s/ Divya S. Gupta*
     Divya S. Gupta

Divya S. Gupta, pro hac vice
Eric J. Troutman, pro hac vice
SEVERSON & WERSON
The Atrium
19100 Von Karman Avenue, Suite 700
Irvine, California 92612
Telephone: (949) 442-7110
Facsimile: (949) 442-7118
dsg@severson.com

Martin C. Bryce, Jr. (I.D. No. 59409)
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Telephone: 215.864.8238
Facsimile: 215.864.8999
bryce@ballardspahr.com

Attorneys for Defendant
WELLS FARGO BANK, N.A.

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA

MELODY STOOPS,

           Plaintiff,

    vs.

WELLS FARGO BANK, N.A.,

          Defendant.

Case No. 3:15-cv-00083-KRG

**(JUDGE KIM R. GIBSON)**

FILED ELECTRONICALLY

## CERTIFICATE OF SERVICE

Service is being effected upon counsel for counsel of record via the CM/ECF system.

By: _/s/ Divya S. Gupta_
     Divya S. Gupta

Divya S. Gupta, pro hac vice
Eric J. Troutman, pro hac vice
SEVERSON & WERSON
The Atrium
19100 Von Karman Avenue, Suite 700
Irvine, California 92612
Telephone: (949) 442-7110
Facsimile: (949) 442-7118
dsg@severson.com

Martin C. Bryce, Jr. (I.D. No. 59409)
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Telephone: 215.864.8238
Facsimile: 215.864.8999
bryce@ballardspahr.com

Attorneys for Defendant
WELLS FARGO BANK, N.A.