# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MELODY STOOPS,<br><br>     Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>     Defendant. | Case No. 3:15-cv-00083-KRG<br><br>U. S. District Judge:<br>   Honorable Kim R. Gibson<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT WELLS FARGO BANK, N.A.'S MOTION FOR SUMMARY JUDGMENT**<br><br>(Removed from the Cambria County Court of Common Pleas, Case No. 2015-896) |

**TABLE OF CONTENTS**

Page

MEMORANDUM OF POINTS AND AUTHORITIES...................................................... 1

INTRODUCTION AND STATEMENT OF FACTS......................................................1

    Wells Fargo Does Not Take Steps To Avoid
    Calling Consumers With  Reassigned Numbers...................................................2

    The Conduct Of The Caller Is Relevant
    Under The TCPA, Not The Called Party;
    Wells Fargo Misapplies The TCPA By Attacking Plaintiff...................................3

ARGUMENT.....................................................................................................6

    I.    The TCPA's Prohibitions And Statutory Remedies – Consumers
        With Reassigned Numbers........................................................................6

        A.    Robocallers Risk TCPA Liability Using Autodialer Technology...........6

        B.    Wells Fargo Cannot Circumvent The FCC's
              Express Guidance On TCPA Issues.............................................7

    II.    Wells Fargo "Made" the Calls to Stoops,
        Not the Other Way Around........................................................................8

        A.    Wells Fargo Admits It "Made" the Calls to Plaintiff..........................8

        B.    Wells Fargo's Cited Authorities Relate To Whether The Caller's
              Equipment Is Not An ATDS Because Of Human Intervention
              And Are Inapplicable To The Facts Of This Case............................9

    III.    Wells Fargo Did Not Acquire  Plaintiff's "Prior Express Consent"
        Before Calling Her...................................................................................10

    IV.    Assumption Of Risk And Volenti Non Fit Injuria
        Are Pennsylvania  Substantive Equitable Defenses
        That Are Not Applicable To The Federal TCPA..............................................12

        A.    Pennsylvania Courts Have Recognized That Substantive
              Federal Law Is Applied In TCPA Cases.......................................12

i

      B.     Wells Fargo's Reference To Beyond Systems, Inc. v. Kraft Foods, Inc.
              Is Distinguishable To The Present Case, Unrelated To The TCPA,
              And Courts Have Found That The Principle Of Volenti Non Fit Injuria
              Does Not Apply To The TCPA.....................................................14

      C.     The Elements Of, And The Defenses To, A Federal Cause Of Action
              Are Defined By Federal Law...............................................17

V.     The TCPA Authorizes Any "Individual Or Entity" To Enforce
       The Act's Provisions And, Therefore, The "Zone Of Interests"
       Is Expanded To The Full Limits Of Article III.......................19

VI.    Plaintiff Has Demonstrated "Injury–in–Fact" Traceable to
       Wells Fargo's Misconduct Sufficient to Confer Article III Jurisdiction..........21

VII.   Plaintiff Has Not Waived Her Right To Bring
       The Instant TCPA Action Against Wells Fargo;
       Nor Did She Implicitly Consent To Wells Fargo's Robocalls.....................23

CONCLUSION....................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                  **Page(s)**

*Askin v. Quaker Oats Co.*,
    818 F. Supp. 2d 1081, 1085 (N.D. Ill. 2011)........................................................22

*Bais Yaakov of Spring Valley v. ACT*, Inc.,
    2015 U.S. App. LEXIS 14718, *7 (1st Cir. Aug. 21, 2015)...................................20

*Bennett v. Spear*,
    520 U.S. 154, 117 S. Ct. 1154 (1997).................................................................19

*Beyond Systems, Inc. v. Kraft Foods, Inc.*,
    777 F.3d 712 (4th Cir. Feb. 4, 2015)..............................................................14, 15

*Breslow v. Wells Fargo Bank, N.A.*,
    857 F. Supp. 1316, 1322 (S.D. Fla. 2012), aff'd 755 F.3d 1265 (11th Cir. 2014)..............6

*Central v. R.R. v. White*
    238 U.S. 507 (1915)........................................................................................17

*Chapman v. Wagener Equities, Inc.*,
    747 F.3d 489 (7th Cir. 2014)..........................................................................6, 24

*Charvat v. Echostar Satellite, LLC*,
    630 F.3d 459 (6th Cir. 2010)............................................................................20

*Charvat v. Travel Servs.*,
    2015 U.S. Dist. LEXIS 81770 (N.D. Ill. June 24, 2015).........................................4

*Crawford v. Marion Cnty.*,
    472 F.3d 949 (7th Cir. 2006)............................................................................22

*Evers v. Dwyer*,
    358 U.S. 202 (1958)........................................................................................20

*FCC v. ITT World Commc'ns, Inc.*,
    466 U.S. 463 (1984)...........................................................................................7

*Fitzhenry v. ADT Corporation*,
    2014 U.S. Dist. LEXIS 166243 (S.D. Fla. Nov. 3, 2014).......................................21

*Gager v. Dell Fin. Servs., LLC*
    727 F. 3d 265 (3d Cir. 2013)............................................................................10

*Havens Realty Corp. v. Coleman,*
   455 U.S. 363, 102 S. Ct. 1114 (1982)................................................19, 20, 24

*Hawk Valley, Inc. v. Taylor*
   2012 WL 1079965.......................................................................12, 13, 15

*Howlett v. Rose*
   496 U.S. 356 (1990)...........................................................................18

*Huricks v. Shopkick, Inc.,*
   No. C-14-2454 MMC, 2015 WL 5013299 (N.D. Cal. Aug. 24, 2015)..........................9

*International Science & Tech. Inst. v. Inacom Communs.*
   106 F.3d 1146 (1997)..........................................................................18

*Landsman & Funk PC v. AFGO Mechanical Services, Inc.,*
   640 F.3d 72 (3d Cir.2011).................................................................13, 15

*Lary v. Trinity Phys. Fin. & Ins. Servs.,*
   780 F.3d 1101 (11th Cir. 2015)................................................................20

*Mais v. Gulf Coast Collection Bureau, Inc.,*
   768 F. 3d 1110 (11th Cir. 2014)................................................................7

*Manufacturers Auto Leasing, Inc. v. Autoflex Leasing, Inc.*
   139 S.W.3d 342 (2004)........................................................................16

*Martin v. Leading Edge Recovery Solutions, LLC,*
   2012 U.S. Dist. LEXIS 112795 (N.D. Ill. Aug. 10, 2012).......................................22

*Martin v. Bureau of Collection Recovery,*
   2011 U.S. Dist. LEXIS 157579 (N.D. Ill. June 13, 2011).........................................3

*McKenna v. WhisperText,*
   No. 5:14-CV-00424-PSG, 2015 WL 5264750 (N.D. Cal. Sept. 9, 2015)......................9

*Mfrs. Auto Leasing, Inc. v. Autoflex Leasing, Inc.*
   139 S.W.3d 342 (2004)........................................................................18

*Mims v. Arrow Financial Services*, LLC,
   132 S.Ct. 740 (2012).........................................................................13

*Mitchem v. Illinois Collection Serv., Inc.,*
   271 F.R.D. 617 (N.D. Ill. 2011)................................................................4

*Omega World Travel, Inc. v. Mummagraphics, Inc.,*
   469 F.3d 348 (4th Cir.2006)..................................................................15

*Penzer v. Transportation Ins. Co.,*
   545 F.3d 1303, 1311 (11th Cir. 2008).......................................................21

*Phillips Randolph Enterp., LLC v. Rice Fields,*
   2007 U.S. Dist. LEXIS 3027 (N.D. Ill. Jan. 11, 2007)......................................6

*Pierson v. Ray,*
   386 U.S. 547, 558 (1967)....................................................................20

*Soppet v. Enhanced Recovery Co., LLC,*
   679 F.3d 637, 642 (7th Cir. 2012)........................................................2, 3

*Spokeo, Inc. v. Robbins,*
   135 S. Ct. 1892 (2015)......................................................................23

*State v. EPA,*
   2015 U.S. App. LEXIS 13866 (7th Cir. Aug. 7, 2015)....................................21, 22

*State ex. rel. Charvat v. Frye* (2007)
   114 Ohio St. 3d 76; 868 N.E.2d 270........................................................16

*Sw. Bell Tel. v. Ark. Pub. Serv. Comm'n,*
   738 F.2d 901 (8th Cir.1984)..................................................................7

*Telephone Science Corporation v. Trading Advantage LLC,*
   Case No. 1:14-cv-04369 (N.D. Ill., Feb. 17, 2015)..........................................16

*Testa v. Katt*
   330 U.S. 386 (1947)..........................................................................17

*Torres v. National Enterprise Syst., Inc.,*
   2012 U.S. Dist. LEXIS 110514, (N.D. Ill. 2012)............................................22

*Trafficante v. Metropolitan Life Ins. Co.,*
   409 U.S. 205, 93 S. Ct. 364 (1972)..........................................................19

*United States v. Students Challenging Regulatory Agency Procedures,*
   412 U.S. 669, 93 S. Ct. 2405 (1973)........................................................22

*Warth v. Seldin,*
   422 U.S. 490, 501 (1975)....................................................................20

v

**Statutes**

15 U.S.C. § 7707(b)(1)……………………………………………………………………..15

28 U.S.C. § 2342………………………………………………………………………………..7

42 U.S.C. 3604(d)……………………………………………………………………………..20

47 U.S.C.
§ 227(b)(1)(A)……………………………………………………………….6, 8, 17, 20
§ 227(b)(1)………………………………………………………………..2, 15, 16, 20
§ 227(b)(1)(B)……………………………………………………………………………20
§ 227(b)(1)(D)……………………………………………………………………………20
§ 227(b)(3)……………………………………………………………....6, 12, 13, 15, 20

**Rules**

Federal Rules of Civil Procedure Rule 16(c)(2)A……………………………………...9

Model Rules of Professional Conduct Rule 3.3……………………………………….....5

**Other Authorities**

Black's Law Dictionary, (3rd Pocket Edition 2006)……………………………………10

*Ex Parte Letter from Monica S. Desai*, Counsel to Wells Fargo, to Marlene H. Dortch, Secretary, FCC in CG Docket No. 02-278 (filed July 21, 2014)………………………….5

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Declaratory Ruling and Order 18 F.C.C.R. 14014 (July 3, 2003)… ………………………..........5, 9

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* Declaratory Ruling and Order, 30 F.C.C.R. 7961, (June 18, 2015)……………..1-6, 9, 11, 12, 24

*Re: In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, WC Docket No. 07-135 (2015)……………….1

U.S. Const. art. III…………………………………………………………………………..21-23

## MEMORANDUM OF POINTS AND AUTHORITES

Plaintiff Melody Stoops ("Plaintiff" or "Stoops") hereby submits this Opposition to Defendant Wells Fargo Bank, N.A.'s ("Wells Fargo") Motion for Summary Judgment (the "Motion").

## INTRODUCTION AND STATEMENT OF FACTS

Wells Fargo's repeated focus on Plaintiff's background and characterizing her as a professional plaintiff is completely irrelevant and directs attention away from the actual issues of this case – Wells Fargo's systemic illegal business practice and failure to exercise reasonable care. Wells Fargo initiated/made at least eighty-five (85) calls to Plaintiff in attempts to collect debts on two of its former clients on two telephone numbers, (305) XXX-4589 and (863) XXX-6128, corresponding to cellular phones owned by Plaintiff (the "telephone numbers" or "Plaintiff's phones"). Statement of Facts ¶28. At least twenty-four (24) of these calls even resulted in a communication to Plaintiff, yet Wells Fargo thereafter persisted in calling Plaintiff's phones. Statement of Facts ¶¶29, 30.

On several occasions Plaintiff answered Wells Fargo's calls to the telephone numbers and told Wells Fargo to stop calling.  Statement of Facts ¶¶30, 31. Wells Fargo even continued making debt collection calls to Plaintiff's phones after she directly told its representatives to stop calling and that she was not who they were calling for.[1]  Statement of Facts ¶31.

Wells Fargo's conduct exemplifies a pattern that debt collectors and telemarketers have been abusing to the chagrin of consumers, the FCC, and the FTC alike.  In *Re: In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, WC Docket No. 07-135 (2015), Commissioner Ajit Pai describes how

---

[1] On telephone number (305) XXX-4589, Plaintiff answered calls from Wells Fargo and told the other end to stop calling her on at least 9/24/14 at 2:19pm and 11/13/14 at 5:10pm. Statement of Facts ¶31.
On phone with number (863) XXX-6128, Plaintiff answered calls from Wells Fargo and told the other end stop calling her on several occasions: On 10/21/14 Plaintiff spoke to Wells Fargo representative Yolanda and told her not to call her phone. On 10/23/14 Plaintiff spoke to Wells Fargo representative Miriam and told her not to call her phone. Responsive Statement of Facts ¶31.

telemarketing problems persist: "Last year, the FCC received 96,288 complaints for violations of federal Do-Not-Call rules, more than any other category of complaints … [and] the Attorney General of Missouri testified that the *number one* complaint of his constituents is illegal telemarketing. His office alone received more than 52,000 telemarketing complaints in 2014." See *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling and Order, adopted June 18, 2015, p. 112.

The telephone numbers were randomly assigned to Plaintiff and certainly would have otherwise been assigned to some unknown person who would have been harassed by Wells Fargo. Statement of Facts ¶¶28, 29, 31, 34. It was pure chance that the numbers were assigned to Plaintiff who happened to know her rights. However, in the vast majority of cases it is someone unaware of his or her rights and unprepared to document Wells Fargo's violations. Wells Fargo repeatedly gets away with its unlawful robocalls and it would have happened again if someone other than Plaintiff had been assigned these telephone numbers. It was due to Plaintiff's awareness that Wells Fargo will be exposed this time; but only if the law is enforced. Perhaps being held accountable will provide Wells Fargo with incentive to change its behavior, which it can attain with minor adjustments to its business policy at a trivial cost.

### Wells Fargo Does Not Take Steps To Avoid <u>Calling Consumers With  Reassigned Numbers</u>

Chief Judge Easterbrook in *Soppet* describes reasonable methods by which a bill collector like Wells Fargo can continue robocalling without running afoul of the TCPA:

- Have a person make the first call (§ 227(b)(1) is limited to automated calls), then switch to a predictive dialer after verifying that Cell Number still is assigned to Customer.
- Use a reverse lookup to identify the current subscriber to Cell Number.
- Ask Creditor, who obtained Customer's consent, whether Customer still is associated with Cell Number—and get an indemnity from Creditor in case a mistake has been made.

*Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 642  (7th Cir. 2012).

The FCC also addressed the many choices robocallers like Wells Fargo have to prevent calling persons with reassigned numbers in the more recent 2015 FCC Order:

Callers have a number of options available that, over time, may permit them to learn of reassigned numbers ... The record indicates that callers seeking to discover reassignments may: (1) include an interactive opt-out mechanism in all artificial- or prerecorded-voice calls so that recipients may easily report a reassigned or wrong number; (2) implement procedures for recording wrong number reports received by customer service representatives placing outbound calls; (3) implement processes for allowing customer service agents to record new phone numbers when receiving calls from customers; (4) periodically send an email or mail request to the consumer to update his or her contact information; (5) utilize an autodialer's and/or a live caller's ability to recognize "triple-tones" that identify and record disconnected numbers; (6) establish policies for determining whether a number has been reassigned if there has been no response to a "twoway" call after a period of attempting to contact a consumer; and (7) enable customers to update contact information by responding to any text message they receive, which may increase a customer's likelihood of reporting phone number changes and reduce the likelihood of a caller dialing a reassigned number.

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling and Order, adopted June 18, 2015, p. 47-48, ¶ 86.

As demonstrated by the facts, Wells Fargo took none of the steps listed above to prevent its illegal robocalls to Plaintiff.   Wells Fargo takes this risk without implementing safeguards to avoid calling reassigned wireless numbers and, as it has here, opens itself to strict consequences mandated by the TCPA when it inevitably calls a consumer who understands the law.  As a last resort in its Motion, Wells Fargo tries to smear Plaintiff's character rather than attract attention to its own conduct and the merits of the case

### The Conduct Of The Caller Is Relevant Under The TCPA, Not The Called Party; Wells Fargo Misapplies The TCPA By Attacking Plaintiff

Wells Fargo's fixation on Plaintiff is irrelevant for purposes of the TCPA. The TCPA is an emotionless strict liability statute that focuses on the conduct of the *caller*, not the called party. Under the TCPA, a robocaller faces significant liability under the TCPA for its illegal calls, regardless of *how the call was answered*, see *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012) (calls answered by plaintiff's computerized voicemail system), *why the call was answered*, see *Martin v. Bureau of Collection Recovery*, 2011 U.S. Dist. LEXIS 157579, *8 (N.D. Ill. June 13, 2011) (St. Eve, J.) ("Characterizing Plaintiff as a 'professional plaintiff'

- 3 -

does not boost [Defendant's] argument"); *Charvat v. Travel Servs.*, 2015 U.S. Dist. LEXIS 81770, *10-11 (N.D. Ill. June 24, 2015) (Wood, J.) (plaintiff's motivation of "financial gain rather than selfless consumer advocacy" is irrelevant to TCPA claim), or **whether the call was answered at all**, see *Mitchem v. Illinois Collection Serv., Inc.*, 271 F.R.D. 617, 620 (N.D. Ill. 2011) (Guzmán, J.) (TCPA class certified as to members who received voice messages from defendant without regard to whether class members answered any calls).

In its Motion, Wells Fargo attacks Plaintiff by misapplying the requirements of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, an apparent effort to skirt liability by brazenly distorting what it knows to be the true state of law. A few of Wells Fargo's dishonest portrayals of law to fact in its Motion are summarized by Wells Fargo's following assertions:

- Plaintiff "made" the calls at issue when it was Wells Fargo who called Plaintiff every time (See the Motion p. 6).

- Plaintiff "expressly consented" to receive Wells Fargo's calls when she had no prior contact whatsoever with Wells Fargo. (See the Motion p. 9).

- Plaintiff's intention for bringing suit under the TCPA is relevant to her standing to bring a TCPA claim. (See the Motion p. 9).

As demonstrated below, these arguments are not only disingenuous, but also misstate the law as set forth in the 2015 FCC Order, which specifically addresses these issues. [2] For instance, in footnote 286 of the 2015 FCC Order, the FCC addresses Wells Fargo directly and refuses to adopt the interpretations proposed by Wells Fargo, which Wells Fargo argues this court should

---

[2] Wells Fargo is well aware of the FCC's July 2015 Order wherein the FCC specifically clarified rules surrounding reassigned numbers, consumer consent, and the immateriality of a consumer's intent to exercise rights under the TCPA. See *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, Declaratory Ruling and Order*, 30 F.C.C.R. 7961, 8015-16, CG Docket No. 02-278 (2015). Curiously, Wells Fargo cites only a single paragraph of the 2015 FCC Order in p.6 of its Motion, despite being a frequent proponent for rules as a commenter with the FCC related to the order's highly relevant content See 2015 FCC Order, FN. 271, 277, 280, 286, 315, 594 (relating to consent and definition of a "called party"), 298, 299, 300, 304, 305, 315 (relating to reassigned numbers), 568 (relating to an ATDS's "capacity").

substantially adopt, with no explanation of why this court should act in direct contravention of the FCC's 2015 Order.

Footnote 286 states: "For example, Wells Fargo argues that 'called party' should be 'interpreted and clarified to mean 'intended recipient' of the call, exempting any call made in good faith to the number last provided by the intended call recipient, until such time when the . . . new party notifies the company that the number has been reassigned." See *Ex Parte Letter from Monica S. Desai*, Counsel to Wells Fargo, to Marlene H. Dortch, Secretary, FCC in CG Docket No. 02-278, at 7 (filed July 21, 2014); *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling and Order, adopted June 18, 2015, p. 44, ¶ 80, FN 286.

> Wells Fargo offers this proposed interpretation after arguing that interpreting "called party" other than "intended recipient" "would be incompatible with the TCPA." *Id.* at 6. We reiterate that the text of the TCPA places no affirmative obligation on new subscribers to a reassigned wireless number to answer calls to which the previous subscriber may have consented, or to place calls in response to voicemail messages left for a previous subscriber in an effort to inform callers that the wireless number has been reassigned. These actions could result in charges to the new subscriber to the reassigned wireless number; we thus find that a contrary view also would be at odds with the TCPA's stated goal of protecting consumers' privacy, and its unique and heightened protections for wireless consumers.

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling and Order, adopted June 18, 2015, p. 44, ¶ 80, FN 286. [See *1992 TCPA Order*, 7 FCC Rcd at 8753-54, paras. 2-3; *2003 TCPA Order*, 18 FCC Rcd at 14092, para. 133; *2012 TCPA Order*, 27 FCC Rcd at 1839-40, para. 25.]

The Model Rules of Professional Conduct Rule 3.3 Candor Toward the Tribunal subdivision (a)(2) addresses such a situation and states as follows: "A lawyer shall not knowingly fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel." Wells Fargo omits controlling portions of the 2015 FCC Order in its motion and is perilously close to violating its duty of candor, if it has not done so.

For the reasons stated below, this Court should deny Wells Fargo's motion for summary judgment of Plaintiff's complaint.

## ARGUMENT

**I.   The TCPA's Prohibitions And
Statutory Remedies – Consumers
With Reassigned Numbers**

The TCPA prohibits the use of an autodialer to place calls to certain types of telephone numbers where the current subscriber to the number has not provided "express consent" to be called, 47 U.S.C. § 227(b)(1)(A)(iii), or has revoked that consent in "any reasonable manner," *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling and Order, adopted June 18, 2015, p. 38, ¶ 70. (the "2015 FCC Order") To avoid violating the TCPA, a robocaller simply needs to verify that the current subscriber of a telephone number has provided express consent to be called or has not revoked its previously given consent. Once the robocaller has done that, it is free to load the telephone number into its autodialer and robocall the number until such time that the subscriber revokes its consent or the telephone number is transferred to a new subscriber. See *Soppet*, 679 F.3d, at 641 ("any consent previously given, lapses when Cell Number is reassigned.") The potential liability a robocaller faces for violating the TCPA is significant – $500 to $1,500 per violation. See 47 U.S.C. § 227(b)(3). As Courts have made clear, however, Congress is under no obligation to make illegal behavior affordable, particularly where the wrongdoer has committed multiple violations. *Phillips Randolph Enterp., LLC v. Rice Fields,* 2007 U.S. Dist. LEXIS 3027, *7-8 (N.D. Ill. Jan. 11, 2007) (Kocoras, J.). By making the practice of repeatedly violating the statute "prohibitively expensive," the TCPA serves its intended goal of deterrence, *Id.*, at *7, and provides an incentive for private enforcement of the law, *Chapman v. Wagener Equities, Inc.*, 747 F.3d 489, 492 (7th Cir. 2014).

**A.   Robocallers Risk TCPA Liability Using Autodialer Technology**

To help robocallers avoid significant liability under the TCPA, courts admonish robocallers to place "intermittent live calls" to each number they are calling and verify that the current subscriber has consented to be called. See, e.g., *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 1316, 1322 (S.D. Fla. 2012), aff'd 755 F.3d 1265 (11th Cir. 2014). This is sound and

- 6 -

easy-to follow advice. See *Soppet*, 679 F.3d, at 639 ("A human being who called Cell Number would realize that Customer was no longer the subscriber.") The problem for robocallers is that placing live verification calls costs money. Robocallers have a choice – either incur the costs associated with intermittent live calls, or continue to use a more cost-efficient autodialer technology and risk violating the TCPA.

**B.    Wells Fargo Cannot Circumvent The FCC's Express Guidance On TCPA Issues**

As Wells Fargo attempts to persuade this court to rewrite the FCC's rulings, it does so without any explanation of how this can be done without violating the mandatory statutory requirements of the Hobbs Act. The Hobbs Act expressly confers on the federal courts of appeals "exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of" such FCC orders. 28 U.S.C. § 2342; see *FCC v. ITT World Commc'ns, Inc.*, 466 U.S. 463, 468 (1984) ("Exclusive jurisdiction for review of final FCC orders . . . lies in the Court of Appeals."). The appeals court in *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F. 3d 1110 (11th Cir. 2014), addressed this issue after the district court "concluded that the Federal Communication Commission's interpretation of "prior express consent" embodied in its 2008 rule was not entitled to any deference because it conflicted with the clear meaning of the TCPA." *Mais*, 868 F. 3d at 1114.

The *Mais* appeals court reiterated that FCC rulings are the exclusive jurisdiction of the courts of appeals which cannot be evaded simply by labeling the proceeding as one other than a proceeding for judicial review. *Mais*, 868 F. 3d at 1120 [quoting *Sw. Bell Tel. v. Ark. Pub. Serv. Comm'n, 738 F.2d 901, 906 (8th Cir.1984).*] Furthermore, "[a] defensive attack on the FCC regulations is as much an evasion of the exclusive jurisdiction of the Court of Appeals as is a preemptive strike." *Mais*, 868 F. 3d at 1120 [quoting *Sw. Bell Tel.*, 738 F.2d at 906]; [citing see *ITT World Commc'ns*, 466 U.S. at 468, 104 S.Ct. 1936 ("Litigants may not evade [the Hobbs Act] by requesting the District Court to enjoin action that is the outcome of the agency's order.").] Therefore, Wells Fargo's efforts to circumvent the FCC's express guidance on the TCPA issues presented by its motion cannot succeed.

## II. Wells Fargo "Made" the Calls to Stoops, Not the Other Way Around

Wells Fargo accurately defines that the TCPA makes it unlawful to "make any call" to a cell phone using an automatic telephone dialing system ("ATDS") or an artificial prerecorded voice, without the consent of the subscriber to the phone number called. 47 U.S.C. 227(b)(1)(A). (See the Motion p. 5) However, employing twisted logic, Wells Fargo argues that "Plaintiff caused the calls to happen" and "willed them into existence" as if she had any control whatsoever what numbers Wells Fargo calls. (See the Motion p. 6.) Wells Fargo's assertion that Plaintiff "made" the calls at issue is a complete non-sequitur.

Plaintiff was merely the subscriber of the phone numbers Wells Fargo called and had those numbers been reassigned to a different person that person would have rights to the same TCPA claims. Plaintiff, unlike the vast majority of consumers, just happened to understand that Wells Fargo's collection calls made to her phones were a violation of the TCPA.

### A.    Wells Fargo Admits It "Made" the Calls to Plaintiff

Wells Fargo admits that it made the calls to Plaintiff in its Concise Statement of Undisputed Facts: *Wells Fargo placed collection calls to these numbers*, always trying to reach its customer and not the Plaintiff.  Statement of Facts ¶33. See also Defendant's Statement of Facts ¶23 (emphasis added). Wells Fargo has not introduced any evidence that Plaintiff had influenced, induced the calls, or had any contact at all with Wells Fargo prior to Wells Fargo's placement of those calls.

Even more damning, Wells Fargo stipulated that "all of the telephone calls *Wells Fargo initiated/made* to cell phone numbers 863-XXX-6128 and 305-XXX-4589 … were made with an 'automatic telephone dialing system' ('ATDS') as defined under the 'Telephone Consumer Protection Act'" Statement of Facts ¶33. [Joint Stipulation of Facts, Docket 37, p.1 of 3.] See also Defendant's Statement of Facts ¶24 (emphasis added) Wells Fargo clearly contradicts itself when it stipulated with Plaintiff, lodged said stipulation with this court, and submitted into evidence facts that show it "made" the calls at issue. But now Wells Fargo states in the Motion that Plaintiff "made" the calls.

- 8 -

Surprisingly, Wells Fargo has also admitted to all of the elements of Plaintiff's TCPA claim in the Motion in its own statement of facts: Plaintiff purchased two cell phone numbers 863-XXX-6128 and 305-XXX-4589. Defendant's Statement of Facts ¶20. Wells Fargo had two customers who previously owned the numbers at issue. Defendant's Statement of Facts ¶22. Wells Fargo placed collection calls to these numbers, always trying to reach its customer and not the Plaintiff. Defendant's Statement of Facts ¶¶23, 24. Wells Fargo also stipulated that it uses an ATDS as defined under the TCPA. Defendant's Statement of Facts ¶24; Statement of Facts ¶33. Wells Fargo has not provided any facts to show it had the requisite prior express consent to call Plaintiff and the FCC has reiterated that "if any question arises as to whether prior express consent was provided by a call recipient, the burden is on the caller [Wells Fargo] to prove that it obtained the necessary prior express consent." See the 2015 FCC Order, supra at p.30, ¶47.[3]

**B.    Wells Fargo's Cited Authorities Relate To Whether The Caller's Equipment Is Not An ATDS Because Of Human Intervention And Are Inapplicable To The Facts Of This Case**

The authorities Wells Fargo cite to support that Plaintiff "made" the calls are without merit and again misconstrues the law. Each case referenced in page 6 of the Motion involve whether there was sufficient human intervention such that the equipment used is not an ATDS under the TCPA.[4] "The Commission in the 2003 TCPA Order noted that, regardless of changes in technology, '[t]he basic function of such equipment [an ATDS] has not changed—the capacity to dial numbers without human intervention.' 2003 TCPA Order, 18 FCC Rcd at 14092, para. 132." See the 2015 FCC Order, at p.17, ¶22, fn.78.

Plaintiff made no "affirmative choice" that caused Wells Fargo to call her number. Her actions did not "effectively program" a dialer, "upload data" to Wells Fargo, or otherwise "make"

---

[3] Wells Fargo has admitted to all the elements of a TCPA violation through evidence offered in support of its own motion. In such circumstances, Federal Civil Procedure Before Trial section 4:77 suggests that the court may grant summary judgment for Plaintiff *sua sponte*. Federal Civil Procedure Before Trial section 4:77 is attached to the Declaration of Joseph R. Manning, Jr. as Exhibit E. See also FRCP 16(c)(2)A.

[4] See 2015 FCC Order (TextMe App, YouMail); *McKenna v. WhisperText*, No. 5:14-CV-00424-PSG, 2015 WL 5264750 (N.D. Cal. Sept. 9, 2015); *Huricks v. Shopkick, Inc.*, No. C-14-2454 MMC, 2015 WL 5013299 (N.D. Cal. Aug. 24, 2015)

any call as Wells Fargo misconstrues in its motion. (See the Motion p.6.) She merely bought

prepaid cell phone, activated them, and was randomly assigned telephone numbers that had

previously been assigned to others. Statement of Facts ¶34; See also Defendant's Statement of

Facts ¶20. Wells Fargo took every step to call those numbers without any influence, inducement,

or any prior contact whatsoever from Plaintiff. See also Statement of Facts ¶¶28, 33, 34, 40;

Defendant's Statement of Facts ¶¶23, 24. Any argument that Plaintiff was so involved in the

"making of the calls" at issue would have to be based on the idea that her conduct constitutes

human intervention of a type that would change Wells Fargo's equipment from an ATDS to

something else -- this simply does not make sense and no authority is cited that supports this

theory. Simply put, Plaintiff did not "cause" Wells Fargo's calls to her at all. Wells Fargo did

and it has stipulated to this fact. Defendant's Statement of Facts ¶24. Statement of Facts ¶33.

Thus any discussion of whether there was sufficient human intervention by any party to take

Wells Fargo's dialing equipment out of the realm of the ATDS definition is moot because Wells

Fargo admitted that it used an ATDS.

### III. Wells Fargo Did Not Acquire Plaintiff's "Prior Express Consent" Before Calling Her

There is literally no argument that Wells Fargo can credibly make with regard to consent.

Nevertheless, Wells Fargo fabricates the law arguing that that "prior express consent" under the

TCPA means "a willingness in fact for conduct to occur" citing *Gager v. Dell Fin. Servs., LLC*

727 F. 3d 265, 270-71 (3d Cir. 2013). (See the Motion p.10.) First, the context in *Gager*

surrounds the discussion of how consent may be revoked, wherein the court began with basic

axioms to define consent. *Gager*, 727F.3d at 270. The *Gager* court used the Black's Law

Dictionary definition of "consent," not "express consent," which is defined quite differently as

"consent that is clearly and unmistakably stated." See Black's Law Dictionary, (3rd Pocket

Edition 2006).

Once again, "if any question arises as to whether prior express consent was provided by a

call recipient, the burden is on the caller [Wells Fargo] to prove that it ***obtained*** the necessary

prior express consent." (emphasis added) See 2015 FCC Order at p.30, ¶47. It is apparent that Plaintiff had not clearly and unmistakably provided her consent to be called by Wells Fargo prior to Wells Fargo making the calls, and Wells Fargo has not introduced any evidence in the Motion to demonstrate that it obtained her prior express consent.

Moreover, Wells Fargo has already admitted that it was attempting to contact the prior subscriber and not Plaintiff. Statement of Facts ¶¶23, 24. Nor did Wells Fargo at any time have the requisite consent to place these calls to Plaintiff regardless who it attempted to call. The FCC held in the 2015 Order that "we decline to interpret 'called party' to mean 'intended party'...". 2015 FCC Order at p.44, ¶ 81. This is a well-established principle that was only reiterated in this order.

Plaintiff had no responsibility to inform Wells Fargo that it was calling the wrong party. The FCC squarely addressed that argument and held:

> We reiterate that the TCPA places no affirmative obligation on a called party to opt out of calls to which he or she never consented; the TCPA places responsibility on the caller alone to ensure that he or she has valid consent for each call made using an autodialer, artificial voice, or prerecorded voice.

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling and Order, adopted June 18, 2015, p. 44, ¶ 81.

Finally, even if Wells Fargo had a reasonable basis to believe it had valid consent to call Plaintiff, which is did not and has not introduced any evidence that it had, Wells Fargo had constructive knowledge that the numbers it called were reassigned. [5]

> We clarify, however, that callers who make calls without knowledge of reassignment and with a reasonable basis to believe that they have valid consent to make the call should be able to initiate one call after reassignment as an additional opportunity to gain actual or constructive knowledge of the reassignment and cease future calls to the new subscriber. If this one additional call does not yield actual knowledge of reassignment, we deem the caller to have constructive knowledge of such.

---

[5] "Subject to this one-call threshold, we find that when a caller chooses to make robocalls to a wireless number that may have been reassigned, it is the caller—and not the wireless recipient of the call—who bears the risk that the call was made without the prior express consent required under the statute." See 2015 FCC Order, p.50, fn.312.

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling and Order, adopted June 18, 2015, p. 40, ¶ 72.

Without a doubt Wells Fargo has failed to show that it acquired Plaintiff's prior express consent as required by the TCPA before robocalling Plaintiff, and its arguments that it somehow did is an intentional misapplication and obfuscation of law.

**IV. Assumption Of Risk And Volenti Non Fit Injuria Are Pennsylvania Substantive Equitable Defenses That Are Not Applicable To The Federal TCPA.**

The substantive law on what constitutes a violation of the TCPA, and what substantive defenses are applicable to excuse the violations should be and is determined by Congress, not the individual states. In its Motion, Wells Fargo argues that substantive law applies to violations of the TCPA, based on the wording of the statute that a person could sue, "if otherwise permitted by the laws or rules of court of a State..." 47 U.S.C. §227(b)(3)

However, the reason for the phrase "if otherwise permitted by the laws or rules of a State" was not to allow the states to rewrite the substantive provisions of the statute. A state rule changing the penalty from $500.00 to $.50 or to $5,000.00 would be inconsistent with the intent of Congress, and would effectively repeal or rewrite the statute. It is much more likely that Congress intended to be respectful of the procedural rules of the states, including venue, and which courts would be allowed to hear the claims, while retaining the substantive elements of the federal claim so that the intent of Congress could be carried out. This distinction is explored in a case from the Eastern District of Pennsylvania.

**A.    Pennsylvania Courts Have Recognized That Substantive Federal Law Is Applied In TCPA Cases**

In *Hawk Valley, Inc. v. Taylor*, the issue was whether a Pennsylvania statute of limitations of two years or a federal statute of limitations of four years applied to actions under the TCPA. (*Hawk Valley, Inc. v. Taylor* 2012 WL 1079965 at *11.)  The defendants in *Hawk Valley* argued that the language "if otherwise permitted by the laws or rules of court of a State"

- 12 -

in the TCPA meant that all state procedural rules applied, including the statute of limitations for similar state actions. (*Hawk Valley, Inc. v. Taylor* 2012 WL 1079965 at \*7)

The *Hawk Valley* court explained that "the Third Circuit held in *Landsman & Funk*, a plaintiff may assert a private TPCA claim in federal court pursuant to diversity jurisdiction under 28 U.S.C. § 1332. In that situation, which exists here, the Third Circuit expressly acknowledged that the federal court would be exercising diversity jurisdiction over a federally-created cause of action, which would place the court in the admittedly unusual position of applying federal procedural and substantive law." *Hawk Valley, Inc. v. Taylor* supra at \*9 citing *Landsman & Funk PC v. AFGO Mechanical Services, Inc.*, 640 F.3d 72, 82 n.10. (3d Cir.2011).

"[I]n *Mims*, the United States Supreme Court stated that, '[b]eyond doubt, the TCPA is a federal law that both creates the claims *Mims* has brought and supplies the substantive rules that will govern the case.' [*Mims v. Arrow Financial Services*, LLC, 132 S.Ct. 740, 745 (2012).] The Court found that the district courts retained federal question jurisdiction pursuant to Section 1331 over private TCPA claims because federal law created the cause of action, and Congress, through the TCPA, had not "expressly, or by fair implication divested them of such jurisdiction. [*Mims*, 132 S.Ct. at. 749]" *Hawk Valley, Inc. v. Taylor* supra at \*9.

*Hawk Valley* noted that "[r]ather than reading the 'if otherwise permitted' language in Section 227(b)(3) as a requirement that state limitations periods apply to TCPA actions, the *Mims* Court suggested that the 'if otherwise permitted' language allows States to decide whether or not to entertain private TCPA claims in their courts, an option that would ordinarily be foreclosed by the Supremacy Clause of the federal Constitution. [*Id.* at \*8 n.12. *Mims*, 132 S.Ct. at 751 n.12.]" *Hawk Valley,* supra at \*10.

The Court concluded that "the words 'if otherwise permitted by the laws or rules of court of a State' in Section 227(b)(3) represent Congress's intent, or are sufficient, to negate the applicability of Section 1658's four-year catch-all federal limitations period to private actions TCPA actions. For the above reasons I agree with plaintiff that the federal four-year statute of limitations provided in Section 1685 applies to private TCPA claims." *Hawk Valley,* supra at \*12.

- 13 -

While there might have been some question about whether a statute of limitations defense was substantive or procedural, it is clear that an "assumption of the risk" defense is a substantive equitable defense that seriously limits or eliminates the remedy Congress intended to apply. If Pennsylvania law can be applied to find that individuals have "assumed the risk" of receiving "robocalls," (if too many of them are made), then a major goal of the TCPA will not be accomplished in Pennsylvania.

**B      Wells Fargo's Reference To Beyond Systems, Inc. v. Kraft Foods, Inc. Is Distinguishable To The Present Case, Unrelated To The TCPA, And Courts Have Found That The Principle Of Volenti Non Fit Injuria Does Not Apply To The TCPA**

Wells Fargo cites *Beyond Systems, Inc. v. Kraft Foods, Inc.*, 777 F.3d 712 (4th Cir. Feb. 4, 2015 as an example of *volenti non fit injuria* that bars Plaintiff's claims. Wells Fargo attempts to analogize Plaintiff's conduct with those of Beyond Systems Inc. who created fake email addresses, embedded them into websites, increased its email storage to retain huge volumes of spam, and purposefully routed spam email between two states to increase exposure to spam email and allow it to sue under both state laws. See *Beyond System, Inc.*, 777 F. 3d 712, 714, 718-19. The Fourth Circuit applied the principle of *volenti non fit injuria* in *Beyond Systems, Inc.* reasoning that "Beyond Systems' consent to—and indeed *its solicitation of*—the harm at issue in this case prohibits Beyond Systems from recovering under" the Controlling the Assault of Non-Solicited Pornography and Marketing Act ("CAN-SPAM Act")." (emphasis added) *Id.* at 718-19.

Contrary to Wells Fargo's contentions, the circumstances surrounding the present case differ in several important respects. First, the facts show that Beyond Systems, Inc. created an entire computer system optimized to trick senders of emails and actively solicited spam email by *(1) creating fake email addresses, (2) embedding said email addresses into its website it created, (3) increased its email storage capacity to retain huge quantities of spam, (4) deceptively rerouting emails between different states to increase liability.* *Beyond System, Inc.*, 777 F. 3d 712, 714, 718-19. Here, Plaintiff did not create the phone numbers Wells Fargo called. The phone numbers were randomly assigned to her and Wells Fargo called her. Statement of Facts ¶¶32, 34. Plaintiff did not in any way solicit or contact Wells Fargo or the purported debtors

- 14 -

Wells Fargo tried to call. Statement of Facts ¶¶40, 41. Plaintiff did not reroute Wells Fargo's calls between different jurisdictions to purposefully and deceptively increase liability. ***Plaintiff's involvement was limited to buying phones, activating them, and being randomly assigned numbers which happened to be the reassigned numbers of Wells Fargo's clients. Wells Fargo did the rest by calling her continuously without having in place any measures to prevent such violations of the TCPA.*** Nor did Plaintiff consent to Wells Fargo's calls to her phones, or provide Wells Fargo any reason think otherwise. In fact, Plaintiff told Wells Fargo on several occasions to stop calling her, yet Wells Fargo continued to do so. Statement of Facts ¶¶29, 30, 31.

Finally, the *Beyond Systems, Inc.* case involved the CAN-SPAM Act, which is a completely different set of laws, with different requirements and standards from that of the TCPA. For instance, the *Beyond Systems, Inc.* court explained that the CAN-SPAM Act carved out a specific section stating that it preempts state laws except for those that that fit within a "savings" provision. *Beyond System, Inc.*, 777 F. 3d 712, 714, 717; 15 U.S.C. § 7707(b)(1). "That provision saved those state laws that 'prohibit falsity or deception in any portion of a commercial electronic mail message or information attached thereto....'" *Id.* "[I]n this [Fourth] Circuit, it is clear that a state's anti-spam statute is not preempted so long as it deals with falsity or deception in the vein of tort." *Id.*; *Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348 (4th Cir.2006). With the CAN-SPAM Act's "savings" clause as a basis, the *Beyond Systems, Inc.* court was permitted and obligated to consider relevant state law defenses such as *volenti non fit injuria.*

As set forth supra, the TCPA provides no such "savings" provision like that of the CAN-SPAM Act. Rather, the relevant section of the TCPA, 47 U.S.C. §227(b)(3), has been found by courts in the Third Circuit and by the U.S. Supreme Court to apply to state's procedural laws, not to substantive state laws. See generally *Hawk Valley, Inc.*, 2012 WL 1079965; *Landsman & Funk PC*, 640 F.3d 72; *Mims*, 132 S.Ct. 740 (2012). Regardless, were the TCPA to have such a "savings" section, Plaintiff still had not done anything deceptive or conducted falsity. She did nothing more than purchase phones with which were then later randomly assigned reassigned numbers—something that thousands of consumers do every day—and Wells Fargo did the rest

- 15 -

by illegally calling her when Plaintiff could have been any other consumer who bought those phones. The theory that *volenti non fit injuria* applies here is misplaced and the facts surrounding *Beyond Systems, Inc.* are highly distinguishable in every respect.

Other states have encountered similar issues. In *State ex. rel. Charvat v. Frye* (2007) 114 Ohio St. 3d 76; 868 N.E.2d 270, the trial court judge thought that the plaintiff should not be able to sue under the TCPA unless he was also registered on the national "do not call" list. The Ohio Supreme Court noted, "To be sure, trial courts have inherent power to manage their own dockets... Nonetheless, this precedent does not authorize courts to create conditions in legislative enactments that do not exist...Nor may we add or delete words in construing a statute...Congress and the FCC have already resolved the pertinent policy issues by giving consumers the option of registering their telephone numbers on the national do-not-call registry. Registration is not a prerequisite to a consumer's maintaining an action for violations of the TCPA..." *Charvat v. Frye*, supra, 114 Ohio St. 3d 76, 80; 868 N.E.2d 270, 274.

Of particular interest here is how the Ohio Supreme Court treated an argument by the defendants that assumption of the risk should apply to bar recovery. "[The trial court's] reliance on the common-law principle of *volenti non fit injuria* (a person is not wronged by that to which he consents) and that an injured party must mitigate his damages is misplaced. There is no duty to mitigate in TCPA cases." *Charvat v. Frye*, supra, 114 Ohio St. 3d 76, 80; 868 N.E.2d 270, 274; see also *Manufacturers Auto Leasing, Inc. v. Autoflex Leasing, Inc.* (2004) 139 S.W.3d 342, 347-348.

More recently, in *Telephone Science Corporation v. Trading Advantage LLC*, Case No. 1:14-cv-04369 (N.D. Ill., Feb. 17, 2015), the district court ruled on defendant Trading Advantage LLC's motion to dismiss that contended plaintiff Telephone Science Corporation failed to state a claim because section 227(b) of the TCPA does not apply to calls made to businesses. See Docket No. 78, page 2. The court held that "[t]he plain language of the statute states that it is unlawful to make '***any*** call using any automatic telephone dialing system' to 'any telephone number assigned to . . . ***any*** service for which the called party is charged for the call.' 47 U.S.C. § 227(b)(1) (emphasis added)." *Id.* "Because the language of the statute is unambiguous, does

not expressly exclude calls made to businesses (indeed, it uses the broad and inclusive word 'any'), and TSC's allegations fall within the statutory prohibition of § 227(b)(1)(A)(iii)." *Id.* For this reason Telephone Science Corporation court rejected defendant's motion to dismiss.

Like the plaintiff in *Telephone Science Corporation* ("TSC"), Plaintiff here did not request Wells Fargo to call her and never gave any express consent or written consent to Wells Fargo for calls made. *Id.* at page 2; Statement of Facts ¶40. Therefore, even though Wells Fargo framed Plaintiff's choice to sue Wells Fargo as part of a "business," an unambiguous statutory interpretation of § 227 permits Plaintiff to do just that.

C.   **The Elements Of, And The Defenses To, A Federal Cause Of Action Are Defined By Federal Law**

The Supremacy Clause dictates that federally created substantive rights cannot be altered or eliminated by state substantive statutes or policies. In *Testa v. Katt* (1947) 330 U.S. 386, the United States Supreme Court addressed the issue of whether a Rhode Island court could refuse to enforce the statutory penalties provided in the Emergency Price Control Act, which allowed the victim of overcharging to recover three times the amount of the overcharge, plus costs and reasonable attorney's fees. *Testa v. Katt*, supra, 330 U.S. 386, 387-388.

"The first Congress that convened after the Constitution was adopted conferred jurisdiction upon the state courts to enforce important federal civil laws, and succeeding Congresses conferred on the states jurisdiction over federal crimes and actions for penalties and forfeitures." *Testa v. Katt*, supra, 330 U.S. 386, 389-390. "[A] state court cannot ...refuse to enforce the right arising from the law of the United States because of conceptions of impolicy or want of wisdom on the part of Congress in having called into play its lawful powers..." *Testa v. Katt*, supra, 330 U.S. 386, 393. "Under these circumstances the State courts are not free to refuse enforcement of petitioner's claim..." *Testa v. Katt*, supra, 330 U.S. 386, 394. More specifically, the states cannot enforce state rules concerning contributory negligence and assumption of the risk to limit a federally created right of action. *Central v. R.R. v. White* (1915) 238 U.S. 507, 511-512.

In *Mfrs. Auto Leasing, Inc. v. Autoflex Leasing, Inc.*(2004) 139 S.W.3d 342, a Texas court concluded, "...as to the TCPA claims, this case involves a 'reverse-Erie' situation, in which the substantive law is federal and the procedural law is that of Texas..." *Mfrs. Auto Leasing, Inc. v. Autoflex Leasing, Inc.* (2004) 139 S.W.3d 342, 346.

The defendants made a similar argument in *Howlett v. Rose* (1990) 496 U.S. 356. In that case, the defendants in a civil rights action argued that because Congress had allowed states to "opt out" of entertaining civil rights lawsuits, the state courts could, "refus[e] to take congnizance of §1983 actions against state defendants..." *Howlett v. Rose*, supra, 496 U.S. 356, 375. But, the United States Supreme Court held, "The elements of, and the defenses to, a federal cause of action are defined by federal law." *Howlett v. Rose*, supra, 496 U.S. 356, 375.

Neither can a state, "relieve congestion in its courts by declaring a whole category of federal claims to be frivolous..." *Howlett v. Rose*, supra, 496 U.S. 356, 380. "...Congress surely did not intend to assign to state courts and legislatures a conclusive role in the formative function of defining and characterizing the essential elements of a federal cause of action..." *Howlett v. Rose*, supra, 496 U.S. 356, 378.

The intent of the language "if otherwise permitted by the laws or rules of court of a State..." is best explained by Senator Hollings, who had earlier referred to "robocalling" solicitors as "telephone terrorists."

> The substitute bill contains a private right-of action provision that will make it easier for consumers to recover damages from receiving these computerized calls. The provision would allow consumers to bring an action in State court against any entity that violates the bill. The bill does not, because of constitutional constraints, dictate to the States which court in each State shall be the proper venue for such an action, as this is a matter for State legislators to determine. Nevertheless, it is my hope that States will make it as easy as possible for consumers to bring such actions, preferably in small claims court...I thus expect that the States will act reasonably in permitting their citizens to go to court to enforce the bill."
> *International Science & Tech. Inst. v. Inacom Communs.* (1997) 106 F.3d 1146, 1152-1183.

There is no evidence that Congress intended to allow states to neuter the provisions of the TCPA by allowing their own affirmative defenses, especially ones that the FCC could have mandated in its many orders but purposefully omitted and characterized as contrary.

## V. The TCPA Authorizes Any "Individual Or Entity" To Enforce The Act's Provisions And, Therefore, The "Zone Of Interests" Is Expanded To The Full Limits Of Article III.

In *Bennett v. Spear*, 520 U.S. 154, 117 S. Ct. 1154 (1997), the question before the Court was whether the plaintiffs, who were not environmentalists, but businesses motivated by economic interests, had Article III standing to challenge a biological opinion issued by the Fish and Wildlife Service in accordance with the Endangered Species Act of 1973 ("ESA"). *Id.*, at 157, 117 S. Ct., at 1158-59. Justice Scalia, writing for a unanimous Court, noted that the citizen-enforcement provision of the ESA authorized "any person" to bring an action to enforce the Act. Id., at 165-66, 117 S. Ct., at 1162-63. According to the Court, because the Act "encourage[s] enforcement by so-called 'private attorneys general'" and does not require potential plaintiffs to be environmentalists seeking to protect wildlife, the "zone of interests" is "expanded to the full extent permitted by Article III." *Id.*; citing *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 93 S. Ct. 364 (1972).

The Supreme Court has also held that Article III standing can exist even where the plaintiff purposefully chose to interact with a defendant engaged in illegal misconduct. In *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 102 S. Ct. 1114 (1982), one of the plaintiffs was a "black tester," i.e., a black individual who had no intention of renting an apartment from the defendants, but instead merely posed as a potential renter for the purpose of determining whether the defendants were engaged in "racial steering" practices in violation of the Fair Housing Act of 1968 ("FHA"). Id., at 373, 102 S. Ct. 1114, 1121. In considering whether the black tester had standing to bring an FHA claim, Justice Brennan, writing for another unanimous Court, observed that the FHA made it unlawful "'[to] represent to any person because of race, color, religion, sex, or national origin that any dwelling is not available for inspection, sale, or rental when such

- 19 -

dwelling is in fact so available.'" *Id.* (emphasis included); quoting 42 U.S.C. 3604(d). According to the Court:

> [T]he sole requirement for standing to sue under [the FHA] is the Art. III minima of injury in fact: that the plaintiff allege that as a result of the defendant's actions he has suffered "a distinct and palpable injury," *Warth v. Seldin*, 422 U.S. 490, 501 (1975).
>
> * * *
>
> A tester who has been the object of a misrepresentation made unlawful under [the FHA] has suffered injury in precisely the form the statute was intended to guard against, and therefore has standing to maintain a claim for damages under the Act's provisions. ***That the tester may have approached the real estate agent fully expecting that he would receive false information, and without any intention of buying or renting a home, does not negate the simple fact of injury within the meaning of [the Act.]*** See *Pierson v. Ray*, 386 U.S. 547, 558 (1967); *Evers v. Dwyer*, 358 U.S. 202, 204 (1958) (per curiam)

*Havens Realty*, 455 U.S., at 373-74, 102 S. Ct., at 1121-22 (emphasis added).

Section 227(b)(1) of the TCPA sets forth four (4) prohibitions for which any "person or entity" is empowered to bring a private action against a defendant that violates the statute. See 47 U.S.C. § 227(b)(3) (emphasis added). Only two of the subsections within § 227(b)(1) specifically refer to a "residential" or "business" line. See 47 U.S.C. § 227(b)(1)(B) and § 227(b)(1)(D). The other two subsections refer to a call to "any telephone number," 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added), and "a telephone facsimile machine," 47 U.S.C. § 227(b)(1)(D). If Congress wanted to limit either of these two (2) subsections to apply only to consumers, it could have done so. Yet it did not.

The statutory provision that Plaintiff alleges Wells Fargo violated in this case, 47 U.S.C. § 227(b)(1), is the same statutory provision on which State Attorneys General rely when bringing government actions against robocallers. See 47 U.S.C. § 227(f). For this reason, courts regularly observe that Congress has empowered individuals and entities to act as "private attorneys general to pursue claims for well defined statutory damages." See *Bais Yaakov of Spring Valley v. ACT, Inc.*, 2015 U.S. App. LEXIS 14718, *7 (1st Cir. Aug. 21, 2015); see also *Lary v. Trinity Phys. Fin. & Ins. Servs.*, 780 F.3d 1101, 1105 (11th Cir. 2015); *Charvat v. Echostar Satellite, LLC*, 630

F.3d 459, 461 (6th Cir. 2010) ("[Plaintiff] has not been shy in taking on the role of a private attorney general under the [TCPA]. Since 1998, he has filed claims against at least twelve defendants in at least thirteen lawsuits under the Act.").

It does not matter whether a plaintiff actively seeks out opportunities to bring TCPA claims or is motivated by the significant damage awards available under the TCPA. *Penzer v. Transportation Ins. Co.*, 545 F.3d 1303, 1311 (11th Cir. 2008). In *Fitzhenry v. ADT Corporation*, 2014 U.S. Dist. LEXIS 166243 (S.D. Fla. Nov. 3, 2014), the defendants challenged the plaintiff's standing to bring TCPA claims against them, arguing that the plaintiff was a "professional plaintiff" who "pursues TCPA claims as a source of income." *Id.* at *11. According to the defendants, "because Plaintiff welcomes telemarketing calls to support his TCPA business, he is not in the TCPA's zone of protection." *Id.* at *12.

The *Fitzhenry* court rejected the defendants' argument, holding "Defendants have not cited any authority for the proposition that a professional plaintiff is outside the TCPA's statutory zone of interest. Although Plaintiff may have created a home environment that allows him to document telemarketing calls better than most consumers, the Court is not convinced that Plaintiff is outside of the TCPA's zone of interest." *Id.*

In this case, as in *Fitzhenry*, it does not matter that Plaintiff has multiple phones to document illegal robocalls and enforce the TCPA against companies, like Wells Fargo, that place such calls. Because the TCPA authorizes any "person or entity" to seek out and bring claims to enforce that statute, the "zone of interest" is "expanded to the full extent permitted by Article III."

## VI. Plaintiff Has Demonstrated "Injury–in–Fact" Traceable to Wells Fargo's Misconduct Sufficient to Confer Article III Jurisdiction

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.' U.S. Const. art. III, § 2." *State v. EPA*, 2015 U.S. App. LEXIS 13866, *14 (7th Cir. Aug. 7, 2015).

The "irreducible constitutional minimum of standing" requires the plaintiff to show that he has suffered or is imminently threatened with (1) a concrete and

particularized "injury in fact" (2) that is fairly traceable to the challenged action of the defendant, and that is (3) likely to be redressed by a favorable judicial decision. [Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S. Ct. 2130 (1992).] The traceability element is met only if the plaintiff's injury was sustained "as a consequence of" the challenged conduct. Valley Forge Christian Coll. v. Am. United for Separation of Church & State, Inc., 454 U.S. 464, 485, 102 S. Ct. 752, 70 L. Ed. 2d 700 (1982).

*State v. EPA*, 2015 U.S. App. LEXIS 13866, at \*14-15.

A ***nominal*** "injury-in-fact" traceable to the defendant's alleged misconduct is sufficient to confer Article III jurisdiction upon a federal court. In *United States v. Students Challenging Regulatory Agency Procedures* (SCRAP), 412 U.S. 669, 93 S. Ct. 2405 (1973), the Supreme Court stated, "[A]n identifiable trifle is enough for standing to fight out a question of principle; ***the trifle is the basis for standing and the principle supplies the motivation***." Id., at 689 n.14 (emphasis added); see also *Crawford v. Marion Cnty.*, 472 F.3d 949, 951 (7th Cir. 2006) ("The fact that the added cost…may be slight does not affect standing, which requires only a minimal showing of injury."); *Torres v. National Enterprise Syst., Inc.*, 2012 U.S. Dist. LEXIS 110514, (N.D. Ill. 2012) (Der-Yeghiayan, J.) (in TCPA case, plaintiff's loss of limited cellular airtime minutes established standing); *Martin v. Leading Edge Recovery Solutions, LLC*, 2012 U.S. Dist. LEXIS 112795, \*9-10 (N.D. Ill. Aug. 10, 2012) (Lefkow, J.) (same).

Out-of-pocket expenses incurred by a plaintiff qualify as an "injury-in-fact" sufficient to establish Article III standing. *Doe v Chao*, 540 U.S., at 627 n.12, 124 S. Ct., at 1212 n.12 ("out of pocket expenses …suffice to qualify under any view of actual damages"); *Askin v. Quaker Oats Co.*, 818 F. Supp. 2d 1081, 1085 (N.D. Ill. 2011) ("even a minor out-of-pocket loss can provide the requisite injury for standing.")

Plaintiff's phones are a brand name "Tracfone" that are initially prepaid for ten (10) minutes of calling time for sixty (60) days. Statement of Facts ¶35. Plaintiff added minutes to these phones using $19.99 "airtime cards." Statement of Facts ¶36. On several occasions, when Wells Fargo called Plaintiff she answered her phones. Statement of Facts ¶¶29, 30, 31. Plaintiff added additional minutes to her phones with prepaid airtime cards when they ran out of minutes. Statement of Facts ¶36. Plaintiff always paid for the charges incurred to purchase her phones.

- 22 -

Responsive Statement of Facts ¶38. Because Plaintiff's phones were charged minutes when Plaintiff answered calls from Wells Fargo that cost her money to add additional minutes she paid herself, she has incurred out-of-pocket expenses as "injury-in-fact" sufficient to establish Article III standing. *Doe v Chao*, 540 U.S., at 627 n.12, 124 S. Ct., at 1212.

If the Supreme Court in *Spokeo, Inc. v. Robbins*, 135 S. Ct. 1892 (2015) determines that the TCPA can create Article III standing by authorizing a remedy for a statutory violation of the TCPA then Plaintiff need not show any other injury-in-fact. If the Supreme Court finds in *Spokeo* that a plaintiff must show some other injury-in-fact, it in no way impacts the present case. Plaintiff has herein demonstrated that her phones were charged minutes due to Wells Fargo's calls causing her injury-in-fact sufficient for Article III standing.

Wells Fargo further attempts to argue that certain Requests for Admission ("RFA") are deemed admitted because Plaintiff did not respond to them. Specifically, Set No. 2, Request for Admission No. 55 asks Plaintiff to admit that "[she] has not suffered any actual harm." See Gupta Declaration, Exhibit "B"; Statement of Facts ¶25. Plaintiff did not respond to Wells Fargo's Second Set of RFA because Plaintiff would have been required to respond to them after the close of discovery. This court scheduled in its Initial Scheduling Order December 1, 2015, as the date discovery is closed ("All interrogatories, notices of deposition, requests for admissions and requests for production shall be served within sufficient time to allow responses to be completed and filed prior to the close of discovery."). Statement of Facts ¶42. Wells Fargo's Second Set of RFA are dated November 5, 2015. Therefore, Plaintiff was required to respond on December 5, 2015, well after the close of discovery on December 1, 2015. See FRCP Rule 36 subdivision (a)(3). All of Wells Fargo's Second Set of RFA Nos. 23 through 55, including those related to damages, are not deemed admitted by Plaintiff and are of no evidentiary significance.

## VII. Plaintiff Has Not Waived Her Right To Bring The Instant TCPA Action Against Wells Fargo; Nor Did She Implicitly Consent To Wells Fargo's Robocalls

In its Motion, Wells Fargo argues that because Plaintiff purchased telephones which were later randomly assigned reassigned numbers and had knowledge robocallers like Wells Fargo

would place illegal robocalls to those numbers, Plaintiff waived her right to bring a TCPA action against Wells Fargo and implicitly consented to those calls. Wells Fargo again misconstrues the law in this area. The TCPA provides significant statutory damage awards to individuals and entities as an incentive for them to bring private actions to enforce the law. See *Chapman*, supra 747 F.3d, at 492. It follows that a private citizen has no obligation to avoid illegal robocalls before filing a lawsuit based on the defendant's knowing violation of the statute. See *Fitzhenry*, 2014 U.S. Dist. LEXIS 166243, at *12. As the Supreme Court held in *Havens Realty*, supra, a plaintiff may voluntarily interact with a business that is already engaged in wrongdoing in order to bring a claim that business to enforce the law. Plaintiff's right of action against Wells Fargo did not occur until after Plaintiff purchased telephones with reassigned numbers and Wells Fargo robocalled (or continued robocalling) those numbers.

The 2015 FCC Order supports this position. A consumer has no affirmative obligation to opt out of calls to which he or she never consented. See 2015 FCC Order at p.44, ¶81. Thus, even if Plaintiff had knowledge that robocallers like Wells Fargo would call her phones, she has no responsibility to mitigate those calls or even inform Wells Fargo that it did not have her consent to call her. The TCPA places responsibility on the caller alone to ensure that he or she has valid consent to make robocalls. *Id.* As the FCC has clarified, Plaintiff's knowledge that a robocaller like Wells Fargo *might* call her in no way waives her right to bring a TCPA claim. Even when a consumer like Plaintiff becomes aware of Wells Fargo's calls he or she had no duty to tell Wells Fargo of its mistake. The FCC endorses Plaintiff's conduct in the 2015 FCC Order and Plaintiff in no way implicitly consented to Wells Fargo's calls nor waived her rights under the TCPA.

//

//

//

//

//

- 24 -

## CONCLUSION

For the foregoing reasons, Plaintiff Melody Stoops respectfully requests that Wells Fargo's Motion for Summary Judgment be denied in its entirety.

By: /s/ Joseph R. Manning, Jr.
     Joseph R. Manning, Jr.

Vincent D. Howard, pro hac vice
Howard Law, PC
2099 S. State College Blvd., Suite 600
Anaheim, CA 92806
Telephone: 800-872-5925
Fax: 888-533-7310
Email: vhoward@howardlawpc.com

Gregory H. D. Alumit, pro hac vice
Howard Law, PC
2099 S. State College Blvd., Suite 600
Anaheim, CA 92806
Telephone:  800-872-5925
Fax: 888-533-7310
Email: galumit@howardlawpc.com

Joseph Richard Manning , Jr., pro hac vice
The Law Offices of
Joseph R. Manning, Jr., APC
4667 MacArthur Blvd., Suite 150
Newport Beach, CA 92660
Telephone:  949-200-8755
Email: info@manninglawoffice.com

Glenn C. Romano
Glenn C. Romano, P.C.
3830 Lukens Lane
Hatboro, PA 19040
Telephone:  215-323-4949
Fax:  215-323-4950
Email: glenn@glennromano.com

Attorneys for Plaintiff
MELODY STOOPS