# EXHIBIT

# "D"

Contains Confidential Portion

1    Q.    -- with regard to this case?

2          Okay.  When did you decide

3    to bring this lawsuit?

4          A.    Oh, approximately, November

5    of 2014.

6          Q.    And what prompted you to

7    bring this lawsuit?

8          A.    Wells Fargo was calling me a

9    phone -- on a phone.

10         Q.    Okay.  Did anyone suggest to

11   you to bring this lawsuit?

12         A.    Suggest to bring a lawsuit?

13   Yes.

14         Q.    Who?

15         A.    Randy Miller.

16         Q.    Who is Randy Miller?

17         A.    My best friend from Lincoln,

18   Nebraska.

19         Q.    Okay.  And why did

20   Randy Miller suggest that?

21         A.    Well, he was the first to

22   mention the possibility of me doing TCPA

23   violations as a business.

24         Q.    Okay.  So are you bringing

Contains Confidential Portion

1    these lawsuits as a business?

2         A.    Yes, I am.

3         Q.    Have you -- you've filed

4    other TCPA lawsuits, correct?

5         A.    Yes, ma'am.

6         Q.    How many?

7         A.    Approximately, nine, I

8    believe.  I don't know how many.

9         Q.    Against whom?

10        A.    Comenity, Credit One,

11   Navient, Wells Fargo.

12        Q.    Why did you file so many

13   lawsuits?

14        A.    Because I'm allowed to.

15        Q.    What do you mean by you're

16   allowed to?

17        A.    They're calling my number as

18   a wrong party, and I've told people

19   that -- I've told them not to call and

20   they continue to call.

21        Q.    Does your current attorney

22   represent you in all of those lawsuits?

23        A.    Yes, ma'am.

24        Q.    Have you brought any

Contains Confidential Portion

1    pre-litigation matters?

2          A.    I don't understand that

3    question.

4          Q.    Any -- have you made or

5    tried to make claims against a company

6    prior to suing them, like a demand?

7          A.    Yes, ma'am.

8          Q.    A demand for -- okay.

9                How many of those have you

10   brought or how many demand letters have

11   you sent out?

12         A.    Oh, approximately, 20.

13         Q.    Okay.  And have you sent

14   them yourself or were you represented?

15         A.    I was -- I did send them

16   myself.

17         Q.    Okay.  Were you represented

18   for any of those demand letters that you

19   sent out?

20         A.    Prior to knowing my

21   attorney?

22         Q.    No.  Post knowing your

23   attorney?

24         A.    Oh, since knowing, yes.  I

Contains Confidential Portion

1   person?

2        A.    Correct.

3        Q.    Okay.  Do you have any other

4   attorneys?

5        A.    Michael Manning.

6        Q.    Okay.  Other than Michael

7   Manning, do you have any other attorneys?

8        A.    No, ma'am.

9        Q.    Okay.  Were you -- you

10  mentioned looking on the Internet, but

11  were you referred to this attorney by

12  anyone?

13       A.    No, ma'am.

14       Q.    Okay.  What is your cell

15  phone number?

16       A.    My cell phone number?

17       Q.    Yes.

18       A.    My personal cell phone

19  number?

20       Q.    Yes.

21       A.    860-729-4777.

22       Q.    I also have an 860 cell

23  phone number.

24       A.    Oh, you do?

Contains Confidential Portion

1    A.    Yes, ma'am.

2    Q.    More than 40 cell phone
3    numbers?  Getting up there.

4    A.    Yes.  Yes.  Yes.  Can I tell
5    you how they fit when I brought them
6    here?

7    Q.    Sure.

8    A.    They fit in a shoebox.

9    Q.    Okay.

10   A.    Does that give you a...

11   Q.    Not really.

12   A.    Okay.

13   Q.    I don't know how big they
14   are.  Okay.

15         So at the point of 40 would
16   you say that you can't estimate?  Do you
17   have more than 40 cell phone numbers or
18   you cannot say?

19   A.    I don't know.

20   Q.    You don't know.  Okay.  But
21   you have more than 35?

22   A.    I do.

23   Q.    And you don't know if you
24   have more than 40?

Contains Confidential Portion

1      A.     I don't.  I'm sorry.

2      Q.     Okay.

3      A.     I don't count them.  I

4  haven't counted them.

5      Q.     Okay.  Do you know what

6  those cell phones numbers are as in do

7  you know the phone numbers themselves?

8      A.     I don't.

9      Q.     You don't.  Okay.

10             Do you know what phone

11  numbers Wells Fargo Bank called you on?

12      A.     No, I don't.

13      Q.     Not offhand?

14      A.     Not offhand, no.

15      Q.     Okay.  Why do you have so

16  many cell phone numbers?

17      A.     I have a business suing

18  offenders of the TCPA business -- or

19  laws.

20      Q.     And when you say business,

21  what do you mean by business?

22      A.     It's my business.  It's what

23  I do.

24      Q.     So you're specifically

Contains Confidential Portion

1   buying these cell phones in order to

2   manufacture a TCPA lawsuit?  In order to

3   bring a TCPA lawsuit?

4          A.     Yeah.

5          Q.     In what span of time did you

6   purchase these cell phones?

7          A.     From approximately June of

8   2014.

9          Q.     To?  Starting in June of

10  2014?

11         A.     Yes.

12         Q.     Okay.  Did you purchase them

13  all at the same time?

14         A.     No, ma'am.

15         Q.     Okay.  In what time frame

16  did you acquire the cell phones, the

17  approximately 35 plus cell phones?

18         A.     'Til maybe approximately two

19  months ago.

20         Q.     Okay.  Are you continuing to

21  buy cell phones?

22         A.     I have not.  Two months ago

23  I have not.

24         Q.     Okay.  Why did you stop?

Contains Confidential Portion

1          Q.     And where are you buying

2     these phones?

3          A.     I've bought them different

4     places.  WalMart, Dollar General.

5          Q.     Okay.

6          A.     And from Tracfone

7     themselves.

8          Q.     Okay.  Do you buy them for

9     yourself or for someone else?

10          A.     No.  I buy them for myself.

11     These are my phones.

12          Q.     Were you told by anybody to

13     buy the phones?

14          A.     No.

15          Q.     Okay.  You had mentioned a

16     Randy.  Did Randy tell you to buy phones?

17          A.     We talked about it, but he

18     didn't tell me to do it.  I did it on my

19     own.

20          Q.     Okay.  How did you first get

21     the idea to buy phones?  Was it from

22     Randy?

23          A.     Yes.  We talked almost

24     daily, and he suggested it.

Contains Confidential Portion

1          Q.     Okay.  What cell phone

2     numbers are you claiming Wells Fargo

3     called in this case?

4          A.     I don't have that.  I can

5     look.

6          Q.     Okay.

7          A.     If you would like me to

8     look?

9          Q.     Go ahead.

10          A.     305-815-4589 and the other

11     one is 863-398-6128.

12          Q.     Okay.  Who is the cell phone

13     provider for these phones?

14          A.     Tracfone.

15          Q.     Do you have a log-in name

16     and password for Tracfone?

17          A.     No, I don't.

18          Q.     When you purchase these

19     phones, walk me through the process of

20     how these cell phones get activated?

21          A.     I use my cell phone and I

22     dial the number, and they ask me what ZIP

23     code I want to put it in, and they also

24     ask me the serial number.

Contains Confidential Portion

1          Q.     Okay.  And so you -- do you

2     select the ZIP code?

3          A.     Yes, I do.

4          Q.     And what ZIP code did you

5     select or do you select?

6          A.     Normally, Florida number --

7     Florida ZIP codes.

8          Q.     And why is that?

9          A.     Because there's a depression

10    in Florida.

11         Q.     Okay.  So you're -- what do

12    you mean by there's a depression in

13    Florida?  Why are you selecting a Florida

14    number?

15         A.     I knew that people had

16    hardships in Florida, that they would be

17    usually defaulting on their loans or

18    their credit cards.

19         Q.     Okay.  So is there another

20    purpose that you use these cell phones

21    for other than --

22         A.     No.

23         Q.     -- to -- no.

24                So the purpose is to bring a

Contains Confidential Portion

1    TCPA lawsuit?

2            A.      Correct.

3            Q.      Does anyone you know ever

4    call you at these phone numbers?

5            A.      No, ma'am.

6            Q.      Did you ever use any of

7    these phone numbers to call anyone?

8            A.      No, ma'am.

9            Q.      For the two phone numbers

10   specific to this case, I'm just going to

11   call them by the last four digits, the

12   4589 number and the 6128 number, when did

13   you purchase those phones?

14           A.      Approximately, September

15   2014, I believe.  I just really don't

16   know.  I have no way of knowing.

17           Q.      Okay.  Is that -- do you

18   know where you bought these two specific

19   phones?

20           A.      No, I don't.

21           Q.      Did you have to purchase a

22   coverage plan?

23           A.      No.  They're prepaid.

24           Q.      Okay.  And they're prepaid

Contains Confidential Portion

1    for how many minutes?

2         A.    Initially, 60 minutes.

3    Sixty minutes.  No.  No.  No.  No.  Ten

4    minutes for 60 days.  I'm sorry.

5         Q.    Okay.  And did you ever add

6    minutes to these phones?

7         A.    Yes, I did.

8         Q.    Do you know if you added

9    minutes specifically to the two phone

10   numbers at issue here?

11        A.    Yes, I did.

12        Q.    Okay.  How many minutes did

13   you add?

14        A.    I have no way of knowing.

15        Q.    How much does it cost to add

16   minutes?

17        A.    I use a 19.99 airtime card.

18        Q.    And how many times have you

19   added minutes to the various --

20        A.    I have no way of knowing.

21        Q.    Okay.  Have you added

22   minutes to almost all of the 35 phones?

23        A.    Yes, ma'am.

24        Q.    Okay.  And the purpose of

Contains Confidential Portion

1  adding minutes is so that they

2  will -- these phones will receive more

3  calls?

4      A.    Correct.

5      Q.    Do you ever have to provide

6  information, personal information when

7  purchasing these cell phones?

8      A.    No.

9      Q.    Do you have to provide an

10 address?

11     A.    No.

12     Q.    Do you have to provide

13 another cell phone number or anything

14 like that?

15     A.    No, ma'am.  I would like to

16 clarify that.  You can add -- you can but

17 there's also an opt out option of

18 not -- and I haven't provided.  You

19 either can or you can't.

20     Q.    Provide personal information

21 when buying these phones?

22     A.    Correct.  Correct.  Correct.

23     Q.    Okay.  So did you

24 specifically choose just the area code or

Contains Confidential Portion

1          Q.    So 863 is Lakeland, Florida,

2    to your understanding?

3          A.    That's correct.

4          Q.    And so is 305.  Is that

5    correct?

6          A.    No.  It's Orlando, I

7    believe.

8          Q.    Okay.

9          A.    I'm not positive.

10         Q.    Okay.  So then the state,

11   Pennsylvania, that's just indicating

12   Flinton, Pennsylvania where you were

13   living?

14         A.    Correct.

15         Q.    Is that correct?  Okay.

16               How did you use this phone

17   number after it was activated, if at all?

18         A.    For my business.

19         Q.    Okay.  When you say for your

20   business, what do you mean?

21         A.    Suing clients like yours,

22   Wells Fargo, for violating the TCPA.

23         Q.    Okay.  So would you

24   keep -- you mentioned a shoe box.  Would

Contains Confidential Portion

1  you just keep the phone in a shoe box?

2       A.    No.  No.  No.  No.  You have

3  to -- you have to plug them in to keep

4  them active, batteries active.

5       Q.    Okay.  And then what would

6  you do with these phones?  Would you wait

7  for them to ring?

8       A.    Yes.

9       Q.    Okay.  And then when they

10 ring, what would you do?

11      A.    I would -- different --

12 different ways.  I would initially pick

13 it up to see who it was and document that

14 or I would -- if I had already told them

15 not to call, I would just document it on

16 a log that you've -- I believe you have.

17      Q.    Did you -- was it your

18 practice to pick up each of the phones

19 when they rang the first time?

20      A.    I would try to, yes.

21      Q.    Okay.  And when you picked

22 it up, you indicated that you would find

23 out who was calling?

24      A.    Correct.

Contains Confidential Portion

1       Q.    Did you also indicate to

2   those callers to stop calling?

3       A.    Yes.  Some of the times.

4   Not all of the times.  I would have to

5   look at my logs.

6       Q.    Okay.  And when you picked

7   up the phone -- do you know if you picked

8   up the phone ever with regard to Wells

9   Fargo?

10      A.    Yes.

11      Q.    And do you know if you spoke

12  with someone?

13      A.    Yes.

14      Q.    Okay.  Do you have any idea

15  who you spoke with?

16      A.    I would have to see my logs

17  to...

18          MS. GUPTA:  Okay.  We'll go

19      ahead and mark plaintiff's

20      discovery responses as Exhibit-9.

21      I'll give you a copy.  Here you

22      go.

23          MR. FREEMAN:  Do you have a

24      copy for yourself?

Contains Confidential Portion

1      A.    Okay.  So the first time it

2  looks like I picked up was 9/24 at 2:19,

3  and I told whoever I thought at that time

4  was there, which I was informed later

5  that there was nobody there; I told them

6  not to call, and I documented that nobody

7  was there.

8      Q.    Nobody was there as in you

9  didn't actually communicate with anybody?

10     A.    That's correct.

11     Q.    Okay.  So there was nobody

12 you told not to call?

13     A.    Correct.

14     Q.    Okay.  But you are

15 indicating here that you answered the

16 phone?

17     A.    Correct.

18     Q.    Okay.  On the 10/2 -- is

19 that 10/2, the next call?

20     A.    At 1:23 or 1:26.

21     Q.    1:26, did you answer the

22 phone on that day?

23     A.    No.

24     Q.    No.  Okay.  Then how do

Contains Confidential Portion

1      Q.    So from your notation, did

2   you ever speak to someone?

3      A.    There, no.  No, ma'am.

4           MR. FREEMAN:  Are you asking

5        about that day?

6           MS. GUPTA:  Yes.

7   BY MS. GUPTA:

8      Q.    On 9/16, I'm just trying to

9   interpret from --

10     A.    My notes?

11     Q.    Yeah.  Your notes.  So you

12  tried to call, but you never spoke to

13  somebody --

14     A.    Correct.

15     Q.    -- correct?  Okay.

16          How about the next notation

17  here on this log where it starts with

18  "answered phone."  It's next to a

19  notation -- or next to a date of 9/22,

20  but I don't know if that's the date.

21     A.    9/22, 6:35 -- at 6:35?

22     Q.    Yeah.

23     A.    What I notate there is I

24  answered the phone and told them to quit

Contains Confidential Portion

1  calling.  Nobody was there, though.

2          Q.     Okay.  So, again, you did

3  not speak to anybody?

4          A.     No.  Correct.

5          Q.     Okay.  So instead of going

6  through each of the subsequent notations,

7  I will let you take a look at it

8  yourself.

9                 Did you -- based on these

10  notations, did you ever speak to anybody

11  at Wells Fargo?  And you can look at the

12  next page, too, and take your time.

13         A.     On this page I did not.

14         Q.     On this page you did not.

15  Okay.  On Stoops 009 you did not.  Okay.

16         A.     At the top it says 2 of 4.

17         Q.     Yes.

18         A.     I did speak to somebody

19  10/21 --

20         Q.     Okay.

21         A.     -- at 7:53.

22         Q.     Okay.

23         A.     Oh, no.  I apologize.

24  Tracfone has a problem that some of the

Contains Confidential Portion

1  times, the date will go back and revert

2  back to one, one.  Why it does that, I

3  don't know.  So what I put here is it

4  should have been 10/21 at approximately

5  4:15.  Then I write my note.  I spoke to

6  Yolanda and told her I'm not the person

7  she's trying to reach, stop calling me.

8       Q.    Okay.  And so on 10/21 you

9  did speak to an agent?

10       A.    Yolanda.  Correct.

11       Q.    Yolanda.  Okay.  And do you

12  know the exact words you used or you

13  don't?

14       A.    No.

15       Q.    Okay.  Was that the first

16  time that you communicated with anybody

17  at Wells Fargo directly?

18       A.    Yes.

19       Q.    Okay.  Were there any other

20  times that you spoke with anybody at

21  Wells Fargo?

22       A.    Yes.

23       Q.    When?

24       A.    On 10/23, 1:28, I put down

Contains Confidential Portion

1    that call will be monitored.  A Miriam

2    answered.  It was very hard to hear her.

3    I told her I'm not the person they are

4    trying to reach, to stop calling.

5           Q.    Okay.  Is that it for the

6    document marked Stoops 10 in terms of

7    anybody you spoke to?  You're saying that

8    you spoke to a Yolanda and you spoke to a

9    Miriam.  Is that correct?

10          A.    Correct.

11          Q.    Okay.  Anybody else on this

12   date?

13          A.    I tried to call again on

14   10/21/14, the phone number, and, again,

15   they asked me for a mortgage number, and

16   I did not have it.  So they wouldn't send

17   me to a real person.

18          Q.    I see.  Okay.  How about the

19   next page?

20          A.    Oh, I did speak on 11/14.

21          Q.    Yeah.

22          A.    12:31 Chris Green called me.

23          Q.    Okay.

24          A.    And I did tell him that, by

Contains Confidential Portion

1    anything else to document phone calls to

2    your phone number, to these cell phone

3    numbers, to these two cell phones numbers

4    at issue here?

5            A.    No.

6            Q.    Did you use any sort of an

7    app, an application --

8            A.    No.

9            Q.    -- for tracking phone calls?

10           A.    No.

11           Q.    Did you ever block phone

12   calls?

13           A.    No.

14           Q.    Okay.  Did each of the calls

15   that -- ring through to your phone that

16   you've indicated on your log?

17           A.    Ring through to --

18           Q.    To these two phones?

19           A.    Yes.

20           Q.    So you indicated, we just

21   went through the logs, that you spoke

22   with a Yolanda and you spoke with a

23   Miriam?

24           A.    Correct.

Contains Confidential Portion

1       Q.    Based on your notations, is

2    it your testimony that you told those two

3    individuals to stop calling the cell

4    phone?

5       A.    Correct.

6       Q.    Okay.  Was there any other

7    way that you indicated to Wells Fargo to

8    stop calling you?

9             MR. FREEMAN:  Objection to

10            form.  You can answer.

11      A.    I attempted to call as we

12   spoke of, but...

13      Q.    Okay.  So we just went over

14   the logs, and for the 4589 number we did

15   not see any actual communications with an

16   agent.  Is that correct?

17      A.    That's correct.

18      Q.    Okay.  But for the 6128

19   number, you indicated per your logs two

20   communications.  Is that correct?

21      A.    Correct.

22      Q.    Okay.  So other than those

23   two communications, do you recall

24   independently or through your logs of any

Contains Confidential Portion

1   other communications with Wells Fargo?

2             MR. FREEMAN:  Objection to

3       form.  You can answer.

4       A.    I don't -- I don't recall.

5       Q.    Okay.  Do you know if you

6   specifically used the words "stop

7   calling"?

8       A.    I believe so.  I don't

9   totally recall.

10      Q.    Okay.  If it was your

11  intention for calls to continue, because

12  as you've indicated you believe this is a

13  business to bring a TCPA lawsuit, why

14  would you tell the caller to stop

15  calling?

16      A.    I was hopefully going to ask

17  my lawyers to do trebling with knowing

18  and willful.

19      Q.    Can you explain to me what

20  that means?

21      A.    From my understanding is if

22  a debt collector or a telemarketer

23  continues to call and they knowingly and

24  willingly continue to do it, it can be a

Contains Confidential Portion

1   fine of trebling.

2       Q.    Okay.  And is it your

3   understanding that knowing and willing

4   occurs after you've told a caller to stop

5   calling?

6           MR. FREEMAN:  Objection.

7       Legal conclusion.  You can answer.

8           MS. GUPTA:  I'm asking about

9       her understanding.

10          THE WITNESS:  That's my

11      understanding.

12  BY MS. GUPTA:

13      Q.    Okay.  So just to be extra,

14  have you told me about every time you

15  told Wells Fargo that they were calling

16  the wrong number?

17      A.    I believe so.

18      Q.    Okay.

19          MS. GUPTA:  Why don't we

20      take a break since we have to

21      change the videotape, and then we

22      can use the restroom.

23          THE VIDEOGRAPHER:  The time

24      is 11:31.  We're off the record.

Contains Confidential Portion

1    purchasing these phones because you have

2    a business of bringing TCPA lawsuits?

3         A.    Correct.

4              MR. FREEMAN:  Are we done

5         with this, by the way?

6              MS. GUPTA:  Yes.

7    BY MS. GUPTA:

8         Q.    So when you buy these

9    phones, you know there's a chance that

10   they will ring, correct?

11        A.    Possibly.  Yes.

12        Q.    Okay.  And it's -- is it

13   your intention that these phones will

14   ring from a creditor?

15        A.    Yes.

16        Q.    Okay.  And you are okay with

17   that?

18        A.    Yes.

19        Q.    Okay.  So are you -- you're

20   assuming the risk that these phones will

21   ring.  Is that correct?

22        A.    Yes.

23              MR. FREEMAN:  Objection.

24        Legal conclusion.

Contains Confidential Portion

1          MS. GUPTA:  Okay.

2          MR. FREEMAN:  You can

3      answer.

4          THE WITNESS:  Yes.

5  BY MS. GUPTA:

6      Q.    Are you purchasing these

7  phones purposefully to cause them to

8  ring?

9      A.    Yes.

10      Q.    Okay.  And you understand

11  that the phones ringing is -- is with --

12  is it your intention that these phone

13  calls are going to result then in some

14  sort of a demand whether it's

15  pre-litigation or an actual lawsuit?

16      A.    I believe so.

17      Q.    Okay.

18          MS. GUPTA:  This is what I

19      was showing you earlier.

20          (Whereupon, a document was

21      marked for identification as

22      Exhibit No. 11.)

23  BY MS. GUPTA:

24      Q.    Ms. Stoops, please take a

Contains Confidential Portion

1    look at this document.  I'll give you a

2    moment to look it over.

3              Okay.  Have you seen this

4    document before?

5         A.    No.

6         Q.    Okay.

7              MR. FREEMAN:  Just to

8         clarify, you mean not when you

9         previously showed it to her, you

10        mean prior to today?

11   BY MS. GUPTA:

12        Q.    Not previously.  Prior to

13   today, have you ever seen this document

14   which is entitled Taisha Campbell versus

15   Student Assistance Corporation?

16        A.    Correct.

17        Q.    And you had previously

18   indicated that you know somebody by the

19   name of Taisha Campbell.  That's your

20   sister.  Is that correct?

21        A.    That's my sister.  Correct.

22        Q.    Okay.  What is her address?

23        A.    124 Hemlock Road, Flinton,

24   PA, 16640.

Contains Confidential Portion

1        Q.     And are you currently living

2    with her?

3        A.     Yes.

4        Q.     Are you close with your

5    sister?

6        A.     Yes.  Very much.

7        Q.     You see her every day.  Is

8    that correct?

9        A.     I have not seen her for the

10   past three weeks because I was in

11   Florida.

12       Q.     Okay.  What were you doing

13   in Florida?

14       A.     Visiting my grandchildren

15   and children.

16       Q.     Okay.  How long has Taisha

17   lived in Pennsylvania?

18       A.     Over five years.

19       Q.     Okay.

20       A.     I believe.

21       Q.     Have you talked with Taisha

22   about your TCPA lawsuits?

23       A.     Somewhat, yes.

24       Q.     Have you talked to her about

Contains Confidential Portion

1          (Beginning of the
2          Confidential portion of the
3          transcript.)
4   BY MS. GUPTA:
5          Q.    Do you know an Eliot
6   Pereira?
7          A.    No.  No.
8          Q.    Okay.  Have you ever heard
9   the name Eliot Pereira prior to today?
10         A.    I don't -- I don't believe
11  so.
12         Q.    Okay.  Are you aware that
13  he's a credit card customer of Wells
14  Fargo?
15         A.    No.  I did not know that.
16         Q.    Do you know a Jonathan or
17  Joy Newman?
18         A.    No, ma'am.
19         Q.    Okay.  Are you aware that
20  they are mortgage customers of Wells
21  Fargo?
22         A.    No.  I did not know them.
23         Q.    Okay.  Do you know anyone
24  who owes a debt to Wells Fargo?

Contains Confidential Portion

```
1          A.    No, ma'am.
2          Q.    Did you ever provide either
3    of the phone numbers here to Wells Fargo?
4          A.    Yes.
5                MR. FREEMAN:  Objection.
6          You can answer.
7          A.    Yes.  When I --
8                MS. GUPTA:  Objection as
9          to...?
10               MR. FREEMAN:  To form.
11   BY MS. GUPTA:
12         Q.    Okay.  Did you provide
13   either the 6128 or the 4589 number to
14   Wells Fargo directly?
15         A.    When I sent the letter of
16   demand.
17         Q.    But you did not provide the
18   phone numbers to them in order for them
19   to contact you.  Is that correct?
20         A.    No.
21         Q.    Okay.
22               MS. GUPTA:  That's the part
23         of the transcript that I was going
24         to mark as confidential.  We're
```

Contains Confidential Portion

1    anything other than what I'm going to

2    represent to you of statutory damages,

3    $500 for phone calls?

4         A.    I'm sorry.

5         Q.    Are you seeking anything

6    other than the damages under the TCPA,

7    the $500 per phone call?

8         A.    No.

9         Q.    What damage did these phone

10   calls cause you exactly?

11        A.    Well, the damages are that I

12   bought the phone.  I went out and bought

13   the phone.  I kept track of the phone

14   logs whenever they were ringing.  I

15   documented those on the phone logs.  I

16   kept the phone cards on the phones

17   themselves if they were ready to run out

18   of minutes or days.  I kept the batteries

19   going.

20        Q.    Anything else?

21        A.    Not that I can think of.

22        Q.    Are you claiming any

23   emotional distress here?

24        A.    No.

Contains Confidential Portion

1    Legal conclusion.  You can answer.

2    A.    Other charges, no.  No.

3    Q.    Okay.  So the only money

4  that you paid was to purchase the phone

5  and to add minutes to the phone?

6    A.    Correct.

7    Q.    Okay.

8    MS. GUPTA:  I'm just going

9    to take a couple minutes to look

10    over my notes.

11    THE VIDEOGRAPHER:  The time

12    is 12:09.  We are off the record.

13    (A short break was taken.)

14    THE VIDEOGRAPHER:  The time

15    is 12:13.  We are back on the

16    record.

17  BY MS. GUPTA:

18    Q.    Hi, Ms. Stoops.  I just have

19  a few follow-up questions.  We're almost

20  finished.

21    A.    Okay.

22    Q.    We had marked as Exhibit-10

23  your debit card statement.  When did you

24  print that document?

Contains Confidential Portion

1        A.      A couple days ago.

2        Q.      Okay.  Did you print that to

3    provide to your attorney?

4        A.      Yes.  Yes, ma'am.

5        Q.      For the charges that you

6    incurred to purchase phones, were you

7    ever reimbursed for those?  Did you pay

8    for the phones yourself or were you ever

9    reimbursed?

10       A.      I always pay for them

11   myself.

12       Q.      Okay.  So there was no

13   reimbursement?  Nobody paid you back for

14   any phones that you purchased?

15       A.      No.

16       Q.      Okay.

17       A.      No.

18       Q.      Which area codes did you

19   pick?  You mentioned Florida, but which

20   specific area codes did you pick when

21   purchasing these phones?

22              MR. FREEMAN:  Objection to

23       form.  You can answer.

24       Q.      Do you understand the

Contains Confidential Portion

1    question?

2         A.    Yes.  Yes.  I normally

3    picked Florida.

4         Q.    Okay.

5         A.    Because that's where I'm

6    most familiar with.

7         Q.    Okay.  Do you know the

8    actual digits for the area code?

9         A.    Yes.

10        Q.    Can you tell me them?

11        A.    33813, 33811, and 33809.

12        Q.    Those are the ZIP codes.  Is

13   that correct?

14        A.    Correct.

15        Q.    Okay.  Do you know what the

16   corresponding area codes are for the

17   phone numbers?

18        A.    Yes.  863.

19        Q.    Are they all 863?

20        A.    I believe so.

21        Q.    Okay.  And when you purchase

22   phones for the ZIP codes, are you given a

23   phone with an area code of 863?

24        A.    I believe so.  Yes.

Contains Confidential Portion

1       Q.   Okay.  For our case, for the

2  two phone numbers at issue here, what is

3  the proof that you own the phones?  What

4  is your proof that you own the phones?

5          MR. FREEMAN:  Objection.

6      Legal conclusion.  You can answer.

7       A.   I have them in my purse

8  right now.

9       Q.   Okay.  So your proof is that

10  you carry them on you, that you have them

11  with you?

12       A.   I have them with me today.

13       Q.   Okay.  Have you had them

14  with you or in your possession ever since

15  the date that you purchased the phones

16  which you had said was approximately

17  September --

18       A.   Yes.

19       Q.   -- of last year?

20       A.   Yes.

21       Q.   Okay.  At any point were

22  they not in your possession?

23       A.   No.

24       Q.   How about when you travel?

Contains Confidential Portion

1      A.      I take them with me.

2      Q.      Okay.  Do you take all 35 --

3  approximately 35 phones with you?

4      A.      Yes, ma'am.

5      Q.      With you at all times?

6      A.      Yes, ma'am.

7      Q.      For the phones that are

8  ringing, for example, during this

9  deposition, how -- are you keeping track

10 of them?

11     A.      Yes, ma'am.

12     Q.      How are you keeping track of

13 them?

14     A.      On my phone logs.

15     Q.      No.  I mean, specifically

16 during this deposition, you're saying you

17 have it with you, 35 phones.  Do you have

18 with you 35 phones today?

19     A.      No.  No, I don't.  They're

20 back at the motel.

21     Q.      Okay.  So is it fair to say

22 you are not tracking phone calls during

23 the time frame that you are away from the

24 motel?

Contains Confidential Portion

1   filed lawsuits, I'm not talking about

2   demand letters, they were filed through

3   your current attorney?

4         A.     Correct.

5         Q.     Sabatini law firm, correct?

6         A.     Yes.  Yes.  Correct.

7         Q.     Okay.  Do you know exactly

8   how many --

9         A.     No, I don't.

10        Q.     -- lawsuits?  Okay.

11               We're talking more than five

12   lawsuits, correct?

13        A.     I really don't know.  I

14   really don't know.

15        Q.     Okay.  Do you know -- and

16   you can estimate if you don't know an

17   exact number -- how many TCPA claims that

18   the Manning law firm is assisting you

19   with?

20        A.     I don't know.

21        Q.     Is it more than one?

22        A.     Yes.

23        Q.     Is it more than two?

24        A.     Yes.

Contains Confidential Portion

1      Q.    More than five?

2      A.    Yes.

3      Q.    Okay.  How about more than

4  ten?

5      A.    Yes.

6      Q.    More than 15?

7      A.    Yes.

8      Q.    Okay.  I don't have to keep

9  going.  Do you have an estimate?

10     A.    I don't know.  I don't know.

11     Q.    More than 20?

12     A.    Yes, but I don't know the

13  actual number.

14     Q.    No.  I understand.

15     A.    Okay.

16     Q.    More than 25?

17     A.    Yes.

18     Q.    Okay.  More than 30?

19     A.    Yes.

20     Q.    Okay.  So I guess I'm

21  confused.  If you have 35 --

22  approximately 35 phones, maybe here and

23  there, a little bit more, a little bit

24  less, how is the Manning law firm