# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA

MELODY STOOPS,

           Plaintiff,

   vs.

WELLS FARGO BANK, N.A.,

        Defendant.

Case No. 3:15-cv-00083-KRG

## WELLS FARGO BANK, N.A.'S REPLY SUPPORTING MOTION
## FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...................................................................................................1

II. ARGUMENT—TRY AS SHE MIGHT PLAINTIFF HAS PRESENTED NO
CONVINCING RATIONALE SUPPORTING MANUFACTURED TCPA
LAWSUITS ...........................................................................................................2

    A.  Plaintiff's Unfounded Mudslinging Is Immaterial To The Outcome Of The
Motion....................................................................................................................2

    B.  Plaintiff Is Trapped By Her Admission That She Manufactured The Calls
At Issue In This Case And Wells Fargo Has Made No Similar Admission ...........4

    C.  Plaintiff "Expressly Consented" To The Calls By Affirmatively Seeking
Them Out ...............................................................................................................6

    D.  Plaintiff's Claim Is Barred By The Common Law Doctrines Of
Assumption Of Risk And *Volenti Non Fit Injuria* Which Were Not
Directly Abrogated By The TCPA And Therefore Apply In This Case.................8

        1.  Congress Legislates Against a Backdrop of Common Law
Principles That Are Not Abrogated by Federal Statute Absent
Clear and Direct Statutory Language............................................................10

        2.  The Doctrines of Assumption of Risk and *Volenti Non Fit Injuria*
Are Fixtures in the Common Law of Tort .................................................12

        3.  Neither the Language Nor the History of the TCPA "Speak
Directly" with the Intent to Abrogate the Common Law Doctrines
of Assumption of Risk and *Volenti Non Fit Injuria* ..................................13

        4.  Plaintiff Plainly Created Her Own Harm and Assumed the Risk of
Calls Such that Her Claims Are Barred ....................................................15

        5.  Plaintiff's Arguments Regarding Other Federalist Doctrines Are
Inapposite.....................................................................................................16

            (a)  *Hawk Valley* Addresses a Situation Where Federal and
State Law Were in Direct Conflict Which is not the Case
Here................................................................................................16

            (b)  No "Savings Clause" is Required in the Absence of
Preemption ....................................................................................18

(c)      The Analysis of *Beyond Systems, Inc.* is in Accord With Wells Fargo's Position .................................................................18

E.      Plaintiff Argues Past Wells Fargo's "Zone of Interest" Argument .......................19

F.      Plaintiff's Lacks Article III Standing Anyway ......................................................22

G.      The FCC Has Not Blessed The Manufacture Of TCPA Lawsuits.........................23

III.      CONCLUSION.........................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

C<small>ASES</small>

*ACA International, et al. v. F.C.C.*,
  No. 15-1211 (D.C. Cir. filed July 10, 2015) .......................................................................3

*Astoria Fed. Sav. & Loan Ass'n v. Solimino*,
  501 U.S. 104 (1991) ............................................................................................9, 10

*Barnes v. Am. Tobacco Co.*,
  161 F.3d 127 (3d Cir. 1998) ............................................................................ passim

*Beard v. Banks*,
  548 U.S. 521 (2006) ...............................................................................................4

*Bennett v. Spear*,
  520 U.S. 154 (1997) .........................................................................................20, 21

*Beyond Systems, Inc. v. Kraft Foods, Inc.*,
  777 F.3d 712 (2015) ............................................................................12, 15, 18, 19

*Butynski v. Springfield Terminal R.Co.*,
  592 F.3d 272 (1st Cir. 2010) ..................................................................................15

*Central Vermont Railroad v. White*,
  238 U.S. 507 (1915) ..............................................................................................11

*Charlton v. Toyota Indus. Equip.*,
  714 A.2d 1043 (Pa. Super. 1998) ..........................................................................19

*Charvart v. Travel Servs.*,
  110 F. Supp. 3d 894 (N.D. June 24, 2015) ..............................................................3

*Cipollone v. Liggett Grp., Inc.*,
  505 U.S. 504 (1992) ..............................................................................................17

*Clapper v. Amnesty Int'l USA*,
  133 S. Ct. 1138 (2013) ..........................................................................................22

*Collinsgru v. Palmyra Bd. of Educ.*,
  161 F.3d 225 (3rd Cir. 1998) ........................................................................ passim

*Consol. Rail Corp. v. Gottshall*,
  512 U.S. 532 (1994) ............................................................................10, 11, 13, 14

*Conte Bros. Auto. v. Quaker State-Slick 50, Inc.*,
 165 F.3d 221 (3d Cir. 1998)............................................................................20

*Farrell v. Univ. of Delaware*,
 No. CIV.A. 07C09175 PLA, 2009 WL 3309288 (Del. Super. Oct. 8, 2009)...........................6

*Fitzhenry v. ADT Corp.*,
 No. 14-80180, 2014 WL 6663379 (S.D. Fla. Nov. 3, 2014) .............................................21, 22

*Gager v. Dell Fin. Servs., LLC*,
 727 F.3d 265 (3d Cir. 2013)...................................................................6, 7, 9, 11

*Graden v. Conexant Sys., Inc.*,
 496 F.3d 291, 295 (3d Cir. 2007)......................................................................19

*Green v. Bock Laundry Mach. Co.*,
 490 U.S. 504, 109 S.Ct. 1981, 104 L.Ed.2d 557 (1989)..................................................10, 13

*Hartley-Culp v. Green Tree Servicing, LLC*,
 52 F. Supp. 3d 700, 703 (M.D. Pa. 2014) ...............................................................11

*Havens Realty Corp. v. Coleman*,
 455 U.S. 363 (1982)...................................................................................21

*Hawk Valley, Inc. v. Taylor*,
 No. 10-CV-00804, 2012 WL 1079965 (E.D. Pa. Mar. 30, 2012)...........................................16, 17

*Howlett v. Rose*,
 496 U.S. 356 (1990)...................................................................................17

*In the Matter of Rules & Regulations Implementing the TCPA*,
 23 F.C.C. Rcd. 559 (2008) .............................................................................7

*In re Horizon Healthcare Servs., Inc. Data Breach Litig.*,
 No. CIV.A. 13-7418 CCC, 2015 WL 1472483 (D.N.J. Mar. 31, 2015)......................................22

*In re Rules and Regulations Implementing the TCPA*,
 30 FCC Rcd. 7961 (July 10, 2015) ....................................................................7, 23

*In re Rules and Regulations Implementing the TCPA*,
 7 F.C.C. Rcd. 8752 (1992) .............................................................................7

*Jackson v. Caribbean Cruise Line, Inc.*,
 88 F. Supp. 3d 129, 137-38 (E.D.N.Y. Feb. 17, 2015) ...................................................11

*Lujan v. Defenders of Wildlife*,
 504 U.S. 555 (1992)...................................................................................20

*Mais v. Gulf Coast Collection Bureau, Inc.*,
   768 F.3d 1110 (11th Cir. 2014) ................................................................7

*Manufacturers Auto Leasing, Inc. v. Autoflex Leasing, Inc.*,
   139 S.W.3d 342 (2004) .........................................................................13

*Martin v. Bureau of Collection Recovery*,
   2011 WL 2311869, No. 10 C 7725 *8 (N.D. Ill. June 13, 2011) ...........3

*Medtronic, Inc. v. Lohr*,
   518 U.S. 470 (1996) ..............................................................................17

*Miller v. Rite Aid Corp.*,
   334 F.3d 335 (3d Cir. 2003) .................................................................20

*Mims v. Arrow Financial Services, LLC*,
   132 S. Ct. 740 (2012) .......................................................................14, 16

*Monk v. Virgin Islands Water & Power Auth.*,
   53 F.3d 1381 (3d Cir. 1995) .................................................................12

*Roberts v. PayPal, Inc.*,
   No. C 12-0622 PJH, 2013 WL 2384242 (N.D. Cal. May 30, 2013) aff'd, 621
   F. App'x 478 (9th Cir. 2015) ..................................................................8

*Ruiz v. 1st Fid. Loan Servicing, LLC*,
   829 N.W.2d 53 (Minn. 2013) .................................................................4

*Satterfield v. Simon & Schuster, Inc.*,
   569 F.3d 946 (9th Cir. 2009) ...............................................................7, 8

*Shager v. Upjohn Co.*,
   913 F.2d 398 (7th Cir. 1990) .................................................................9

*Spokeo, Inc. v. Robins*,
   135 S. Ct. 1892 (2015) ..........................................................................22

*State ex. Rel. Charvart v. Frye*,
   114 Ohio St. 3d 76 (2007) .....................................................................13

*Testa v. Katt*,
   330 U.S. 386 (1947) ..............................................................................18

*Thomas v. Taco Bell Corp.*,
   879 F. Supp. 2d 1079 (C.D. Cal. 2012) aff'd, 582 F. App'x 678 (9th Cir.
   2014) .................................................................................................9, 11

*United States v. Hoslett*,
   998 F.2d 648 (9th Cir. 1993) .......................................................................6

*United States v. Texas*,
   507 U.S. 529 (1993)..............................................................9, 10, 13, 17

*Wheeler v. Travelers Ins. Co*.,
   22 F.3d 534 (3d Cir. 1994)..................................................................20

## STATUTES

Black's Law Dictionary (10th ed. 2014)..............................................12, 15

Fair Housing Act.....................................................................................21

Federal Employer's Liability Act .....................................................10, 11

## OTHER AUTHORITIES

Fed. Rule Civ. Proc. 56(e) .......................................................................4

H.R. REP. No. 102-317, at 17 (1991)......................................................14

Restatement (Second) of Torts 892A cmt. a (1979) ................................19

Restatement (Second) of Torts §§ 496A, 496D.......................................15

Restatement (Second) of Torts § 892 (1979).......................................6, 15

3 *Sutherland Statutory Construction* § 61.03 (Norman Singer ed., 5th ed. 1992)........................10

# I.

## INTRODUCTION

Wells Fargo's motion raises a single central question—can a party that has purchased a cellular phone, and paid for cellular service, solely for the purpose of seeking out and manufacturing wrong number telephone calls bring suit and recover under the TCPA?

General principles of fairness and justice, as well as the common law, the history and legislative background of the TCPA, and the very words of the statute all seem to scream out "No." Yet Plaintiff answers "Yes."

She arrives at her conclusion by adopting a series of false assumptions. The most profound is her assumption that Congress preempted common law doctrines preventing statutory exploitation when it enacted the TCPA. But that is not true. Congressional silence is read to encourage the application of such doctrines, not to abrogate them. Her second primary, but false, assumption is that the Federal Communications Commission ("FCC") blessed the Plaintiff's conduct in recent declaratory rulings. Opposition p. 24. But that is not true either. Absolving one of their duties to mitigate damages is not the same as authorizing one to create their own harm.

Smaller errors permeate her papers as well. For instance, Plaintiff reads the TCPA as requiring "express_ed_" consent when only "express" consent is actually needed. She argues, incorrectly, that only affirmative *deception* by a Plaintiff is sufficient to trigger the doctrines of *volenti non fit injuria* or assumption of the risk. And she argues that the presence of narrow statutory standing is *a fortiori* sufficient to place her within the "zone of interest" protected by the TCPA. Yet none of this is true and these arguments each misapprehend the applicable law.

In short, Plaintiff's entire Opposition is predicated on the assumption that the world is not what it is.  But while Plaintiff's suit might be sustainable in some alternate universe, it is certainly not permitted in this one.  Wells Fargo's motion ought to be granted.

## II.

### ARGUMENT—TRY AS SHE MIGHT PLAINTIFF HAS PRESENTED NO CONVINCING RATIONALE SUPPORTING MANUFACTURED TCPA LAWSUITS

**A.** **Plaintiff's Unfounded Mudslinging Is Immaterial To The Outcome Of The Motion**

Wells Fargo is not defending itself against the claims of a hypothetical consumer that received errant calls on a legitimate phone line.  Rather, it faces a very illegitimate Plaintiff that sought out and created the very injury upon which she now sues.  Plaintiff is, thus, mistaken that Wells Fargo's conduct, and not her own, is at issue on this motion.  *See* Opposition pp. 3-4.

Nonetheless, Plaintiff's opening salvo seeks to falsely characterize Wells Fargo as a careless, thoughtless, wrong-number-calling machine.  Opposition pp. 1-2.  While it is tempting to accept Plaintiff's invitation to create triable issues on immaterial facts—such as Plaintiff's assertion that "Wells Fargo does not allege any procedures in place to avoid calling its clients' cell phones after reassignment"[1]—there is enough to cover in this brief as it is.  As such, it suffices to say that Wells Fargo's motion is not about the strength of its TCPA compliance efforts, and is certainly not predicated on the social-desirability of wrong number calling, but rather on the impermissibility of manufactured lawsuits.

Importantly, while Plaintiff cites to several cases suggesting that the TCPA operates rather strictly in favor of a legitimate consumer[2] she presents none for the proposition that

---

[1]  *See*, *e.g.*, Plaintiff's Response to Movant's Concise Statement of Undisputed Material Facts, No.'s 2 – 6, 10-12, 18, 26. ___.

[2]  Opposition pp. 3-4 and 6-7.

manufacturing TCPA lawsuits is tolerable conduct.  The closest she comes is citations to a pair

of cases suggesting that "financial gain" is a proper motivator for a TCPA litigant.  *See*

Opposition pp. 3-4, citing *Martin v. Bureau of Collection Recovery*, 2011 WL 2311869,

No. 10 C 7725 *8 (N.D. Ill. June 13, 2011) ("*Martin*"); *Charvart v. Travel Servs.*, 110 F. Supp.

3d 894 (N.D. June 24, 2015) ("*Charvart*").  At best, however, *Charvart* and *Martin* suggest that

a repeat Plaintiff is an adequate class representative.  *See Charvart*, 110 F.Supp.3d 894 (finding

that pursuit of financial motivation does not disqualify a TCPA class representative); *Martin*, at

*4 (deeming "professional plaintiff" status irrelevant to a pending discovery dispute since

Seventh Circuit law does not prohibit a "repeat-player" from serving as a class representative).

While this may be a controversial issue, it is not the controversial issue presented by Wells

Fargo's motion.  Neither *Charvart* nor *Martin* address the permissibility of a Plaintiff actively

seeking to *create* the TCPA lawsuit, which is the bright red line the Plaintiff has crossed here.

Plaintiff also slings mud regarding Wells Fargo's advocacy efforts before the FCC.

Opposition p. 5.  No doubt the Commission rejected the "called party" definition Wells Fargo

preferred,[3] but Wells Fargo's motion did not seek to re-test that issue here.[4]  *See* Opposition pp.

6-7 (erroneously assuming otherwise).  Much to the contrary, Wells Fargo actually conceded

away the issue.  *See* Motion p. 9 ("Here, Ms. Stoops is a 'called party' because she was the

subscriber of the phone numbers at issue.").  Indeed, it is Ms. Stoops' status as a "called party"

that opens the door to one of Wells Fargo's principal argument—that by her conduct Ms. Stoops,

in fact, consented to the calls at issue.

---

[3]  That ruling is currently on appeal.  *See ACA International, et al. v. F.C.C.,* No. 15-1211 (D.C. Cir. filed July 10, 2015) (*Joint Brief for Petitioners* filed Nov. 25, 2015).

[4]  Plaintiff's reference to the Model Rules of Professional Conduct is particularly ill-mannered. *See* Opposition p. 5.  Far from hiding the Commission's "called party" definition from the Court, Wells Fargo simply adopted it as binding.

In short, Plaintiff's opening salvo is a diversion—full of sound and fury, but signifying nothing.

**B.      Plaintiff Is Trapped By Her Admission That She Manufactured The Calls At Issue In This Case And Wells Fargo Has Made No Similar Admission**

A person "makes" something when she "cause[s] [it] to exist or happen; [or] bring[s] [it] about." *Ruiz v. 1st Fid. Loan Servicing, LLC*, 829 N.W.2d 53, 57 (Minn. 2013). Here, the Plaintiff specifically admitted at deposition that she "manufacture[d]" the calls at issue (*See* Statement of Facts, ¶¶ 4, 5, 9, 10, and 21) and her conduct certainly supports her confession. Statement of Facts, ¶¶ 1-21, 27.

In Opposition, Plaintiff starts off by playing coy. Her first argument is that she is just like any other consumer except she is one who "just happen[s]" to understand that the calls at issue violated the TCPA. Opposition p. 8. Not quite. She also "just happened" to concoct and implement a scheme to manufacture the wrong number telephone calls for which she sues. *See* Statement of Facts, ¶¶ 2-19.[5] On that point she offers nothing to defend herself and the key factual issues supporting Wells Fargo's motion are entirely unopposed/undisputed. *See* Fed. Rule Civ. Proc. 56(e) (permitting Courts to "consider the fact undisputed for purposes of the motion," where "a party fails to properly…address another party's assertion of fact," as required in Rule 56(c)); *Beard v. Banks*, 548 U.S. 521, 534 (2006) (holding a fact undisputed where plaintiff "did not offer any fact-based or expert-based refutation in the manner the rules provide"); *see also* Plaintiff's Declaration In Support of Her Opposition, Dkt. 54-9 (silent on whether she willingly and knowingly manufactured her claims).

---

[5]  Hence, her subsequent claim that "Plaintiff made no 'affirmative choice' that caused Wells Fargo to call her number" (Opposition p. 9) is flatly refuted by the evidence in the record.

Next, Plaintiff argues twice that Wells Fargo has stipulated away the issue. But that is not true. First, Plaintiff points out that Wells Fargo admits to "placing" calls to the Plaintiff in its statement of facts. Opposition p. 8. But of course it admits calls existed, otherwise there would be no cause for this motion. The fact that calls were placed does not answer the question of who "made" the calls; it merely sets the stage for the inquiry. Then Plaintiff argues that Wells Fargo admitted that it "made" calls when it stipulated away the ATDS issue earlier in the lawsuit. Opposition p. 8. But Plaintiff is twisting words. The point of that stipulation was to alleviate the need for discovery on the use of regulated technology; it was not intended to—and did not on its face—stipulate away the foundational issue that Plaintiff "made" the calls in the first place.[6]

Finally, Plaintiff argues that cases dealing with "human intervention" are distinguishable and not dispositive of who "made" the calls here. Opposition p. 9. Admittedly, these scenarios are not a perfect fit, but they do stand for the key (and common sense) proposition that where a third-party undertakes the crucial steps inciting the phone calls at issue it is that party—here the Plaintiff—who has caused the calls to exist for TCPA purposes. While Plaintiff rebuffs the application of this case law, she does so as one who simply refuses to agree that her conduct was the "cause" of the calls as a factual matter;[7] not as one challenging the soundness the underlying legal principal. But here the factual issue of causation is undisputed. Plaintiff, through her hard work and careful planning, created the errant phone calls she was seeking. *See* Statement of Facts, ¶¶ 1-21, and 27. She admitted to manufacturing this lawsuit. *See* Statement of Facts, ¶¶ 4,

---

[6] This is apparent on the face of the stipulation—paragraphs 3 and 4 use the word "initiate" rather than "made" to signify the limited purpose of the stipulation. It is also apparent from the last sentence of the stipulation providing that the stipulation "does not represent a concession or admission outside this litigation that Defendant ever used or uses an ATDS." *See* Dkt. 37, p. 2.

[7] "Simply put, Plaintiff did not cause' Wells Fargo's calls to her at all." Opposition p. 10.

5, 9, 10, and 21.  Hence, she "made" the challenged calls and no reasonable juror could conclude otherwise.

**C.      Plaintiff "Expressly Consented" To The Calls By Affirmatively Seeking Them Out**

Plaintiff is dismissive of Wells Fargo's argument on consent.  *See* Opposition p. 10 ("There is literally no argument that Wells Fargo can credibly make with regard to consent.").

Actually, it is Plaintiff who is without a leg to stand on.  Plaintiff's underlying, albeit unstated, assumption is that "express consent" cannot exist unless the Plaintiff directly *communicated* her consent to Wells Fargo prior to the calls at issue.  But that is not what the statute actually says or what the Third Circuit's articulation of express consent requires.

While it is true the TCPA mandates that consent must be "express"—meaning "clearly indicated; explicit"[8]—the statute does not require that consent actually be "express*ed*" to the caller prior to the call to be valid.  As the Third Circuit points out in *Gager v. Dell Fin. Servs., LLC*, consent has long been viewed through the lens of the subjective mindset of the consenting party—it is nothing more than "**a willingness in fact for conduct to occur**."  *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 270-71 (3d Cir. 2013) (emphasis added.), quoting Restatement (Second) of Torts § 892.  And of critical importance—consent "**need not be communicated to the actor"** to be valid**.**  Restatement (Second) of Torts § 892 (1979).  Indeed, the Third Circuit has held directly that "[e]xpress consent may be given by words **or affirmative conduct…**" *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 148 (3d Cir. 1998); *see also Farrell v. Univ. of Delaware*, No. CIV.A. 07C09175 PLA, 2009 WL 3309288, at *2 (Del. Super. Oct. 8, 2009) (in the assumption of risk context, "[t]he plaintiff's express consent need not take the form of specific spoken or written words").

---

[8]  *United States v. Hoslett*, 998 F.2d 648, 661 (9th Cir. 1993).

Here, the necessary mindset was present (*see* Statement of Facts, ¶¶ 4, 5, 9, 10, and 21) and it led to "affirmative conduct" that "clearly indicat[ed]" an "explicit" desire to receive the calls at issue—namely activity affirmatively designed to create the calls (*see* Statement of Facts, ¶¶ 1-21, and 27).  Undeniably, therefore, the "express consent" of the "called party" was present from the inception of the very first call.

Admittedly, most cases considering the definition of "express consent" in the TCPA context have rushed to adopt the Ninth Circuit's articulation in *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009) that "express consent" is "[c]onsent that is clearly and unmistakably *stated*."  (Italics added.)  *Id.* at 955.  Not the Third Circuit, however.  When passing on the issue of consent in *Gager* the Court carefully avoided defining the phrase "express consent," leaving intact its earlier ruling in *Barnes*, 161 F.3d at 148.  *See Gager*, at 270-71.

The Third Circuit's decision not to expressly adopt *Satterfield's* "express consent" definition is both telling and well-founded.  *Satterfield's* articulation has created notable tension with FCC determinations that TCPA consent need <u>not</u> be stated and can be presumed through conduct.  *See In re Rules and Regulations Implementing the TCPA*, 30 FCC Rcd. 7961, 7991-92 (July 10, 2015) (express consent shown by "giving his or her wireless number to the person initiating the autodialed or prerecorded call").[9]  While Courts recognizing this conflict have found themselves forced to yield to the FCC — *see Mais v. Gulf Coast Collection Bureau, Inc.*,

---

[9]  *See also In the Matter of Rules & Regulations Implementing the TCPA*, 23 F.C.C. Rcd. 559, 564 (2008) ("provision of a cell phone number to a creditor, e.g., as part of a credit application, reasonably evidences prior express consent."); *In re Rules and Regulations Implementing the TCPA*, 7 F.C.C. Rcd. 8752, 8769 (1992) ("[A]ny telephone subscriber who releases his or her telephone number has, in effect, given prior express consent to be called by the entity to which the number was released.").

768 F.3d 1110, 1123 (11th Cir. 2014) (reversing district court ruling that refused to apply FCC's "express consent" exemption) – there is actually a rather simple way to harmonize *Satterfield* with the FCC's rulings: *Satterfield* is correct that where a caller seeks to rely on the *stated* consent the words used must be clear and unmistakable but ***consent need not be "stated" to be valid if it is otherwise "clearly indicated" before the calls are placed*.**[10]  Such a rule is consistent both with *Satterfield* — a case dealing with the parameters of consent conveyed in words — and with the FCC's determinations that "express consent" can be presumed where a phone number is provided by the "called party" — a circumstance where consent is otherwise "clearly indicated" although not directly communicated prior to the calls at issue.  It is also consistent with prevailing Third Circuit law that "[e]xpress consent may be given by words or affirmative conduct." *Barnes*, 161 F. 3d 127, 148.

Applying this rule here, the Plaintiff expressly consented to the calls at issue.  Plaintiff had the *express, clear, direct, willingness in fact* to receive the calls.  While this consent was not *expressed* in words it was absolutely *express* and demonstrated by her conduct — that is all the statute requires.[11]

**D.    Plaintiff's Claim Is Barred By The Common Law Doctrines Of Assumption Of Risk And *Volenti Non Fit Injuria* Which Were Not Directly Abrogated By The TCPA And Therefore Apply In This Case**

Plaintiff devotes numerous meandering pages to a discussion of why federal substantive law should apply to this case.  *See* Opposition pp. 12-19.  Certainly the TCPA is a federal statute,

---

[10]  *See Roberts v. PayPal, Inc.*, No. C 12-0622 PJH, 2013 WL 2384242, at *4-5 (N.D. Cal. May 30, 2013) aff'd, 621 F. App'x 478 (9th Cir. 2015) (adopting similar reasoning to conclude that *Satterfield* is consistent with FCC rulings, at least where called party provided their phone number to caller).

[11]  The remainder of Plaintiff's Opposition on this subject descends into a discussion of the identity of the "called party."  Opposition pp. 11-12.  But that subject is not in dispute on this motion.

but that does not mean — as Plaintiff argues — that the court must close its eyes to common law principles in applying the statute.  Indeed, matters are precisely the opposite.  *Collinsgru v. Palmyra Bd. of Educ.*, 161 F.3d 225, 231 (3rd Cir. 1998) ("the courts may take it as given that Congress has legislated with an expectation that the common-law principle will apply except when a statutory purpose to the contrary is evident"), citing *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991).

Applying the common law to a federal statute is not, as Plaintiff suggests, akin to re-writing it.  Opposition p. 16.  Rather, it is a rule of reason and necessity.  Congress cannot re-state the entire body of substantive law every time it enacts a statute.  *See Shager v. Upjohn Co.*, 913 F.2d 398, 404 (7th Cir. 1990) ("because statutes creating torts rarely bother to set forth all the ancillary doctrines [] that are necessary to compose a complete regime of tort liability.").  As such, courts are to assume Congress wants ordinary common law doctrines to be faithfully applied unless the statute "speaks directly" on an issue and abrogates existing law.  *United States v. Texas*, 507 U.S. 529, 534 (1993) ("[i]n order to abrogate a common-law principle, the statute must 'speak directly' to the question addressed by the common law.").  This principle has been applied repeatedly in interpreting the TCPA.  *See Gager*, 727 F.3d 270-71 (turning to common law of consent to find revocation is permitted despite statutory silence on the issue); *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1084, fn. 3 (C.D. Cal. 2012) aff'd, 582 F. App'x 678 (9th Cir. 2014) (applying common law vicarious liability principles to the TCPA).

As the doctrines of assumption of risk and *volenti non fit injuria* are basic common law rules deeply imbedded in the fabric of American jurisprudence, and as neither the words nor the history of the TCPA suggest that Congress intended to abrogate these doctrines, each is to be faithfully applied here.  Each bar Plaintiff's claim.

1.    **Congress Legislates Against a Backdrop of Common Law Principles That Are Not Abrogated by Federal Statute Absent Clear and Direct Statutory Language**

As the Third Circuit Court of Appeal has explained:

> **[T]here is a well-established presumption that Congress is understood to legislate against a background of common-law principles.** "The courts may take it as given that Congress has legislated with an expectation that the common-law principle will apply except `when a statutory purpose to the contrary is evident.'" *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991). See also 3 *Sutherland Statutory Construction* § 61.03 (Norman Singer ed., 5th ed. 1992) **("When there is no indication that Congress ... intended to abolish a well-established common-law doctrine through the passage of a statute, the act will be interpreted in a way that will preserve the common-law doctrine.").** In *United States v. Texas*, 507 U.S. 529, 113 S.Ct. 1631, 123 L.Ed.2d 245 (1993), the Court held that **"[i]n order to abrogate a common-law principle, the statute must `speak directly' to the question addressed by the common law."** Id. at 534, 113 S.Ct. 1631. Indeed, a **"party contending that legislative action changed settled law has the burden of showing that the legislature intended such a change."** *Green v. Bock Laundry Mach. Co*., 490 U.S. 504, 521, 109 S.Ct. 1981, 104 L.Ed.2d 557 (1989). (emphasis added.)

*Collinsgru*, 161 F. 3d at 231.

The United States Supreme Court's ruling in *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 535 (1994) — overturning a Third Circuit Court of Appeal decision refusing to apply common law principles to a federal statute — is particularly illustrative.  Before the Court was the question of whether common law tort doctrines such as the "physical impact test," the "zone of danger test," and the "relative bystander test" applied to the Federal Employer's Liability Act ("FELA"), a federal statute.  *Consol. Rail Corp.*, at 548, 550.  As these tests were not enshrined on the face of the statute, the Third Circuit had refused to apply them finding that "doctrinal common law distinctions are to be discarded when they bar recovery on meritorious FELA claims."  *Id.* at 550.  The Supreme Court reversed relying on the rule that "federal question

generally turns on principles of common law." *Id.* at 542-44, 551.  Indeed, the Supreme Court held directly that the right to recover under that federal statute must be considered and determined "in light of the common law" doctrines even if these doctrines would "bar recovery on [otherwise] meritorious FELA claims." *Id.* at 550-51.

Plaintiff urges the same error made by the Third Circuit in *Consol. Rail Corp*.  She argues that because the TCPA does not expressly address the doctrines of assumption of risk and *volenti non fit injuria* they must be disregarded in applying the statute.  But this is exactly backward.  Because the statute does not address these basic common law principles they are, in fact, to be applied.  *Collinsgru*, 161 F. 3d at 231.  This is so even if they would work to bar an otherwise valid claim under the federal statute.  *Consol. Rail Corp.*, at 550.[12]

Many Courts have already applied this doctrine and interpreted the TCPA consistent with the general common law.  For instance, the Third Circuit has found that consumers may revoke their consent—as permitted by the common law—even though the statute does not mention revocation.  *Gager*, 727 F.3d 270-71.  And many other courts have invoked the doctrine to apply vicarious liability principles —created by the common law—even though the statute does not mention vicarious liability.  *See*, *e.g.*, *Hartley-Culp v. Green Tree Servicing, LLC*, 52 F. Supp. 3d 700, 703 (M.D. Pa. 2014); *Thomas v. Taco Bell Corp.,* 879 F. Supp. 2d 1079, 1084, fn. 3 (C.D. Cal. 2012) aff'd, 582 F. App'x 678 (9th Cir. 2014) (per curiam); *Jackson v. Caribbean Cruise Line, Inc*., 88 F. Supp. 3d 129, 137-38 (E.D.N.Y. Feb. 17, 2015) (relying on "Supreme Court precedents regarding the type of statutory language necessary to displace common law

---

[12]  *Central Vermont Railroad v. White*, 238 U.S. 507, 511-512 (1915) does not require a different result.  *See* Opposition p. 17.  There the Supreme Court—in passing on the same statute at issue in *Consol. Rail Corp*., *supra* — held that the portion of the statute placing the burden of proving contributory negligence on defendant preempts contrary state law.  *Id.*  But the TCPA is silent on the common law doctrines at stake on Wells Fargo's motion.  Hence, preemption is not an issue.

principles" to hold that "nothing in the language of section 227(b) itself indicates that common law agency principles are inapplicable").

Undeniably, therefore, well-established common law principles are to be applied to the TCPA, unless the statute "directly" abrogates them.

### 2. The Doctrines of Assumption of Risk and *Volenti Non Fit Injuria* Are Fixtures in the Common Law of Tort

The doctrines of "assumption of risk" and "*volenti non fit injuria*" are not new or novel concepts that Congress was unlikely to be aware of when they drafted the TCPA. Both find mention in the Restatement (Second) of Torts, and mere pages from the sections so recently adopted by the Third Circuit in *Gager. See* Restatement (Second) of Torts 892A cmt. a (1979) (*volenti non fit injuria*); *Id.* at 496A (assumption of risk); *Id.* at 496F (a "plaintiff's assumption of risk bars his recovery for the defendant's violation of a statute"). And both find comfortable homes within the same editions of Black's Law Dictionary that is so commonly relied upon to interpret the TCPA. *Assumption of Risk*, Black's Law Dictionary (10th ed. 2014); *Volenti Non Fit Injuria*, Black's Law Dictionary (10th ed. 2014). Indeed, the Fourth Circuit has described *volenti non fit injuria* as "a general maxim of tort law" (*Beyond Systems, Inc. v. Kraft Foods, Inc.*, 777 F.3d 712, 718-19 (2015)) and the Third Circuit has acted to preserve the assumption of risk doctrine for "awareness of and consent to a 'known or obvious' danger" even in jurisdictions where contributory negligence does not bar a recovery. *See Monk v. Virgin Islands Water & Power Auth.*, 53 F.3d 1381, 1384 (3d Cir. 1995).[13]

---

[13]  The point here, of course, is not whether Pennsylvania recognizes these doctrines, but whether they are general notions of common law that Congress was presumably aware of when it wrote the TCPA.  As to the possibility that Congress also specifically embedded state law principles into the TCPA see Section II.D.5 below.

Accordingly, these doctrines are well woven into the fabric of American Tort law and should not be read out of the TCPA unless the statute "speak[s] directly" to these doctrines and abrogates them.  *Collinsgru*, 161 F. 3d at 231;  *United States v. Texas*, 507 U.S. at 534.

### 3.   Neither the Language Nor the History of the TCPA "Speak Directly" with the Intent to Abrogate the Common Law Doctrines of Assumption of Risk and *Volenti Non Fit Injuria*

Plaintiff argues that the application of these common law doctrines would be inconsistent with the TCPA.  She has the burden of making this showing.  *Collinsgru*, 161 F. 3d at 231 ("A party contending that legislative action changed settled law has the burden of showing that the legislature intended such a change"), citing *Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 521 (1989).  She has failed to meet that burden.

Plaintiff's primary contention appears to be that application of common law defenses to a federal statute is inappropriate where it would deprive a litigant of an otherwise viable recovery.  Opposition pp. 14, 19.  But that clearly is not true.  *Consol. Rail Corp.*, at 550.  While Plaintiff is correct that a handful of Courts have given short shrift to these arguments in the TCPA context,[14] none appear to have performed the considered analysis mandated by *Collinsgru*.  Equally as important, these cases seem to arise from an overly-zealous application of an FCC opinion letter regarding unsolicited facsimile.  *See Auto Leasing, Inc. v. Autoflex Leasing, Inc.*, 139 S.W.3d 342, 347-348 (2004).  But the FCC's finding that "recipients of unsolicited facsimile advertisements are not required to ask that senders stop transmitting such materials"[15] is a far cry

---

[14]  *See, e.g.*, *State ex. Rel. Charvart v. Frye*, 114 Ohio St. 3d 76 (2007) (concluding, in summary fashion, that *violenti non fit injuria* does not bar a TCPA claim), citing *Manufacturers Auto Leasing, Inc. v. Autoflex Leasing, Inc.*, 139 S.W.3d 342, 347-348 (2004) (following FCC ruling that failure to mitigate damages is not a defense to a TCPA claim).

[15]  As quoted in *Auto Leasing, Inc.*, 139 S.W. 3d at 347.

from the holding Plaintiff urges — that the TCPA abrogates *all* common law doctrines that might bar an otherwise valid claim.

Her fall back argument is that the TCPA uses broad language such as "any call" and "a person" in framing a private right of action.  Opposition pp. 16 and 20.  But this vanilla language does not "speak directly" to a Congressional intent to roll back cherished tort law doctrines.  To the contrary the statute neither permits, nor prohibits, the application of assumption of risk and *volenti non fit injuria* and is therefore "silent" on these doctrines.  Such silence, of course, means that the doctrines are not abrogated and are to be applied.  *Collinsgru*, 161 F. 3d at 231.

Further, Plaintiff has not pointed to any legislative history suggesting that Congress intended to allow litigants to manufacture their own lawsuits.  Yes, the TCPA is a consumer protection statute but the consumers it was designed to protect are those with legitimate privacy interests, not manufacturers of lawsuits.  *See Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740, 746 (2012) (statute was passed because "many consumers [we]re outraged over the proliferation of intrusive, nuisance telemarketing calls to their homes [which were] regarded by recipients as an invasion of privacy").  Moreover, while all tort statutes are designed to protect someone from harm, that does not mean that otherwise applicable bars to recovery are to be instantly discarded in applying the statute.  Again, see *Consol. Rail Corp.*, at 542-44, 550-51.

In reality the TCPA — like tort law generally — developed as a balancing act designed *not* to interfere with legitimate communications between businesses and their customers.  H.R. REP. No. 102-317, at 17 (1991) (emphasizing that "[t]he Committee does not intend for this restriction to be a barrier to the normal, expected or desired communications between businesses and their customers.  For example, a retailer, insurer, **banker or other creditor would not be prohibited from using an automatic dialer recorded message player to advise a customer**

**(at the telephone number provided by the customer) that … a bill had not been paid.**")
(Emphasis added.)  Plaintiff seeks to destroy that careful balance by laying traps for businesses
that have done nothing more than what the legislative history suggests ought to be permissible in
the first place.[16]  Such conduct is plainly contrary to legislative intent and this case cries out for
the application of the *volenti non fit injuria* doctrine to restore the Congressionally-intended
balance.

### 4. Plaintiff Plainly Created Her Own Harm and Assumed the Risk of Calls Such that Her Claims Are Barred

Plaintiff attempts to distinguish *Beyond Systems*, on the basis that the Plaintiff in that case
was particularly sneaky and created fake e-mail addresses to ensnare spammers.  Opposition pp.
14-15.  While Plaintiff's conduct in this case certainly seems comparable (*see* Statement of Facts
¶¶ 1-21, 27), her argument misses that neither intentional deception nor affirmative deceit are
required for the doctrines of assumption of risk and *volenti non fit injuria* to apply.  Instead
Wells Fargo need only prove that Plaintiff invited her own harm[17] or intentionally obtained
numerous cell phones seeking out a "'known or obvious' danger."[18]  It has presented uncontested

---

[16]  Again, Wells Fargo is *not* suggesting that it can lawfully call unrelated consumers using
regulated technology.  It is arguing only that the legislative history does not speak of any intent
to permit litigants to create their own harm in this context.

[17]  Restatement (Second) of Torts § 892A, comment a (1979) ("no one suffers a legal wrong as
the result of an act to which…he freely consents or to which he manifests apparent consent.");
Black's Law Dictionary (10th ed. 2014) (defining volenti non fit injuria: "a person who
knowingly and voluntarily risks danger cannot recover for any resulting injury"); *Beyond Sys.,
Inc. v. Kraft Foods, Inc.*, 777 F.3d 712, 718 (4th Cir. 2015) ("[a]ll intended wrongs have in
common the element that they are inflicted without the consent of the victim. Those who, with
full knowledge, assent to the invasion of their interests may not complain.").

[18]  "Assumption of the risk arises out of the knowing and voluntary acceptance of a dangerous
condition."  *Butynski v. Springfield Terminal R.Co.*, 592 F.3d 272, 279 (1st Cir. 2010);
Restatement (Second) of Torts §§ 496A, 496D.

evidence that each is true.  Statement of Facts, ¶¶ 1-21, and 27.  Thus, its motion must be granted.

### 5.    Plaintiff's Arguments Regarding Other Federalist Doctrines Are Inapposite

Plaintiff's Opposition addresses a thicket of disjointed issues tangentially related to the proper application of common law doctrines to this case.  None of these issues are probative.

### (a)    *Hawk Valley* Addresses a Situation Where Federal and State Law Were in Direct Conflict Which is not the Case Here

Plaintiff's first argument is that at least one court in this district has applied the federal catch-all statute of limitations, thereby rejecting the argument that state law rules of procedure are embedded in the TCPA.  *See* Opposition pp. 12-13, citing *Hawk Valley, Inc. v. Taylor*, No. 10-CV-00804, 2012 WL 1079965, at *11 (E.D. Pa. Mar. 30, 2012).  *Hawk Valley* addressed "the critical inquiry [of] whether the TCPA provides for the application of a limitations period other than the one established by Section 1658."  *Id.* at *8.  It concluded that the language "if otherwise permitted" in the TCPA was not sufficiently express to demonstrate a Congressional intent to override the application of the presumptively applicable four-year statute of limitations period.  *Id.* at *10.

*Hawk Valley* does not address issues of common law.  Rather, it weighs the application of two opposing bodies of codified law — one federal and one state.  It opts for the federal body since the TCPA is a federal statute and *Mims* clarified that federal question jurisdiction applies. This is all well and good, but it is also inapposite.  There is no opposing federal law to be considered here; unlike statutes of limitation, the doctrines of assumption of risk and *volenti non fit injuria* are commonplace everywhere.  *See* Section  II.D.2, above.  Stated alternatively, *Hawk Valley's* analysis would be poignant only if the TCPA or another presumptively applicable

federal statute *prevented* the application of common law doctrines that Pennsylvania permitted.[19] But that is not the case.  So *Hawk Valley* affords Plaintiff no refuge.[20]

For that reason also, Wells Fargo's argument regarding the "if otherwise permitted" language of the TCPA's private right of action can easily live alongside *Hawk Valley.  Hawk Valley* holds only that the language is insufficient to compel application of state law principles that *directly* oppose established federal law.  That leaves plenty of room around the margin, however, where applicable state law concepts might bar a recovery without *directly* interfering with the statutory scheme.[21]  As shown above, the doctrines of assumption of risk and *volenti non fit injuria* do not directly oppose any established federal law.  Hence the TCPA's plain language invites their application to Plaintiff's case here since her suit is not "otherwise permitted" by that state law.[22]  *See Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 148 (3d Cir. 1998) (recognizing assumption of risk under Pennsylvania law).

---

[19]  As relevant here, *Howlett v. Rose*, 496 U.S. 356 (1990) stands for the same proposition. It holds that a state law sovereign immunity defense is not available to school board in a § 1983 action brought in state court that otherwise has jurisdiction when such defense would not be available if action were brought in federal court.  Here, however, there is no opposing body of state and federal law to choose from.  The common law forms the legislative backdrop that *is* the federal law.

[20]  Notably, however, *Hawk Valley*'s point that Congressional intent to override otherwise applicable law should not be lightly imputed from vague language is a good one.  Of course, that supports Wells Fargo's position and helps inform the contours of the "speaks directly" standard noted above.  *Collinsgru*, 161 F. 3d at 231; *United States v. Texas*, 507 U.S. at 534.

[21]  Not surprisingly, this approach mirrors the general law of federal preemption.  *See Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 523 (1992) (narrowly construing federal statute "in light of the strong presumption against pre-emption"); *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) ("[W]e 'start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.").

[22]  Really the "otherwise permitted" argument is just a set of suspenders when Wells Fargo already has a belt.  The Court might find comfort, however, in the fact that the express language (footnote continued)

**(b)      No "Savings Clause" is Required in the Absence of Preemption**

Plaintiff's Opposition takes a strange angle on *Beyond Systems, Inc.* by arguing that the result of that case was somehow driven by a "savings clause" in the CAN-SPAM act. Opposition p. 15.  But that is not true at all.

The "savings clause" only came into effect to permit the Plaintiff in that case to pursue a claim under a state law that would otherwise have been preempted by the federal statute.  *See Beyond Systems, Inc.*, 777 F.3d at 717 (analyzing whether the state laws being sued under were tort claims that fell within the CAN-SPAM's savings clause).  The Court concluded they were. *Id.* ("Thus, neither the California nor the Maryland anti-spam statutes, both of which are in the vein of a tort, is preempted.").

Plaintiff is suing under a federal statute, not a state statute.  Hence, no problem of preemption arises.  Nor, as shown above, did Congress "speak directly" and abrogate the key common law doctrines at issue here, so no "savings clause" is required to make use of them.[23]

**(c)      The Analysis of *Beyond Systems, Inc.* is in Accord With Wells Fargo's Position**

As Plaintiff points out, the Fourth Circuit had to look to state law to determine the applicability of the *volenti non fit injuria* doctrine in California and Maryland to resolve the claims presented in that case.  Opposition p. 14-15.  *Beyond Systems, Inc.*, at 717.  But this was an extra hurdle, not the shortcut Plaintiff suggests.  The Court first recognizes the same key rule to be applied here—common law doctrines apply to a general tort statute.  *Id.* at 718 ("Because

---

of the TCPA adopts the presumption (recognized by *Collinsgru*, 161 F. 3d at 231) that Congress legislates against a backdrop of generally applicable common law principles.

[23]  Obviously, Wells Fargo takes no issue with the doctrine of *Testa v. Katt*, 330 U.S. 386 (1947) that state courts may not refuse to enforce the statutory penalties provided by a federal statute. *See* Opposition p. 17.  Such federalist concerns are not at issue in this case.

the California and Maryland anti-spam statutes are in the vein of a tort, and nothing in their text suggests otherwise, common law tort principles that are part of those states' common law also apply to the causes of action these statutes create."). But then the Fourth Circuit had to take an extra step—confirming that California and Maryland actually recognize and apply the general Restatement approach to these doctrines. *Id.* at 717 ("The central issue in this case is whether the common law doctrine of volenti non fit injuria precludes Beyond Systems' recovery under the California and Maryland anti-spam statutes."). It did so, and so the claim was resolved. *Id.* at 718 ("Maryland and California abide by volenti non fit injuria.").

This is the same analysis to be applied here, except the last step is unnecessary. The general common law recognizes "assumption of risk" and "*volenti non fit injuria*." *See* Restatement (Second) of Torts 892A cmt. a (1979) (*volenti non fit injuria*); *Id.* at 496A (assumption of risk). Since — according to Plaintiff's own position — Pennsylvania law need not be consulted as a "check" on the application of these general doctrines, they definitely form part of the "backdrop" upon which the TCPA was enacted. *Collinsgru*, 161 F. 3d at 231.[24]

## E.   Plaintiff Argues Past Wells Fargo's "Zone of Interest" Argument

Wells Fargo's motion argues that Plaintiff is outside the "zone of interest" the statute intended to protect because she has invented her own harm. Plaintiff leaps right past that argument, however, by assuming that the TCPA's broadly worded right of action necessarily expands standing to the "Full Limits of Article III." Opposition p. 19.

But wait one second. There are three forms of generally recognized standing limitations, not just two: statutory standing, constitutional standing, and *prudential* standing. *Graden v.*

---

[24]  Of course, Wells Fargo performed the "check" and noted that Pennsylvania law does, in fact, recognize these doctrines. *See Charlton v. Toyota Indus. Equip.*, 714 A.2d 1043, 1047 (Pa. Super. 1998); *Barns v. Am. Tobacco Co.*, 161 F.3d 127, 148 (3d Cir. 1998).

*Conexant Sys., Inc*., 496 F.3d 291, 295 (3d Cir. 2007) ("[t]hough all are termed 'standing,' the differences between statutory, constitutional, and prudential standing are important."). Granted, Plaintiff has "statutory standing" — she is a person. But dispensing with the statutory standing issue does not mean Plaintiff can dart straight to the constitutional one — there still remains the question of whether the court *should* open the courthouse doors to her. And as the Third Circuit has stated directly, "[t]he required elements for traditional Article III standing are obviously separate from prudential standing requirements." *Miller v. Rite Aid Corp.*, 334 F.3d 335, 344, n. 6 (3d Cir. 2003).

Unlike Constitutional requirements, prudential considerations are a set of judge-made rules forming an integral part of "judicial self-government." *Conte Bros. Auto. v. Quaker State-Slick 50, Inc.*, 165 F.3d 221, 225 (3d Cir. 1998), citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). As with any other common law principle, Congress legislates against the background of the prudential standing doctrine, which applies unless it is expressly negated. *Bennett v. Spear*, 520 U.S. 154, 163 (1997). Among these prudential limitations is the "zone of interest" test examined in the moving papers. *Wheeler v. Travelers Ins. Co*., 22 F.3d 534, 538 (3d Cir. 1994) (prudential standing limitations require "that a litigant demonstrate that the asserted interests are arguably within the 'zone of interests' intended to be protected by the statute, rule or constitutional provision on which the claim is based").

Plaintiff's Opposition essentially ignores the issue of whether she is within the "zone of interest" protected by the TCPA. While she points out that the Supreme Court rejected a "zone of interest" argument in *Bennet v. Spear*, 520 U.S. 154 (1997) (Opposition p. 19), that case hardly advances her cause. There the Court permitted a citizen suit under the Endangered Species Act of 1973 to be brought by individuals that wished to challenge implementing activity

by a regulating agency.  *Id.* at 165-66.  The Court found that the broad language of the statute "expands the zone of interests" covered by the statute to cover "everyman" since "the overall subject matter of this legislation is the environment (a matter in which it is common to think all persons have an interest)."  *Id.* at 166.  The Plaintiffs in *Bennett*, however, were not creating their own harm — such as seeking out ways to create a violation of the ESA — but were challenging an existing practice *without taking any steps to create that practice*.  Moreover, as the Court expressly pointed out, the holding in *Bennett* turns on the fact that everyone has an individualized interest in environmental regulations.  Plaintiff, however, lacked an individualized privacy interest — the zone protected by the TCPA — with respect to the calls at issue here.

Further, while Plaintiff cites to a Civil Rights decision for the proposition that *Article III* standing might exist even "where the plaintiff purposefully chose to interact with a defendant engaged in illegal misconduct" that, of course, does not answer the *prudential* standing question.  Opposition p. 19 citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982).  And, with due respect to the Plaintiff, collecting a shoe box full of cell phones to fish for accidental wrong number calls is not the same as being a member of a minority group facing discriminatory housing practices, even if on a "test case" basis.  Plaintiff could avoid buying those 35 phones; whereas, the member of the minority group cannot alter their immutable characteristics to avoid the discriminatory practices.  He or she, therefore, is properly *always* within the zone of interest of the Fair Housing Act.  But that is not the case for Plaintiff as regards the TCPA — the "zone of interest" protected by that statue is her personal privacy.  Wells Fargo did not invade it an ounce.

More to the point, Plaintiff cites to no "zone of interest" cases authorizing a "private attorney general" to manufacture their own harm.  Admittedly, the Court in *Fitzhenry v. ADT*

*Corp.*, No. 14-80180, 2014 WL 6663379 (S.D. Fla. Nov. 3, 2014) looked with favor upon a class representative that carefully tracked wrong number calls he received. *Id.* at *5. But there the defendant could show only that Plaintiff had "created a home environment that allow[ed] him to document telemarketing calls better than most consumers…" *Id.* Importantly, however, the calls he received were still "unwanted" and "Defendant[ did] not cite[] any contradictory statements by Plaintiff." *Id.* But matters are different here. Wells Fargo has cited contradictory statements — Plaintiff admits that she looked forward to receipt of these calls with delight. *See* Statement of Facts, ¶¶ 4, 5, 9, 10, and 21. Further, the Plaintiff in this case did more than merely neatly track the calls she received; she went out of her way to obtain them. *See* Statement of Facts, ¶¶ 1-21, and 27. Whereas, the Plaintiff in *Fitzhenry* might have been narrowly within the TCPA's zone of interest; therefore, Plaintiff is not.

**F.     Plaintiff's Lacks Article III Standing Anyway**

Plaintiff argues that *Spokeo*[25] "in no way impacts the present case." Opposition p. 23. She is right, although not in the way she intends.

All other issues aside, the easiest and most obvious reason why Wells Fargo is entitled to judgment is the threshold issue of Constitutional standing. Plaintiff argues that she has Article III standing because she paid for cellular minutes to receive the wrong number calls she was hunting for. Opposition pp. 22-23. That argument, of course, begs the question.

The United States Supreme Court has already directly held that spending money to create a lawsuit is *not* a cognizable "injury" in fact. *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1151, 1155 (2013) (Plaintiff "cannot manufacture standing by choosing to make expenditures based on hypothetical future harm that is not certainly impending"); *see also In re Horizon*

---

[25] *Spokeo, Inc. v. Robins*, 135 S. Ct. 1892 (2015).

*Healthcare Servs., Inc. Data Breach Litig.*, No. CIV.A. 13-7418 CCC, 2015 WL 1472483, at fn. 5 (D.N.J. Mar. 31, 2015) (standing cannot be created by a party "inflicting harm on themselves"). But Plaintiff offers nothing else in support of her claim to have suffered an "injury in fact." *See* Opposition pp. 22-23. Thus, Plaintiff definitively lacks Article III standing and Wells Fargo is entitled to judgment as a matter of law.

**G.     The FCC Has Not Blessed The Manufacture Of TCPA Lawsuits**

Plaintiff concludes her Opposition with a re-tread of her argument that the FCC has somehow "blessed" the conduct she engaged in. To be sure, the FCC has found that a consumer has no affirmative obligation to "opt-out" of calls that a business did not have consent to make. *See In re Rules and Regulations Implementing the TCPA*, 30 FCC Rcd. 7961, 8004 (July 10, 2015). But it has never said that a party can manufacture their own lawsuit or lay traps for businesses in the first place.

As noted in Section II.D., above, Plaintiff's conduct is destructive to the delicate balance Congress intended in enacting the statute. The FCC has never approved of it.

### III.

### CONCLUSION

For the foregoing reasons, Wells Fargo respectfully requests that judgment be entered in its favor on the Plaintiff's complaint and that the entire case now be dismissed.

Dated this 28th day of January, 2016.

By: _/s/ Eric J. Troutman_

Eric J. Troutman, pro hac vice
Divya S. Gupta, pro hac vice
SEVERSON & WERSON
The Atrium
19100 Von Karman Avenue, Suite 700
Irvine, California 92612
Telephone: (949) 442-7110
Facsimile:  (949) 442-7118
ejt@severson.com
dsg@severson.com

Martin C. Bryce, Jr. (I.D. No. 59409)
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Telephone: (215) 864-8238
Facsimile:  (215) 864-8999
bryce@ballardspahr.com

Attorneys for Defendant
WELLS FARGO BANK, N.A.

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF PENNSYLVANIA

MELODY STOOPS,

        Plaintiff,

vs.

WELLS FARGO BANK, N.A.,

        Defendant.

Case No. 3:15-cv-00083-KRG

**(JUDGE KIM R. GIBSON)**

FILED ELECTRONICALLY

## CERTIFICATE OF SERVICE

Service is being effected upon counsel for counsel of record via the CM/ECF system.

Dated this 28th day of January, 2016.

By: _/s/ Eric J. Troutman_
        Eric J. Troutman

Eric J. Troutman, pro hac vice
Divya S. Gupta, pro hac vice
SEVERSON & WERSON
The Atrium
19100 Von Karman Avenue, Suite 700
Irvine, California 92612
Telephone: (949) 442-7110
Facsimile:  (949) 442-7118
ejt@severson.com
dsg@severson.com

Martin C. Bryce, Jr. (I.D. No. 59409)
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Telephone: (215) 864-8238
Facsimile:  (215) 864-8999
bryce@ballardspahr.com

Attorneys for Defendant
WELLS FARGO BANK, N.A.