## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MELODY STOOPS, | Case No. 3:15-cv-00083-KRG |
| Plaintiff, | U. S. District Judge: |
| v. | Honorable Kim R. Gibson |
| WELLS FARGO BANK, N.A., | |
| Defendant. | |

## PLAINTIFF MELODY STOOPS' SUR-REPLY SUPPORTING HER OPPOSITION TO WELLS FARGO BANK, N.A.'S MOTION FOR SUMMARY JUDGMENT

# I. <u>INTRODUCTION</u>

Wells Fargo Bank, N.A.'s ("Wells Fargo" or "Defendant") motion for summary judgment and its contentions therein are wholly without merit. Defendant essentially blames the victim of its robocalls and tosses the plain meaning of the TCPA and its well-reasoned regulations out the window. Its argument is something akin to blaming merchants victimized by shoplifters, because they displayed such prized merchandise they ought to have expected to suffer thefts. Assumption of the risk is a legal doctrine enmeshed in activities like skiing, car racing, and parachuting – not buying a cell phone only to have it blasted with robocalls by Defendant.

There is nothing in the language or history of the statute or the FCC rulings to suggest that people who have bought pre-paid cell phones have fewer rights than anyone else under the TCPA. At the risk of spilling any more ink on the matter, the Court may take judicial notice of the complete misapplication of existing law and the complete lack of common sense made by Defendant's arguments that Plaintiff "assumed" the risk that this Defendant would negligently and/or willfully violate her rights under the TCPA.

The undisputed facts and Wells Fargo's rationale to avoid liability are as follows:

1. When Plaintiff obtained the pre-paid cellular phones ("Tracfone") at issue here, and activated them, she provided Tracfone with the phone serial numbers and a zip code. Tracfone then assigned a number to each of Plaintiff's phones. She had no way to know the precise numbers that would be issued, whether the numbers would be reassigned numbers, or whether the phones would receive calls intended for the prior subscriber, and if they did, the identity of the caller(s). *See* Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Opp to MSJ") p.10.

2. Plaintiff in fact received calls from Wells Fargo via an ATDS without Plaintiff's prior express consent. Opp to MSJ p.8. These are clearly TCPA violations and Wells Fargo concedes as much but seeks affirmative defenses to vitiate its liability.

3. Plaintiff did not know anything about the numbers assigned to her phones or even know the numbers themselves until they were assigned. Most importantly, Plaintiff could not

have provided Wells Fargo with her ***PRIOR*** express consent to call those numbers
because she had no way to know Wells Fargo would call her until ***AFTER*** it did.

4. The first time Plaintiff could have performed any act in response to the calls placed by
   Wells Fargo was after the first call.  Assuming Wells Fargo had the prior express consent
   of its clients, the former owners of the reassigned numbers at issue, as it claims, under
   the current law it was on constructive notice of the reassignment, and liability under the
   TCPA attached for each call, after the first call to each number. *See In the Matter of
   Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*,
   Declaratory Ruling and Order, adopted June 18, 2015 ("2015 FCC Order"), p. 40, ¶ 72.

5. Wells Fargo retained control and the ability to avoid violating the TCPA by ceasing calls
   after that first call, which it admits it did not. Opp to MSJ p.1. Wells Fargo blames
   Plaintiff for the random reassignment of its clients' numbers to Plaintiff by virtue of
   Plaintiff's act of activating her Tracfones and because Plaintiff was prepared to document
   potential unlawful calls made to her Tracfones. *See* Defendant's Reply ("Reply") at p.15.

6. Based on Plaintiff's preparedness to enforce the law and to her willingness to utilize the
   private right of action included in the statute by Congress Wells Fargo asks the court to
   penalize her by finding she assumed the risk of receiving such calls and to require her to
   take affirmative steps to mitigate her damages in direct contravention of FCC rules
   expressly to the contrary and in direct contradiction of the expressed public policy of the
   TCPA to protect consumers and prevent calls made via an ATDS to cell phones without
   prior express consent.

   The court in *Procaps S.A. v. Pathon Inc.* opens with an appropriate quote: ***"If I swing my
fist at your face, you may decide to duck. But if you stand still, and I deck you, I am the cause
of your injury. You did not punch yourself."*** *Procaps S.A. v. Pathon Inc.*, 2014 U.S. Dist.
LEXIS 10874 (S.D. Fla. Jan. 29, 2014) at *1 (emphasis included); q*uoting Chicago Prof'l Sports
Ltd. P'ship v. Nat'l Basketball Ass'n*, 754 F. Supp. 1336, 1353 (N.D. Ill. 1991), aff'd, 961 F.2d
667 (7th Cir.1992).  As demonstrated by the facts in this case, Wells Fargo's violation of law
was caused by Wells Fargo alone and its disingenuous attempts to shift blame will *not succeed.*

## II. ARGUMENT

**A.**  **Plaintiff Could Not Provide Wells Fargo Prior Express Consent Required By The FCC**

The FCC stated:

> *"Any telephone subscriber who releases his or her telephone number has, in effect, given prior express consent* to be called by the entity to which the number was released… persons who knowingly *release their phone numbers have in effect given their invitation or permission* to be called at the number which they have given, absent instructions to the contrary."* (emphasis added)

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Report and Order, 7 F.C .C.R. 8752, 8768 ¶¶ 30–31, 1992 WL 690928 (Oct. 16, 1992).

The FCC has further determined that "if any question arises as to whether prior express consent was provided by a call recipient, the burden is on the caller [Wells Fargo] to prove that it obtained the necessary prior express consent." 2015 FCC Order, p.30, ¶47. Wells Fargo has not introduced any evidence that Plaintiff released her number to, or had any contact at all with, Wells Fargo prior to Wells Fargo's placement of those calls. Wells Fargo has not and will not be able to prove that it obtained Plaintiff's prior express consent to call her and acknowledges undisputed facts that establish this fact conclusively.

**B.**  **The FCC Explained There Are No Affirmative Bad-Faith Defenses To 47 U.S.C. Section 227; Bad Faith Defenses Of Assumption of Risk and *Volenti Non Fit Injuria* Do Not Apply To The TCPA**

Wells Fargo asks, under the guise of assumption of risk and *volenti non fit injuria,* for the same relief as petitioner Rubio's to which the FCC declined to provide in its 2015 Order:

> Rubio's first argues that that the Commission should add '*an affirmative, bad-faith defense that vitiates liability upon a showing that the called party purposefully and unreasonably waited to notify the calling[ ]party of the reassignment in order [to] accrue statutory penalties.' We decline to do so.* Neither the TCPA nor our related rules place any affirmative obligation on the user of a wireless number to inform all potential callers when that number is relinquished or reassigned; uninvolved new users of reassigned numbers are not obligated under the TCPA or our rules to answer every call, nor are they required to contact each caller to opt out in order to stop further calls. (emphasis added)

2015 FCC Order, p. 51, ¶ 95(emphasis added).

The FCC has explained that Plaintiff was not required to do anything to mitigate Wells Fargo's liability for its illegal calls. Moreover, the FCC declined to recognize a defense that would impose a duty on consumers, like Plaintiff, that choose not to notify Wells Fargo of its illegal calls, even for the very purpose of accruing statutory penalties.[1] The FCC has thus stated there is no affirmative bad-faith defense regarding consumers' conduct under the TCPA that goes to the intent of the called party. Plaintiff's intent is irrelevant to this lawsuit.

Wells Fargo's efforts to directly or indirectly circumvent the FCC's express guidance regarding bad-faith defenses cannot succeed under the Hobbs Act. *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F. 3d 1110, 1120 (11th Cir. 2014). The jurisdiction to challenge FCC rulings lies exclusively with the courts of appeals. *Id.* The *Mais* court further explains "***where the practical effect of a successful attack on the enforcement of an order involves a determination of its validity, the statutory procedure for review provided by Congress remains applicable.***" (emphasis added) *Id.* (citing *Nack v. Walburg*, 715 F.3d 680, 686 (8th Cir.2013) (*quoting Sw. Bell Tel. v. Ark. Pub. Serv. Comm'n*, 738 F.2d 901, 906 (8th Cir.1984).

Wells Fargo asks this Court for a ruling that would clearly have the practical effect of contradicting the FCC Order on wrong number calls because Plaintiff had no ability to "cause" Wells Fargo to violate the law. Plaintiff's only potential bad-faith conduct could have occurred, if at all, *after* the calls began, bringing it squarely within the Rubio's discussion where the FCC declined to establish a bad-faith defense imposing a duty to mitigate damages upon the recipient of a wrong number call generated by an ATDS.

Wells Fargo's attempt to invoke the Plaintiff's intent as the basis for its affirmative defenses contradicts the 2015 FCC Order. "Because the TCPA is a remedial statute, it should be construed to benefit consumers." *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013). Therefore, Wells Fargo's attempts to circumvent the FCC's authority must fail whether brought directly or indirectly or by practical effect.

---

[1] Plaintiff actually told two Wells Fargo representatives to stop calling and that she was not the person they were seeking. Wells Fargo nonetheless continued to call. Opp to MSJ at p.1, fn.1.

**C.** **Even If The Bad-Faith Defenses Of Assumption Of Risk and Volenti Non Fit Injuria Were Not Abrogated By The TCPA, They Would Still Not Apply Here**

Assuming bad-faith defenses were permitted under the TCPA, which Plaintiff does not concede, Wells Fargo is a serial violator of the law so prolific that it argues that merely activating a cell phone constitutes assumption of risk as to its unlawful calls. Plaintiff did not do anything different from any other consumer who buys a cell phone and could not do anything to cause Wells Fargo to act. Tellingly, Wells Fargo so fails to appreciate or take seriously its responsibility to follow the law that it offers no evidence of its own compliance measures to prevent its violations of the TCPA. For these reasons alone, Wells Fargo's unclean hands prevent it from being the kind of party equity protects via these affirmative defenses.

Assumption of risk depends upon a plaintiff's "awareness and consent to a 'known or obvious' danger." *See Monk v. Virgin Islands Water & Power Auth.*, 53 F.3d 1381, 1384 (3d Cir. 1996). Incredibly, Defendant is telling this Court that a consumer who buys a pre-paid phone runs the "'known or obvious' danger" that Wells Fargo will unlawfully call it, and a consumer who is aware of such "'known or obvious' danger" vitiates Wells Fargo from liability. This very premise is preposterous. Buying a phone does not run a known or obvious danger that it will be unlawfully called by Wells Fargo. Like any other consumer, Plaintiff bought and activated a cell phone and had no way to know or expect, nor was it obvious, that Wells Fargo would unlawfully call her phone. Plaintiff did not assume the risk that she would receive these calls. Moreover, by the time Wells Fargo unlawfully called her phone, Plaintiff had no obligation to inform or in any way mitigate Wells Fargo statutory damages under the TCPA. *See* 2015 FCC Order at ¶ 95.

Under similar common sense reasoning, *volenti non fit injuria* is inapplicable under these facts. Plaintiff no more knowingly and voluntarily risked danger of being unlawfully called than any other person who buys and activates a cell phone. **That was Plaintiff's only affirmative act. She bought a pre-paid phone.** The facts here are highly distinguishable from *Beyond Sys., Inc. v. Kraft Foods, Inc.* Defendant cites where plaintiff took multiple and elaborate steps to

- 5 -

fabricate a violation of law that would not have otherwise occurred.[2]  Wells Fargo's conduct
would have occurred regardless of who acquired the reassigned number.  Even if assumption of
risk and *volenti non fit injuria* were applicable to the TCPA, which they are not, Wells Fargo's
liability would not be vitiated by same.

**D.   The Statutory Purpose Of The TCPA Would Be Frustrated By Bad-Faith Defenses
Of Assumption Of Risk And *Volenti Non Fit Injuria***

Ignoring the FCC's express determination that there are no bad-faith defenses to the
TCPA as set forth in paragraph 95 of the 2015 FCC Order discussed in part II.B of this Sur-
reply,[3] Wells Fargo argues that common law bad-faith defenses are applicable to the TCPA
because "the courts may take it as given that Congress has legislated with an expectation that the
common-law principle will apply *except when a statutory purpose to the contrary is evident.*"
(emphasis added) *See Collinsgru v. Palmyra Bd. Of Educ.*, 161 F 3d 225, 231 (3rd Cir. 1998)
*citing Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991). Reply p. 9. A
review of the purpose and statutory history of the TCPA shows that the goals of the TCPA as a
remedial statute passed to protect consumers from unwanted automated telephone calls would be
dissolved if the intent of each consumer who sues is dissected and the clear statutory elements to
violation are muddied. As the *Gager* court recognized, "[b]ecause the TCPA is a remedial statute,
it should be construed to benefit consumers." *Gager*, 727 F.3d at 271 (3d Cir. 2013).

In passing the Act, Congress was "outraged over the proliferation" of prerecorded
telemarketing calls to private residences, which consumers regarded as "an intrusive invasion of
privacy" and "a nuisance." Telephone Consumer Protection Act of 1991, Pub.L. No. 102–243, §

---

[2] *Beyond Systems, Inc. v. Kraft Foods, Inc.*, 777 F.3d 712 (4th Cir. Feb. 4, 2015) is not a TCPA
case but a CAN-SPAM Act case.  Plaintiff's search reveals no TCPA case in which a court has
applied *volenti non fit injuria*, and some that have outright rejected it. See *State ex. rel. Charvat v.
Frye* (2007) 114 Ohio St. 3d 76; 868 N.E.2d 270 ("[The trial court's] reliance on the common-
law principle of *volenti non fit injuria* (a person is not wronged by that to which he consents) and
that an injured party must mitigate his damages is misplaced. There is no duty to mitigate in
TCPA cases.")

[3] This is also presuming that application of these defenses shields Defendant from liability. As
discussed in Part II.C. of this Sur-reply, they would not.

2(5)-(6), (10), 105 Stat. 2394 (note following 47 U.S.C. § 227); see also id. § 2(9), (12)-(13).

Congress determined that "[*b]anning ... automated or prerecorded telephone calls* to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, *is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.*" (emphasis added) Id. § 2(12). As stated by Senator Hollings, the Act's sponsor, "Computerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall." 137 Cong. Rec. 30,821-22 (1991).

A compulsory inquiry into the actions or lack thereof, or motive, of the recipient to determine whether liability should be imposed would make enforcement of the TCPA very difficult, if not impossible, and would undermine the consumer protection purpose of banning automated calls to protect telephone consumers from nuisance and privacy invasion. Courts throughout the country have recognized this purpose and have held accordingly that a plaintiff's motive is irrelevant. *See* Opp to MSJ pp. 3, 4, 16, 17, 20, 21.

The FCC itself provides further guidance as to TCPA's policy behind reassigned numbers. The Commission warned, "unwitting recipients of reassigned numbers might face a barrage of telemarketing voice calls and texts." 2015 FCC Order ¶ 79. Records contain "evidence that callers sometimes will not honor requests of new subscribers for a caller to cease calls to the newly acquired number." Id. at ¶ 82. These calls "are exactly the types that the TCPA is designed to stop." Id. at ¶ 80. It can be inferred by the FCC's statements that the statutory purpose of the TCPA will be thwarted if every potential plaintiff must pass an intent test. This is especially troublesome when it is precisely those consumers who are aware of their rights who bring suit.

If this is not enough, 47 U.S.C. § 227 is not entirely silent on affirmative defenses available to violators of the TCPA. The statute's section regarding a Do-Not-Call Registry promulgated by 47 USC § 227(c)(5) states "[i]t shall be an affirmative defense in any action brought under this paragraph that the defendant has established and implemented with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of

- 7 -

the regulations prescribed under this subsection." 47 USC § 227(c)(5). No such affirmative defense is stated in the statute's analog to 47 USC § 227(b) that is the basis for Plaintiff's suit. *See* 47 USC § 227(b)(3). The inclusion of a good-faith affirmative defense in § 227(c)(5) demonstrates that Congress mandated what defenses are or are not available for each subsection of the TCPA. The statute's silence as to any bad-faith affirmative defense in paragraph 227(b)(3) indicates that Congress did not intend robocallers to evade liability by requiring the Court to scrutinize the *mens rea* of each plaintiff who brings suit. For the foregoing reasons, even if the FCC had not already ruled that there are no bad-faith defenses to the TCPA, it is evident that the statutory purpose of the TCPA would be frustrated if bad-faith defenses were available for serial robocallers to evade fault for which they are wholly responsible.

**E. Plaintiff Is Within the Zone Of Interest Protected By The TCPA**

Wells Fargo's argument that Plaintiff lacks standing is based on the presumption that Plaintiff "caused" her own harm. Reply p. 21. Defendant's argument is also premised on a presumption that Plaintiff lacks a privacy interest which is the zone protected by the TCPA. *Id.*

Testers of statutory violations have repeatedly been found to have standing and the TCPA is no different. *See* Opp to MSJ pp. 19-21. The Supreme Court in *Havens Realty* explained "'the actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing' *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373, 102 S. Ct. 1114, 1121 (1982) (alterations adopted) (quoting *Warth v. Selding*, 422 U.S. 490, 500, (1975) ("Congress may enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute.") Subsequently, in *Watts v. Boyd Properties*, 758 F.2d 1482 (11th Cir. 1985), the Court extended the Supreme Court's rationale in *Havens Realty*, concluding that "even if a tester is motivated solely by the desire to challenge the legality of allegedly discriminatory practices, this is sufficient purpose to confer standing." *Watts*, 758 F.2d at 1485. Plaintiff similarly challenges the legality of Wells Fargo's robocalls under the TCPA, which is a sufficient purpose to confer standing.

Wells Fargo argues that this case is different because Plaintiff lacks an individualized privacy interest; unlike "everyman" with an environmental interest (*Bennet v. Spear*, 520 U.S.

154 (1997)) or a person who is a member of a minority group in *Havens* or *Watts*. Reply p. 20. This is manifestly untrue. Much like everyman in *Bennet*, Plaintiff does not inexplicably lose her privacy interest because she challenges Wells Fargo's unlawful practices. Like the "everyman" who has an interest in the environment or a member of a minority group who has an interest in discriminatory practices, Plaintiff has an irrefutable interest in her own privacy whether she sues under the TCPA or whether she did not feel like Wells Fargo invaded her privacy when it called her initially and when it persisted in calling her after she instructed Wells Fargo's employees to cease calling.[4]

Second, despite Wells Fargo repeated drumming on this issue, Plaintiff did not "cause" her own harm. Plaintiff bought a pre-paid phone and Wells Fargo unlawfully called it. As the court in *Procaps* stated:

> "[N]ot every infirmity in the causal chain deprives a plaintiff of [Article III] standing." *St. Pierre v. Dyer*, 208 F.3d 394, 402 (2d Cir. 2000). And "[t]he mere fact that the [plaintiff's] own decisions played a role in its [injury] does not obviate the causal connection between the defendants' conduct and the plaintiff's injury." [*Gulf States Reorganization Grp., Inc. v. Nucor Corp.*, 466 F.3d 961, 965 (11th Cir. 2006)]. ***Rather, an injury is self-inflicted only if it is so "completely due to the [complainant's] own fault as to break the causal chain."*** *Petro-Chem Processing, Inc. v. E.P.A.*, 866 F.2d 433, 438, 275 U.S. App. D.C. 232 (D.C. Cir. 1989)(Ginsburg, J.) (citing 13A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure: Jurisdiction § 3531.5 (3d ed.)) (emphasis added).

*Procaps*, 2014 U.S. Dist. LEXIS 10874, at *17-20.

Wells Fargo's decision to place illegal robocalls to Plaintiff's telephone was a purposeful and voluntary choice for which Wells Fargo alone is responsible. If Wells Fargo had not placed those robocalls there would have been no violation of the TCPA. Plaintiff did not and could not cause Wells Fargo to first fail to enact any compliance measures to prevent it from making unlawful calls and then to continuously make those calls.

---

[4] Justice Scalia, writing for a unanimous Court in *Bennet v. Spear*, noted that the citizen-enforcement provision of the ESA authorized "any person" to bring an action to enforce the Act. 520 U.S. at 165-66. According to the Court, because the Act "encourage[s] enforcement by so called 'private attorneys general'" ***and does not require potential plaintiffs to be environmentalists seeking to protect wildlife***, standing is "expanded to the full extent permitted by Article III." (emphasis added) *Id.*

**F.     Defendant Fails To Show That Plaintiff Lacks Constitutional Standing**

Wells Fargo then argues that Plaintiff "cannot manufacture standing by choosing to make expenditures based on hypothetical future harm that is not certainly impending" citing *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1151, 1155 (2013). Reply p. 22. This discussion is in relation to respondents who "assert they are suffering ongoing injuries that are fairly traceable [to the statute] because the risk of surveillance under [the statute] requires them to take costly and burdensome measures to protect the confidentiality of their communications." *Id.* The Supreme Court concluded that *"[a]ny ongoing injuries that respondents are suffering are not fairly traceable to [the statute]."* (emphasis added) *Id.* The situation is different here because Wells Fargo's illegal robocalls in violation of the TCPA are directly traceable to minutes deducted from Plaintiff's phone. This is not injury based on a hypothetical future harm but is injury-in-fact. *See Lathrop v. Uber Techs., Inc.*, 14-cv-05678, 2016 WL 97511, at *4 (N.D. Cal. Jan. 8, 2016).

Defendant's second argument is that standing cannot be created by "inflicting harm on themselves." *In re Horizon Healthcare servs., Inc. Data Breach Litig.*, No. CIV.A. 13-7418 CCC, 2015 WL 1472483, at fn. 5 (D.N.J. Mar. 31, 2015) Reply 23. As reiterated several times in this Sur-reply, Plaintiff did not self-inflict her injury. Plaintiff bought a pre-paid phone, did nothing more, and Wells Fargo unlawfully called it. *Plaintiff did not "punch" herself.*

## III. CONCLUSION

For the foregoing reasons, Plaintiff Melody Stoops respectfully requests that Wells Fargo's Motion for Summary Judgment be denied in its entirety.

By: <u>/s/ Joseph R. Manning, Jr.</u><br>
Joseph R. Manning, Jr.

| | |
|---|---|
| Glenn C. Romano | Joseph Richard Manning , Jr., *pro hac vice* |
| Glenn C. Romano, P.C. | The Law Offices of |
| 3830 Lukens Lane | Joseph R. Manning, Jr., APC |
| Hatboro, PA 19040 | 4667 MacArthur Blvd., Suite 150 |
| Telephone: 215-323-4949 | Newport Beach, CA 92660 |
| Fax: 215-323-4950 | Telephone: 949-200-8755 |
| | |
| | Attorneys for Plaintiff |
| | MELODY STOOPS |