# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF PENNSYLVANIA

MELODY STOOPS,

               Plaintiff,

    vs.

WELLS FARGO BANK, N.A.,

               Defendant.

Case No. 3:15-cv-00083-KRG

## WELLS FARGO BANK, N.A.'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I. INTRODUCTION ...................................................................................................1

II. SUMMARY JUDGMENT STANDARD—PLAINTIFF MUST SHOW THAT NO
     REASONABLE JUROR COULD FIND IN WELLS FARGO'S FAVOR ON
     ANY ISSUE OF MATERIAL FACT..................................................................2

III. ARGUMENT- DISPOSITIVE LEGAL ISSUES AND THE EXISTENCE OF
     DISPUTED ISSUES OF MATERIAL FACT COMPEL DENIAL OF
     PLAINTIFF'S MOTION ...................................................................................3

     A.     Plaintiff Presents No Evidence On Whether Calls Were "Made" to the
           Plaintiff By Wells Fargo ........................................................................3

          1.     Plaintiff Has Failed to Meet Her Prima Facie Burden on the Issue............4

          2.     Even if Plaintiff had Met her Initial Burden Material Issues of
               Disputed Fact Exist .......................................................................5

               (a)     The Identity of the "Maker" of the Calls is in Dispute ...................5

               (b)     The Number of "Made" Calls Is In Dispute ....................................6

     B.     Plaintiff "Expressly Consented" To The Calls By Affirmatively Seeking
           Them Out ..............................................................................................8

          1.     Triable Issues of Fact Exist as to Whether Plaintiff Consented to
               the Calls at Issue ..........................................................................8

           2.     Triable Issues of Fact Exist As to Whether Wells Fargo "Made"
               Calls After Plaintiff Revoked Her Consent .............................10

     C.     Triable Issues of Fact Exist as to Whether Plaintiff's Claim Is Barred By
           The Common Law Doctrines Of Assumption Of Risk And *Volenti Non Fit*
           *Injuria* ...............................................................................................11

          1.     Triable Issues of Fact Exist As to Whether Plaintiff Assumed the
               Risk that She Would Receive the Calls At Issue .......................12

          2.     Triable Issues of Fact Exist as to Whether the Doctrine of *Volenti*
               *Non Fit Injuria* Bars Plaintiff's Claim ......................................12

     D.     Triable Issues of Fact Exist As to Whether Plaintiff is Within the "Zone of
           Interest" of the TCPA ..........................................................................13

     E.     Plaintiff Still Lacks Article III Standing Anyway .................................15

i

IV. CONCLUSION..............................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)............................................................2

*Astoria Fed. Sav. & Loan Ass'n v. Solimino*,
   501 U.S. 104 (1991)............................................................................................................10

*Barnes v. Am. Tobacco Co.*,
   161 F.3d 127 (3d Cir. 1998)............................................................................................8, 9

*Beyond Systems, Inc. v. Kraft Foods, Inc.*,
   777 F. 3d 712 (4th Cir. 2015) ............................................................................................12

*Celotex Corp. v. Catrett*,
   477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)........................................................2

*Clapper v. Amnesty Int'l USA*,
   133 S. Ct. 1138 (2013)......................................................................................................15

*Collinsgru v. Palmyra Bd. of Educ.*,
   161 F.3d 225 (3rd Cir. 1998) ............................................................................................10

*Gager v. Dell Fin. Servs., LLC*,
   727 F.3d 265 (3d Cir. 2013)......................................................................................8, 9, 11

*Gleason v. Norwest Mortg., Inc.*,
   243 F.3d 130 (3rd Cir. 2001), overruled on other grounds by *Ray Haluch*
   *Gravel Co. v. Cent. Pension Fund of the Int'l Union of Operating Eng'rs and*
   *Participating Emp'rs*, 134 S. Ct. 773 (2014) ...........................................................................5

*In the Matter of Rules & Regulations Implementing the TCPA*,
   23 F.C.C. Rcd. 559 (2008)..................................................................................................9

*In re Bressman*,
   327 F.3d 229 (3d Cir.2003)............................................................................................4, 5

*In re Horizon Healthcare Servs., Inc. Data Breach Litig.*,
   No. CIV.A. 13-7418 CCC, 2015 WL 1472483 (D.N.J. Mar. 31, 2015)................................15

*In re Rules and Regulations Implementing the TCPA*,
   30 FCC Rcd. 7961 (2015)................................................................................3, 6, 8, 9

*In re Rules and Regulations Implementing the TCPA*,
   7 F.C.C. Rcd. 8752 (1992)..................................................................................................9

*In re Runyan*,
    530 B.R. 801 (M.D. Fla. 2015)........................................................................................9

*In re Wellcare Health Plans, Inc.*,
    754 F. 3d 1234 (11th Cir. 2014) ....................................................................................3

*Leyse v. Bank of Am. Nat. Ass'n*,
    804 F.3d 316 (3d Cir. 2015)...........................................................................13, 14, 16

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992).................................................................................................14, 15

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)..............................................2

*McCown v. International Harvester Co.*,
    463 Pa. 13, 342 A.2d 381 (1975) ...............................................................................11

*Melito v. Am. Eagle Outfitters, Inc.*,
    No. 14-CV-02440 (VEC), 2015 WL 7736547 (S.D.N.Y. Nov. 30, 2015) ..................4

*Meyer v. Portfolio Recovery Associates, LLC*,
    707 F. 3d 1036 (9th Cir. 2012) ....................................................................................8

*Mims v. Arrow Financial Services, LLC*,
    132 S. Ct. 740 (2012).....................................................................................................14

*Nat'l State Bank v. Fed. Reserve Bank*,
    979 F.2d 1579, 1582 (3rd Cir. 1992) ..........................................................................2

*Nat'l Wildlife Fed'n v. Hodel*,
    839 F.2d 694 (D.C.Cir.1988)......................................................................................15

*Ruiz v. 1st Fid. Loan Servicing, LLC*,
    829 N.W.2d 53 (Minn. 2013).....................................................................................3, 5

*Satterfield v. Simon & Schuster, Inc.*,
    569 F.3d 946 (9th Cir. 2009) .....................................................................................7, 9

*Shager v. Upjohn Co.*,
    913 F.2d 398 (7th Cir. 1990) ......................................................................................11

*Sosa v. Alvarez-Machain*,
    542 U.S. 692 (2004).......................................................................................................3

*Storino v. Borough of Point Pleasant Beach*,
    322 F.3d 293 (3d Cir.2003).................................................................................14, 16

*Teva Pharm. USA, Inc. v. Novartis Pharm. Corp.*,
  482 F.3d 1330 (Fed.Cir. 2007)............................................................................15

*Thomas v. Taco Bell Corp.*,
  879 F. Supp. 2d 1079 (C.D. Cal. 2012) aff'd, 582 F. App'x 678 (9th Cir.
  2014) .....................................................................................................................11

*United States v. Bean*,
  537 U.S. 71 (2002).................................................................................................3

*United States v. Diebold, Inc.*,
  369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)..............................................2

*United States v. Hoslett*,
  998 F.2d 648 (9th Cir. 1993) .................................................................................8

*United States v. Texas*,
  507 U.S. 529 (1993).............................................................................................11

*United States v. Williams*,
  340 F. 3d 1231 (11th Cir. 2003) ...........................................................................3

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State,
Inc.*,
  454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982)........................................14

*Wagner v. Firestone Tire & Rubber Co.*,
  890 F.2d 652 (3d Cir. 1989)................................................................................12

*Wheeler v. Travelers Ins. Co.*,
  22 F.3d 534 (3d Cir. 1994)..................................................................................13

*Yount v. Midland Funding, LLC*,
  No. 2:14-CV-108, 2016 WL 554851, at *8 (E.D. Tenn. Feb. 10, 2016) ..................8

## STATUTES

47 U.S.C.
  § 227(b)(1)(A).......................................................................................................4
  § 227(b)(1)(B)....................................................................................................3, 7

## OTHER AUTHORITIES

Fed. R. Civ. P. 56(a) ..................................................................................................2

*Restatement (Second) of Torts* § 892 (1979) ...........................................................8

# I.

## INTRODUCTION

Plaintiff Melody Stoops ("Plaintiff") bought at least 35 cell phone lines for the sole purpose of manufacturing wrong number calls in order to sue businesses under the TCPA. Plaintiff purposefully sought out cell phone numbers in distressed locations making the receipt of wrong number debt collection calls more likely.  She then intentionally added minutes to the phones lines that received the most wrong number calls and did so solely for the purpose of facilitating the further receipt of such calls.  Finally, it is undisputed that Plaintiff welcomed receipt of these calls and was "ok" with them.  On these facts, Plaintiff cannot use the Court system to profit by her own conduct and it is Wells Fargo, and not Plaintiff, that is entitled to summary judgment.  *See* Docket ("Dkt.") 44.

Not surprisingly Plaintiff's cross-motion for summary judgment ignores these facts. Reading the motion in isolation one would assume that Plaintiff was an ordinary consumer of cellular phone service.  Her two-page declaration states only that she owned two cell phone numbers, paid for them, and received calls that drained her minutes.  She does not mention her 33 other cell phones lines or her "business" of collecting wrong-number calls or that her purpose in adding minutes to her phone lines was to facilitate the wrong number calls she now sues for.

Plaintiff's motion must be denied for all the reasons Wells Fargo's must be granted.  It must be denied for the additional reason that material issues of fact remain in dispute, even if the legal issues are decided in Plaintiff's favor.  In short, the motion is meritless.

## II.

## SUMMARY JUDGMENT STANDARD—PLAINTIFF MUST SHOW THAT NO REASONABLE JUROR COULD FIND IN WELLS FARGO'S FAVOR ON ANY ISSUE OF MATERIAL FACT

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" under Rule 56 if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  A dispute over a material fact is "genuine" if "a reasonable jury could return a verdict for the nonmoving party." *Id.*

When the moving party bears the burden of persuasion at trial, it must identify evidence in the record establishing the absence of a genuine factual issue.  *Nat'l State Bank v. Fed. Reserve Bank*, 979 F.2d 1579, 1582 (3rd Cir. 1992).  If the moving party meets its burden, the burden shifts to the nonmoving party to go beyond the pleadings and "come forward with `specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)).  When determining a motion for summary judgment, the court must construe all evidence in the light most favorable to the nonmoving party.  *United States v. Diebold, Inc*., 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).  Additionally, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505.

## III.
## ARGUMENT- DISPOSITIVE LEGAL ISSUES AND THE EXISTENCE OF DISPUTED ISSUES OF MATERIAL FACT COMPEL DENIAL OF PLAINTIFF'S MOTION

**A.     Plaintiff Presents No Evidence On Whether Calls Were "Made" to the Plaintiff By Wells Fargo**

The TCPA contains two provisions with respect to the use of regulated technology to place calls to phone numbers; one applies to cell phones and the other to landlines.  Importantly, the two provisions contain different triggers for liability.  In the context of calls to landlines, a violation occurs the moment a call is "initiate[d]."  *See* 47 U.S.C. § 227(b)(1)(B).  On the other hand, in the context of calls to cell phones, a violation cannot occur until the call is actually "ma[d]e" — not merely "attempted" or "initiated."  *See id.* § 227(b)(1)(A).

The FCC has been clear that the term "initiate" refers to the physical process of beginning a call.  A call is initiated when a caller "takes the steps necessary to physically place a telephone call . . . ."  *In Re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961, 7979 (2015).  The word "make" is not defined and must mean something different. *See United States v. Williams*, 340 F. 3d 1231 (11th Cir. 2003) (deliberate usage of different words in a statute reflects that different meaning was intended by Congress); *see also United States v. Bean*, 537 U.S. 71, 76 n.4 (2002) ("The use of different words within related statutes generally implies that different meanings were intended."); *see also Sosa v. Alvarez-Machain*, 542 U.S. 692, 712, n.9 (2004) (same); *In re Wellcare Health Plans, Inc*., 754 F. 3d 1234, 1237 (11th Cir. 2014) (same).

As set forth below, Plaintiff has presented no evidence that Wells Fargo "made" the calls at issue; only that it "initiated" certain calls.  But "initiation" of calls is not actionable with respect to calls to cell phones.  Even if Plaintiff met her prima facie burden, however, a triable

3

issue of fact remains as to the identity of the "maker" of the calls at issue under the unique facts of this case.

### 1.        Plaintiff Has Failed to Meet Her Prima Facie Burden on the Issue

As Plaintiff is the moving party, she bears the burden of introducing sufficient evidence to establish that there is no triable issue of fact as to all of the elements of her TCPA claim.  *See In re Bressman*, 327 F.3d 229, 237-38 (3d Cir.2003) ("[w]hen the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party.").  Plaintiff has not met that burden.

Plaintiff's moving papers state that Wells Fargo "made" calls to her cell phone using an ATDS.  *See* Plaintiff's Motion for Summary Judgment (the "Motion"), p. 4.  A review of her Concise Statement of Undisputed Material Facts, however, demonstrates that this statement lacks evidentiary support.  *See* Dkt. 56-1.  Plaintiff's Material Facts 9 and 10 state only that Wells Fargo "initiated" calls to Plaintiff's cell phone, which is not enough to establish a claim under 47 U.S.C. Section 227(b)(1)(A).  Dkt. 56-1, p. 2; *Melito v. Am. Eagle Outfitters, Inc.*, No. 14-CV-02440 (VEC), 2015 WL 7736547, at *5 (S.D.N.Y. Nov. 30, 2015) ("As discussed previously, the specific provision at issue in this case is section 227(b)(1)(A)(iii), which does not use the verb 'initiate' but instead uses the verb 'make.'")  Plaintiff's Material Fact 13 contains the word "made" yet the supporting evidence is the Parties' Joint Stipulation of Facts (Dkt. 56-4) which states only that Wells Fargo "initiated" calls.  *See Id*. at ¶¶ 3-4.  Additionally, none of the

declarations before the court directly identify any calls "made" by Wells Fargo to either of Plaintiff's cell phone numbers.[1]

As such, Plaintiff has failed to meet her initial burden of demonstrating that no reasonable juror could find against Wells Fargo on the issue of "making" calls to her cell phone.

### 2.    Even if Plaintiff had Met Her Initial Burden Disputed Facts Exist

### (a)    The Identity of the "Maker" of the Calls is in Dispute

As shown in Wells Fargo's motion for summary judgment (Dkt. 44), Plaintiff is the "maker" of the calls at issue.  A person "makes" something when she "cause[s] [it] to exist or happen; [or] bring[s] [it] about."  *Ruiz v. 1st Fid. Loan Servicing, LLC*, 829 N.W.2d 53, 57 (Minn. 2013).  Here, Plaintiff specifically admitted at deposition that she "manufacture[d]" the calls at issue (*See* Wells Fargo's Response to Plaintiff's Concise Statement of Undisputed Material Facts ("Response Facts"), ¶¶ 24, 26, 28, 29, and 30) and her conduct certainly supports her confession.  *See* Response Facts, ¶¶ 21-39, 44.

While Wells Fargo believes that it is entitled to summary judgment on this issue, to defeat Plaintiff's Motion all it has to do is demonstrate that a reasonable jury might find in its favor on the issue.  *Gleason v. Norwest Mortg., Inc*., 243 F.3d 130, 138 (3rd Cir. 2001) (a nonmoving party has created a genuine issue of material fact "if it has provided sufficient evidence to allow a jury to find in its favor at trial"), overruled on other grounds by *Ray Haluch Gravel Co. v. Cent. Pension Fund of the Int'l Union of Operating Eng'rs and Participating Emp'rs*, 134 S. Ct. 773 (2014).  Wells Fargo has met that burden by introducing evidence that: i)

---

[1] And of course, even if there some inference to that effect were *possible* that would be insufficient to carry Plaintiff's initial burden. Instead, Plaintiff must introduce sufficient evidence to demonstrate that no other inference is possible.  *In re Bressman*, 327 F.3d at 238 (Plaintiff's initial burden is to demonstrate that "no reasonable jury could find for the non-moving party").

Plaintiff knowingly sought out and desired to receive wrong number calls; ii) Plaintiff bought at least 35 phone numbers with the intent to manufacture lawsuits; and iii) Plaintiff intentionally obtained phone numbers in depressed areas where debt collection calls were most likely. Response Facts, ¶¶ 21 – 39, 44.  On these facts a reasonable juror could easily conclude that Plaintiff  "caused [the calls] to exist or happen."

Stated alternatively, Plaintiff was the "but for" cause of her own injury in a unique and intervening way.  Had Plaintiff owned but one or two phone lines, like an actual consumer, there is no evidence Plaintiff would have received the calls at issue.  Indeed, on Plaintiff's one personal cell phone number, she has received no calls from Wells Fargo.  *See* Response Facts, ¶¶ 25, 26.  But for her decision to seek out wrong number calls in order to manufacture lawsuits, therefore, the calls to Plaintiff would never have been "made" at all; at most they would have been initiated to a phone line that was not assigned to the Plaintiff.  While it is impossible to know exactly what "would have happened" without Plaintiff's conduct, what is clear is that what "did happen" only happened because Plaintiff caused it.  As such, a jury could easily conclude that she "made" the calls at issue.  Indeed, no reasonable juror could conclude otherwise.

**(b)      The Number of "Made" Calls Is In Dispute**

Plaintiff's Motion seeks judgment on 85 calls.  Dkt. 56, p. 1.  As noted above, however, Plaintiff's evidence only specifies that Wells Fargo "initiated" 85 calls, not that it "made" that many calls.  Assuming, *arguendo*, that Wells Fargo made any calls, the correct count is far lower than 85.

As argued above, "initiating a call" means, in essence, "attempting a call,"[2] so a fortiori, "making a call" requires something more.  Few cases have explored this distinction, but the answer likely lies in the dual nature of the word "call."  The term "call" is somewhat *sui generis* in that, unlike most verbs, it can be applied to mean either the successful act of "calling" or the mere attempted act of "calling" depending on the context.  *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009) (noting that Webster's dictionary's definition of "call" as "to [successfully] communicate with or try to get into communication with a person by telephone").  While both Sections 227(b)(1)(B) and 227(b)(1)(A) of the TCPA use the word "call," the words appear to be used in two different manners as demonstrated and modified by the preceding verb — either "make" or "initiate."  That is, tracking *Satterfield*, a call is only "made" when a party is actually "communicate[d] with."  On the other hand, liability for true "robocalls"[3] attaches the instant the robot "initiates" a call by "try[ing] to get into communication with" a customer.  Thus the statute adopts the dichotomy recognized in *Satterfield* in a manner consistent with common sense and practical policy considerations.[4]  Adopting this approach, only calls that result in a successful communication via telephone can qualify as a "made" call.  Otherwise a "made call"  and an "initiated call" would mean the same thing — an "attempted call."

---

[2] *In Re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961, 7979 (2015).

[3] Only pre-recorded voice messages are at issue with respect to calls to landlines, not calls made by an ATDS.  47 U.S.C. § 227(b)(1)(B).  Given the narrower purview of 47 U.S.C. § 227(b)(1)(B), it makes sense that Congress would adopt a lower threshold for liability for such calls — the annoyance of being greeted with a pre-recorded message is greater than being met with a live person and the potential for the invasion of privacy is greater as well.

[4] Although Plaintiff may argue in reply that the TCPA is violated any time an "attempt to communicate" by telephone is "made," that cannot be the proper interpretation of the statute.  Again, there must be some distinction between "made" and "initiate."

Here, the parties' stipulation suggests that 24 calls resulted in a successful contact.  *See* Dkt. 56-4, ¶¶ 3 and 4.  At most, therefore, Plaintiff has shown that 24 calls were "made"—the identity of the "maker" remains in question, however.  *See* Section 2.(a) above.[5]

**B.     Plaintiff "Expressly Consented" To The Calls By Affirmatively Seeking Them Out**

     **1.     Triable Issues of Fact Exist as to Whether Plaintiff Consented to the Calls at Issue**

A call is not actionable under the TCPA if it is made with the "express consent" of the "called party."  Plaintiff is the "called party" because she is the subscriber to the phone line.  *In re Rules and Regulations Implementing the TCPA*, 30 FCC Rcd. 7961, 8000-01 (2015).  Her "express consent" may be shown by her affirmative conduct.  *Barnes v. Am. Tobacco Co*., 161 F.3d 127, 148 (3d Cir. 1998).  It need not be communicated to Wells Fargo to be valid.  *Restatement (Second) of Torts* § 892 (1979).  But it must exist prior to the calls at issue.  *See, e.g.*, *Meyer v. Portfolio Recovery Associates, LLC*, 707 F. 3d 1036, 1040  (9th Cir. 2012)(consent must exist "before the [challenged] call was placed.")

As the Third Circuit pointed out in *Gager v. Dell Fin. Servs., LLC*, consent has long been viewed through the lens of the subjective mindset of the consenting party—it is nothing more than "a willingness in fact for conduct to occur."  *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265,

---

[5] Wells Fargo is aware that some courts have found that a call to a cell phone need not be answered to be actionable. *Yount v. Midland Funding, LLC*, No. 2:14-CV-108, 2016 WL 554851, at *8 (E.D. Tenn. Feb. 10, 2016) (calls need not be answered, only placed, to trigger statutory liability). None of these cases have explored the distinction between "making" and "initiating" a call, however.  To the contrary, these cases have assumed that "making," "initiating," and "placing" a call are the same thing.  But, as noted above, the use of different language within the same statutory scheme means that these words were intended to have different meaning.

270-71 (3d Cir. 2013). As the TCPA requires "express" consent, however, Plaintiff's subjective willingness to receive the calls at issue must be "clearly indicated and explicit."[6]

Here, the necessary mindset was present (*see* Response of Facts, ¶¶ 24, 26, 28, 29, and 30) and it led to "affirmative conduct" that "clearly indicat[ed]" an "explicit" desire to receive the calls at issue — namely activity affirmatively designed to create the calls (*see* Response Facts, ¶¶ 21 - 39, and 44). Undeniably, therefore, a reasonable juror could conclude that the "express consent" of the "called party" was present from the inception of the very first call.

Importantly, the Third Circuit has not adopted the Ninth Circuit's articulation of "express consent" requiring it to be "[c]onsent that is clearly and unmistakably *stated*." (Italics added.) *Satterfield v. Simon & Schuster, Inc*., 569 F.3d 946 (9th Cir. 2009). When passing on the issue of consent in *Gager*, the Court avoided defining the phrase "express consent," leaving intact its earlier ruling in *Barnes*, 161 F.3d at 148. *See Gager*, at 270-71. The ruling in *Barnes* is consistent with the approach taken by the FCC, which has always allowed express consent to be demonstrated through conduct. *See In re Rules and Regulations Implementing the TCPA*, 30 FCC Rcd. 7961, 7991-92 (July 10, 2015) (express consent shown by "giving his or her wireless number to the person initiating the autodialed or prerecorded call").[7]

In short, on the facts before the Court a juror could easily find that Plaintiff had an express, clear, direct, willingness in fact to receive the calls at issue. Her motion must be denied.

---

[6] *United States v. Hoslett*, 998 F.2d 648, 661 (9th Cir. 1993).

[7] *See also In the Matter of Rules & Regulations Implementing the TCPA*, 23 F.C.C. Rcd. 559, 564 (2008) ("provision of a cell phone number to a creditor, e.g., as part of a credit application, reasonably evidences prior express consent."); *In re Rules and Regulations Implementing the TCPA*, 7 F.C.C. Rcd. 8752, 8769 (1992) ("[A]ny telephone subscriber who releases his or her telephone number has, in effect, given prior express consent to be called by the entity to which the number was released.").

2.      **Triable Issues of Fact Exist As to Whether Wells Fargo "Made" Calls After Plaintiff Revoked Her Consent**

Tracking common law principles, a called party can revoke their consent to receive calls under the TCPA.  *Gager*, 727 F.3d at 270-71.  The burden is on the Plaintiff to demonstrate that she successfully revoked her consent, however.  *In re Runyan*, 530 B.R. 801, 807 (M.D. Fla. 2015).  And only "express and clear revocation of consent [for TCPA purposes is required]; implicit revocation will not do." *Id.*

Plaintiff's Statement of Undisputed Material Facts does not mention revocation.  Nonetheless, in her declaration Plaintiff states "[w]hen I talked to Wells Fargo representatives I told them to stop calling me and that I am not the person they are looking for."  *See* Dkt. 56-7.  Notably, however, there is no evidence that Wells Fargo "made" any calls to Plaintiff after the unspecified date that Plaintiff claims she asked for the calls to stop.  Indeed, the Declaration of Mike Nunn submitted by Plaintiff in support of her motion specifically states that "Wells Fargo was not informed that the number had changed hands until November 13, 2014.  After this date Wells Fargo stopped all calls to the [Plaintiff's number]."  *See* Dkt. 56-6, ¶ 5.  As such, Plaintiff has failed to carry her prima facie burden of demonstrating that Wells Fargo made calls to her after an express revocation effort.

Even if Plaintiff had introduced such evidence, however, triable issues still exist.  Specifically, at deposition the Plaintiff testified that she would advise callers that a telephone number had changed hands in the hopes that the calls would continue and solely so she could seek treble damages.  Response Facts, ¶¶ 34, 35.  That is, a reasonable juror could find that her subjective "willingness in fact" to receive wrong number phone calls remained, even as she asked for the calls to stop.  As such, the motion must be denied.

**C.** **Triable Issues of Fact Exist as to Whether Plaintiff's Claim Is Barred By The Common Law Doctrines Of Assumption Of Risk And *Volenti Non Fit Injuria***

In interpreting and applying a federal statute, Courts must apply common law doctrines to give the statute effect. *Collinsgru v. Palmyra Bd. of Educ.*, 161 F.3d 225, 231 (3rd Cir. 1998) ("the courts may take it as given that Congress has legislated with an expectation that the common-law principle will apply except when a statutory purpose to the contrary is evident"), citing *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991).

Congress cannot re-state the entire body of substantive law every time it enacts a statute. *See Shager v. Upjohn Co.*, 913 F.2d 398, 404 (7th Cir. 1990) ("statutes creating torts rarely bother to set forth all the ancillary doctrines [] that are necessary to compose a complete regime of tort liability."). As such, courts are to assume Congress wants ordinary common law doctrines to be faithfully applied unless the statute "speaks directly" on an issue and abrogates existing law. *United States v. Texas*, 507 U.S. 529, 534 (1993) ("[i]n order to abrogate a common-law principle, the statute must 'speak directly' to the question addressed by the common law."). This principle has been applied repeatedly in interpreting the TCPA. *See Gager*, 727 F.3d 270-71 (turning to common law of consent to find revocation is permitted despite statutory silence on the issue); *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1084, fn. 3 (C.D. Cal. 2012) aff'd, 582 F. App'x 678 (9th Cir. 2014) (applying common law vicarious liability principles to the TCPA).

As the doctrines of assumption of risk and *volenti non fit injuria* are basic common law rules deeply imbedded in the fabric of American jurisprudence, and as neither the words nor the history of the TCPA suggest that Congress intended to abrogate these doctrines, each is to be faithfully applied here. A reasonable juror could conclude that each bars Plaintiff's claim. As such, her motion must be denied.

### 1.    Triable Issues of Fact Exist As to Whether Plaintiff Assumed the Risk that She Would Receive the Calls At Issue

At common law, assumption of the risk is a viable defense to strict liability actions. *McCown v. International Harvester Co*., 463 Pa. 13, 15, 342 A.2d 381, 382 (1975).  To prevail on an assumption of the risk defense, a defendant must show "that the plaintiff knew of the defect and voluntarily and unreasonably proceeded to use the product or encounter a known danger." *Wagner v. Firestone Tire & Rubber Co*., 890 F.2d 652, 657 (3d Cir. 1989) (citation omitted).

Here, Plaintiff undeniably understood and consented to a known and obvious "danger" — the receipt of wrong number calls.  She intentionally bought 35 cell phones and subscribed to as many cellular service lines for the sole purpose of receiving such calls.  Response Facts, ¶¶ 23, 24, 26, 29, and 36.  She sought out phone numbers from depressed locations to make the receipt of such calls all the more likely.  *Id.*, at ¶¶ 23, 27 – 29.  And she sat back and awaited these calls for the sole purpose of first tracking and then suing on them.  *Id.*, at ¶¶ 31 – 37.  Accordingly, a reasonable juror could easily conclude that Plaintiff, by her conduct, knowingly and voluntarily assumed the risk of receiving the calls at issue.[8]

### 2.    Triable Issues of Fact Exist as to Whether the Doctrine of *Volenti Non Fit Injuria* Bars Plaintiff's Claim

As the Fourth Circuit Court of Appeals recently explained:

> It is a general maxim of tort law that "no wrong is done to one who consents." Restatement (Second) of Torts 892A cmt. a (1979). As such, "[o]ne who effectively consents to conduct of another intended to invade his interests cannot recover in an action of tort for the conduct or for harm resulting from it." Id. § 892A. This principle has been known as "volenti non fit injuria," or "to a

---

[8] Indeed, it is Wells Fargo that is entitled to judgment because no reasonable juror could conclude otherwise.

> willing person it is not a wrong." Black's Law Dictionary 1805
> (10th ed.2014).

*Beyond Systems, Inc. v. Kraft Foods, Inc*., 777 F. 3d 712, 718 (4th Cir. 2015).

Here, it is essentially undisputed that Plaintiff acted to create her own harm and sought to profit by it. Again, she intentionally bought 35 cell phones and subscribed to as many cellular service lines for the sole purpose of receiving such calls. Response Facts, ¶¶ 23, 24, 26, 29, and 36. She sought out phone numbers from depressed locations to make the receipt of such calls all the more likely. *Id.*, at ¶¶ 23, 27 – 29. And she sat back and awaited these calls for the sole purpose of first tracking and then suing on them. *Id.*, at ¶¶ 31 – 37. Accordingly a reasonable juror could easily conclude that Plaintiff, by her conduct and with full knowledge, assented to the "invasion" of her interests that she claims to have suffered.[9]

**D.    Triable Issues of Fact Exist As to Whether Plaintiff is Within the "Zone of Interest" of the TCPA**

Only individuals with claims falling within the TCPA's "zone of interest" may pursue claims under the statute. *Leyse v. Bank of Am. Nat. Ass'n*, 804 F.3d 316, 324 (3d Cir. 2015) ("This commonsense judgment is embodied in an interpretive doctrine of special importance here… a statutory cause of action extends only to plaintiffs whose interests `fall within the zone of interests protected by the law invoked."); *see also Wheeler v. Travelers Ins. Co*., 22 F.3d 534, 538 (3d Cir. 1994) (prudential standing limitations require "that a litigant demonstrate that the asserted interests are arguably within the 'zone of interests' intended to be protected by the statute, rule or constitutional provision on which the claim is based").

---

[9] Once again, Wells Fargo is entitled to judgment ins this case because no reasonable juror could conclude otherwise.

The holding in *Leyse*, departs from the analytic framework adopted by some courts that have suggested that only a "called party" has standing to assert a valid TCPA claim.  Leaving the identity of the "called party" undecided, the Third Circuit in *Leyse* explored the contours of the TCPA's outer "zone of interest" and concluded "Congress's repeated references to privacy" dictate the scope and extent of the TCPA's reach.  *Id.* at 326.  In doing so, the Third Circuit held directly that an individual "with [only] a generalized interest in punishing telemarketers" does not have the sort of particularized injury required to maintain an action in federal court for a statutory violation.  *Id.* at 323.  On the other hand, "a regular user of the phone line who occupies the residence being called undoubtedly has the sort of interest in privacy, peace, and quiet that Congress intended to protect."  *Id.* at 326.  This is so even if he or she is not the "called party" capable of giving consent.  *Id.*

While the contours of the TCPA's "zone of interest" are plainly a question of law, whether or not the Plaintiff falls inside or outside of that zone appears to turn on a question of fact.  Given that Plaintiff knowingly sought out and tracked incoming wrong number calls,[10] there is no basis to conclude that her privacy was invaded by the calls she received.  A jury could easily conclude that Plaintiff lacks the sort of individualized privacy interest in her phones that the TCPA was designed to protect.  *See Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740, 746 (2012) (statute was passed because "many consumers [we]re outraged over the proliferation of intrusive, nuisance telemarketing calls to their homes [which were] regarded by recipients as an invasion of privacy.")  Such a finding would place the Plaintiff outside of the "zone of interest" established by the TCPA and she would lack standing to pursue her claim.  As such, the Plaintiff's motion must be denied.

---

[10] *See* Response Facts, ¶¶ 21 – 39, 44.

E.     **Plaintiff Still Lacks Article III Standing Anyway**

Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims, and they must be dismissed.  *Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 296 (3d Cir.2003).  Article III of the Constitution restricts the "judicial power" of the United States to the resolution of cases and controversies.  *See Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc*., 454 U.S. 464, 471, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982).  The "irreducible constitutional minimum" of Article III standing consists of three elements.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  The first element is that plaintiff must have suffered a "concrete," "particularized" injury-in-fact, which must be "actual or imminent, not conjectural or hypothetical."  *Id.*  This element is often determinative.  *Teva Pharm. USA, Inc. v. Novartis Pharm. Corp*., 482 F.3d 1330, 1337 (Fed.Cir. 2007) ("Of the three standing requirements, injury-in-fact is the most determinative."); *Nat'l Wildlife Fed'n v. Hodel*, 839 F.2d 694, 704 (D.C.Cir.1988) (describing the injury-in-fact prong as "the core of standing").

Plaintiff's Motion obscures her lack of Constitutional standing to bring this claim. Specifically, Plaintiff's evidence establishes that: i) Plaintiff added minutes to her phone using an "airtime card"; ii) she was not reimbursed for this expense; and iii) the two phones were deducted minutes when she answered calls from Wells Fargo.[11] *See* Dkt. 56-7, ¶¶ 7-10. What Plaintiff fails to mention, however, is that the phones at issue were purchased for the sole

---

[11] Notably, the Plaintiff's declaration does not actually state that she *did* answer calls from Wells Fargo, or how many.  Indeed, no evidence exists in the record as to who answered incoming calls from Wells Fargo to the numbers at issue.  Plaintiff states that she spoke to Wells Fargo representatives — and the joint stipulation of the parties confirms the same — but whether those were incoming or outgoing calls is unaddressed. Again, all available inferences must be drawn in Wells Fargo's favor.

purpose of collecting wrong number calls and that she added minutes to her cell phone for the same purpose.  Response Facts, ¶¶ 22 - 26, 27 – 30, 36, and 37.

The omitted facts are crucial to the outcome of the Motion.  The United States Supreme Court has already directly held that spending money to create a lawsuit is *not* a cognizable "injury" in fact.  *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1151, 1155 (2013) (Plaintiff "cannot manufacture standing by choosing to make expenditures based on hypothetical future harm that is not certainly impending"); *see also In re Horizon Healthcare Servs., Inc. Data Breach Litig.*, No. CIV.A. 13-7418 CCC, 2015 WL 1472483, at fn. 5 (D.N.J.  Mar. 31, 2015) (standing cannot be created by a party "inflicting harm on themselves").  As such, Plaintiff lacks any cognizable economic harm because she was knowingly inflicting harm on herself to create a cause of action.

Without an economic hook, however, Plaintiff's case is sunk.  She plainly has no individualized privacy interest in the calls she manufactured and the Third Circuit has already held that a party lacks Article III standing even if they possess "a generalized interest" in thwarting telemarketers.  *Leyse*, 804 F.3d at 323.  Lacking any compensable economic or privacy interests, therefore, Plaintiff has not suffered an "injury in fact" and the case must be dismissed for want of subject matter jurisdiction.  *See Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 296-98 (3d Cir. 2003).

## IV.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment must be denied.


By: */s/ Eric J. Troutman*
 Eric J. Troutman, *pro hac vice*
 Divya S. Gupta, *pro hac vice*

Dorsey & Whitney LLP
600 Anton Boulevard, Suite 2000
Costa Mesa, CA 92626
Telephone: 714.800.1400
Facsimile: 714.800.1499
Troutman.Eric@Dorsey.com
Gupta.Divya@Dorsey.com

Martin C. Bryce, Jr. (I.D. No. 59409)
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Telephone: 215.864.8238
Facsimile: 215.864.8999
bryce@ballardspahr.com

Attorneys for Defendant
WELLS FARGO BANK, N.A.

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF PENNSYLVANIA

MELODY STOOPS,

        Plaintiff,

  vs.

WELLS FARGO BANK, N.A.,

        Defendant.

Case No. 3:15-cv-00083-KRG

**(JUDGE KIM R. GIBSON)**

FILED ELECTRONICALLY

## CERTIFICATE OF SERVICE

Service is being effected upon counsel for counsel of record via the CM/ECF system.

By: */s/ Eric J. Troutman*
        Eric J. Troutman

Eric J. Troutman, *pro hac vice*
Divya S. Gupta, *pro hac vice*
Dorsey & Whitney LLP
600 Anton Boulevard, Suite 2000
Costa Mesa, CA 92626
Telephone: 714.800.1400
Facsimile: 714.800.1499
Troutman.Eric@Dorsey.com
Gupta.Divya@Dorsey.com

Martin C. Bryce, Jr. (I.D. No. 59409)
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Telephone: 215.864.8238
Facsimile: 215.864.8999
bryce@ballardspahr.com

Attorneys for Defendant
WELLS FARGO BANK, N.A.