| | |
|---|---|
| MELODY STOOPS, | Case No. 3:15-cv-00083-KRG |
| Plaintiff, | U. S. District Judge: |
| v. | Honorable Kim R. Gibson |
| WELLS FARGO BANK, N.A., | |
| Defendant. | |

## PLAINTIFF MELODY STOOPS' REPLY SUPPORTING HER MOTION FOR

## SUMMARY JUDGMENT

# I. <u>INTRODUCTION</u>

Wells Fargo is a serial violator of the TCPA so prolific that, incredibly, it argues the mere act of activating a cell phone wipes out its liability for making unlawful calls because that act alone is so likely to open the floodgate to its apparently inevitable robocalls that it actually constitutes consent to those calls. In its Opposition to Plaintiff's Motion for Summary Judgment ("Opp"), Defendant focuses its arguments on Plaintiff's decision to buy and activate cell phones (her only affirmative actions in evidence [Opp, pp. 6, 12, 13.]), attacks Plaintiff's mental state which is indisputably irrelevant under the governing statutory framework[1] (*Id.* at p. 8), and on semantic arguments that either defy logic (e.g., Plaintiff provided *prior* express consent to Wells Fargo despite not knowing Wells Fargo would call her phone until *after* the calls [*Id.*]), were the subject of a stipulation (the made vs. initiated argument [*Id.* at pp. 3-6]), or which are simply ridiculous (that Plaintiff actually "willed" Wells Fargo to call her by activating her phone [*Id.* at p. 6]). Defendant offers no evidence whatsoever of any measures employed to comply with the TCPA.

Like any other consumer, Plaintiff bought and activated cell phones and had no way to know or expect, nor was it obvious, that Defendant would unlawfully call her phones. By the time Wells Fargo unlawfully called her phones, Plaintiff had no obligation to inform or in any way mitigate Wells Fargo's statutory damages under the TCPA. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, Declaratory Ruling and Order*, 30 F.C.C.R. 7961, (June 18, 2015) ("2015 FCC Order") at ¶ 95. Plaintiff did nothing different from other consumers who buy and activate a cell phone and she did not and could not do anything to cause Wells Fargo to act. **This was Plaintiff's only affirmative act. She bought and activated a pre-paid phone.** Wells Fargo's conduct would have occurred regardless of who acquired the reassigned numbers and arguments that Plaintiff's intent affects Defendant's liability are meritless. *See infra* II.C. Wells Fargo ad hominem attempts to evade fault, for which

---

[1] Note that paragraph 21 of Defendant's Response to Plaintiff's Concise Statement of Facts in support of its opposition attacking Plaintiff as to a felony conviction is inaccurate. Plaintiff has submitted new evidence that refutes this assertion. *See* Plaintiff's Supplemental Affidavit filed concurrently with this Reply.

it is solely responsible, do not concoct any triable issues of fact. Plaintiff's Motion for Summary Judgment should be granted.

## II. ARGUMENT

### A. The Undisputed Facts Demonstrate that Wells Fargo Both "Initiated" And "Made" All The Calls in Dispute

Wells Fargo begins its Opposition with disingenuous semantic argument that because the word "make" is not defined it must mean something so absurd that defies all reason – that Plaintiff "made" the calls Wells Fargo made to her phones by the sole act of buying phones with randomly assigned numbers. Opp, p. 9. Wells Fargo twists the definition of the term "initiate" as it relates to portions of TCPA by citing ill-fitted cases about third-party dialers' liability, and by blinding itself from the FCC's direct guidance on this matter. Wells Fargo's arguments have no basis in law and fact, and are the logical contrivances of a desperate and guilty serial violator.

#### 1. Wells Fargo Already Admitted to Both "Making" and "Initiating" All of the Calls In Dispute

Wells Fargo first tries to hide behind an argument that 47 U.S.C. § 227(b)(1)(A), which is the subsection under Plaintiff alleges Defendant's TCPA violation, requires that the call is "ma[d]e" rather than "initiate[d]" as is the standard for subsection 227(b)(1)(B). Opp, p. 3. However, Wells Fargo has already admitted to both "making" and "initiating" all of the calls at issue and is sidestepping this fact in its Opposition.

In the Joint Stipulation of Facts lodged with this court as Docket ("Dkt.") 37, "Wells Fargo agrees and stipulates that *__all__* of the telephone calls Wells Fargo *initiated/__made__ to cell phone numbers (305) XXX-4589 and (853) XXX-6128*, as specifically set forth in paragraphs 3 and 4 below, were *__made__* with an "automatic telephone dialing system as defined under the "Telephone Consumer Protection Act." (emphasis added). *See* Plaintiff's Motion for Summary Judgment ("MSJ") at p.4; Statement of Facts ¶13; *See also* Wells Fargo's Statement of Facts in Support of Motion for Summary Judgment ("WF SF") ¶24, Dkt. 44. Wells Fargo has already admitted that it made and initiated *__all__* of the calls, and its attempt to avoid this admission of fact is disingenuous and misleading.

2.  *The FCC Held That the Terms "Make" and "Initiate" Are Synonymous As To Sections 227(b)(1)(A) and 227(b)(1)(B)*

Wells Fargo devotes much of its Opposition on semantic arguments that it did not actually "make" the calls to Plaintiff's phones despite acknowledging that it "initiated" them. Opp, p. 3-5. Notwithstanding its linguistic voodoo, Defendant completely ignores the FCC's guidance in Section 2 of its June 18, 2015 Order entitled "**Maker of a Call**" *See* 2015 FCC Order, p. 18.

The FCC first clarifies that the term "make" for purposes under section 227(b)(1)(A) has the same meaning as "initiate" does under section 227(b)(1)(B). "[T]he Commission has recently stated that the same logic that applies to the 'initiation' of the calls under 227(b)(1)(B) applies to the 'making' of calls under section 227(b)(1)(A)." 2015 FCC Order, p.19, ¶27, fn.95. (citing *DISH Declaratory Ruling*, 28 FCC Rcd at 6575, 6583, paras. 3, 26; 47 U.S.C. § 227(b)(1).) To further explain the rules, the FCC directly acknowledged the legal synonymy of "initiate" and "make" in the analog to 227(b)(1)(A) codified in the Code of Federal Regulations under 47 C.F.R. § 64.1200(a)(1).[2] "The Commission's implementing rule states that no person or entity may '*initiate* any telephone call' to the specific recipients." 2015 FCC Order, p.19, ¶27; (fn. 94: 47 C.F.R. § 64.1200(a)(1)).

If "initiation" of calls is not actionable with respect to phone calls under section 227(b)(1)(A), as Wells Fargo would have this Court believe (Opp, p. 3), the FCC would not have dedicated an entire section entitled "**Maker of the Call**" to discuss the term "initiate" in regard to cell phone call and text violations under 227(b)(1)(A). The FCC has incontrovertibly held that "initiate" and "make" are interchangeable for section 227(b)(1)(A) purposes.

3.  *Wells Fargo's "Initiating" Calls Also Makes It the "Maker" of the Calls*

---

[2] 47 U.S.C. 227(b)(1): It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States— (A) to *make any call* (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice. (emphasis added).
*Compare* 47 C.F.R. § 64.1200(a): (a) No person or entity may: (1) Except as provided in paragraph (a)(2) of this section, *initiate any telephone call* (other than a call made for emergency purposes or is made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice. (emphasis added).

In the "**Maker of the Call**" Section of the 2015 FCC Order, the FCC continues its discussion; focusing on liability in close-call cases where it is unclear whether a third party is the maker and initiator of a call. While the FCC recognized that the term "make" has not been defined, it determined that "initiate" suggests a "'direct connection between a person or entity and the making of a call' can include 'tak[ing] the steps necessary to physically place a telephone call'" 2015 FCC Order, p.20, ¶30. "Thus we look to the totality of the facts and circumstances surrounding the placing of a particular call to determine: 1) who took the steps necessary to physically place the call; and 2) whether another person or entity was so involved in placing the call as to be deemed to have initiated it, considering the goals and purposes of the TCPA." *Id.*

In applying these rules, Wells Fargo admitted to both initiating and making all of the calls. MSJ at p.4; Statement of Facts ¶¶ 9, 10, 13. The undisputed facts further show that there is no other person or entity involved that could possibly remove Wells Fargo from being both the initiator and the maker of the calls who took "the steps necessary to physically place" the calls to Plaintiff's phones.[3] The stipulated facts are that Wells Fargo alone made/initiated the calls at issue and therefore there is a "direct connection between [Wells Fargo] and the making of the call" that triggers liability under section 227(b)(1)(A).

### 4. The Number of Calls Wells Fargo Made/Initiated Are Not In Dispute

As stated *supra*, Wells Fargo's "initiating" is the same as "making" the calls at issue for section 227(b)(1)(A) purposes. *See* 2015 FCC Order, p.19, ¶27. Plaintiff has further provided undisputable evidence that Defendant made/initiated these calls in her Motion for Summary Judgment. MSJ at p.4; Statement of Facts ¶¶9, 10, 13. If, for whatever reason, there is any question whether Defendant made all of these calls and Plaintiff received them on her phones ending in 4589 and 6128 ("Plaintiff's phones"), Defendant has submitted to this court further undisputed evidence in support of its own Motion for Summary Judgment. See Dkt. 44 No. #8.

In addition to the Joint Stipulation corresponding to Statement of Facts ¶¶9, 10, and 13, Defendant has submitted into evidence a call log sheet that documents each and every call Wells

---

[3] This also flies in the face of Defendant's argument that Plaintiff somehow "made" the calls to herself by the sole act of buying phones. Plaintiff did not have a direct connection with making the calls nor did she take steps necessary to physically place the calls. Wells Fargo did.

Fargo made to Plaintiff's phones, with dates, answered and unanswered. See Dkt. 44 Nos. 1, 8; WF SF ¶13 ("Plaintiff tracks the incoming calls to her 35 plus cell phones on a call log sheet. *See* Stoops Depo. at p. 150:7-14; Ex. E to Gupta Decl."). This log sheet that Defendant introduced into evidence, which Plaintiff did not dispute, is consistent with the Statement of Facts ¶¶9, 10, and 13 of the Joint Stipulation of Facts. There is no doubt that Wells Fargo initiated, made, and placed all of the at least eighty-five (85) telephone calls to Plaintiff's phones in violation of section 227(b)(1)(A) as set forth in Plaintiff's MSJ, and Defendant has stipulated to and introduced into evidence documents that support these facts on its own accord.

**B.     Defendant Has Not And Cannot Established Its Burden Of Proof That It Acquired Plaintiff's Prior Express Consent To Call Plaintiff**

The FCC stated:

> "Any telephone subscriber who releases his or her telephone number has, in effect, given prior express consent to be called by the entity to which the number was released… persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary."

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 7 F.C .C.R. 8752, 8768 ¶¶ 30–31, 1992 WL 690928 (Oct. 16, 1992).

The FCC has further determined that "if any question arises as to whether prior express consent was provided by a call recipient, the burden is on the caller [Wells Fargo] to prove that it obtained the necessary prior express consent." 2015 FCC Order p. 30, ¶47. Wells Fargo has not introduced any evidence that Plaintiff released her number to or had any contact at all with Wells Fargo prior to Wells Fargo's placement of those calls. Wells Fargo has not and will not be able to prove that it obtained Plaintiff's prior express consent to call her.

Wells Fargo argues in its Opposition that there are triable issues as to whether it "made" calls *after* Plaintiff revoked her consent. Opp, p. 10. But Wells Fargo never had Plaintiff's prior express consent. While Plaintiff told Wells Fargo to stop calling her phones there was never consent for Plaintiff to revoke. Therefore, there is no triable issue of fact as to consent or whether Defendant made calls after a revocation of consent that Defendant never acquired.

**C.     The FCC Explained There Are No Affirmative Bad-Faith Defenses To 47 U.S.C. Section 227; Bad Faith Defenses Of Assumption of Risk and *Volenti Non Fit Injuria* Do Not Apply To The TCPA**

Wells Fargo asks, under the guise of assumption of risk and *volenti non fit injuria*, for the same relief as petitioner Rubio's to which the FCC declined to provide in its 2015 Order:

> Rubio's first argues that that the Commission should add '*an affirmative, bad-faith defense that vitiates liability upon a showing that the called party purposefully and unreasonably waited to notify the calling[ ]party of the reassignment in order [to] accrue statutory penalties.' We decline to do so*. Neither the TCPA nor our related rules place any affirmative obligation on the user of a wireless number to inform all potential callers when that number is relinquished or reassigned; uninvolved new users of reassigned numbers are not obligated under the TCPA or our rules to answer every call, nor are they required to contact each caller to opt out in order to stop further calls. (emphasis added)

2015 FCC Order, p. 51, ¶ 95 (emphasis added).

The FCC has explained that Plaintiff was not required to do anything to mitigate Wells Fargo's liability for its illegal calls.  Moreover, the FCC declined to recognize a defense that would impose a duty on consumers, like Plaintiff, that choose not to notify Wells Fargo of its illegal calls, even for the very purpose of accruing statutory penalties.  The FCC has thus stated there is no affirmative bad-faith defense regarding consumers' conduct under the TCPA that goes to the intent of the called party.  Plaintiff's intent is irrelevant to this lawsuit.

Wells Fargo's efforts to directly or indirectly circumvent the FCC's express guidance regarding bad-faith defenses cannot succeed under the Hobbs Act. *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F. 3d 1110, 1120 (11th Cir. 2014). The jurisdiction to challenge FCC rulings lies exclusively with the courts of appeals. *Id.* The *Mais* court further explains "*where the practical effect of a successful attack on the enforcement of an order involves a determination of its validity, the statutory procedure for review provided by Congress remains applicable.*" (emphasis added) *Id.* (citing *Nack v. Walburg*, 715 F.3d 680, 686 (8th Cir.2013) (*quoting Sw. Bell Tel. v. Ark. Pub. Serv. Comm'n*, 738 F.2d 901, 906 (8th Cir.1984).

Wells Fargo asks this Court for a ruling that would clearly have the practical effect of contradicting the FCC Order on wrong number calls because Plaintiff had no ability to "cause" Wells Fargo to violate the law. Plaintiff's only potential bad-faith conduct could have occurred,

if at all, *after* the calls began, bringing it squarely within the Rubio's discussion where the FCC declined to establish a bad-faith defense imposing a duty to mitigate damages upon the recipient of a wrong number call generated by an ATDS. Wells Fargo's attempt to invoke Plaintiff's intent as the basis for its affirmative defenses contradicts the 2015 FCC Order. "Because the TCPA is a remedial statute, it should be construed to benefit consumers." *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013). Therefore, Wells Fargo's attempts to circumvent the FCC's authority must fail whether brought directly or indirectly or by practical effect.

Even if these bad-faith defenses were not abrogated by the TCPA, they still would not apply here, as discussed extensively in Plaintiff's Opposition to Wells Fargo's Motion for Summary Judgment. *See* Plaintiff's Opposition, Dkt. #54; Plaintiff's Sur-Reply, Dkt. #64.

## D. Plaintiff Is Within the Zone Of Interest Protected By The TCPA

Wells Fargo's argument that Plaintiff lacks standing is based on the presumption that Plaintiff "caused" her own harm. Opp, p. 14-16. Defendant also argues that Plaintiff lacks an individualized privacy interest which is the zone protected by the TCPA. *Id.* Testers of statutory violations have repeatedly been found to have standing and the TCPA is no different.[4] The Supreme Court in *Havens Realty* explained "'the actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing' *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373, 102 S. Ct. 1114, 1121 (1982). In *Watts v. Boyd Properties*, 758 F.2d 1482 (11th Cir. 1985), the Court extended *Havens Realty*, concluding that "even if a tester is motivated solely by the desire to challenge the legality of allegedly discriminatory practices, this is sufficient purpose to confer standing." *Watts*, 758 F.2d at 1485.

---

[4] *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 102 S. Ct. 1114 (1982); *Bennett v. Spear*, 520 U.S. 154, 117 S. Ct. 1154 (1997); *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 93 S. Ct. 364 (1972); *Watts v. Boyd Properties*, 758 F.2d 1482 (11th Cir. 1985); *Houston v. Marod Supermarkets, Inc.* 733 F.3d 1323 (11th Cir. 2013); *Bais Yaakov of Spring Valley v. ACT*, Inc., 2015 U.S. App. LEXIS 14718, *7 (1st Cir. Aug. 21, 2015); *Lary v. Trinity Phys. Fin. & Ins. Servs.*, 780 F.3d 1101, 1105 (11th Cir. 2015); *Charvat v. Echostar Satellite, LLC*, 630 F.3d 459 (6th Cir. 2010); *Fitzhenry v. ADT Corporation*, 2014 U.S. Dist. LEXIS 166243 (S.D. Fla. Nov. 3, 2014); *Telephone Science Corporation v. Trading Advantage LLC*, Case No. 1:14-cv-04369 (N.D. Ill., Feb. 17, 2015).

Plaintiff similarly challenges the legality of Wells Fargo's robocalls under the TCPA, which is a sufficient purpose to confer standing.

Wells Fargo argues that this case is different because Plaintiff lacks an individualized privacy interest; unlike "everyman" with an environmental interest (*Bennet v. Spear*, 520 U.S. 154 (1997)) or a person who is a member of a minority group in *Havens* or *Watts*. Opposition p. 14. This is manifestly untrue. Much like everyman in *Bennet*, Plaintiff does not inexplicably lose her privacy interest because she challenges Wells Fargo's unlawful practices. Like the "everyman" who has an interest in the environment or a member of a minority group who has an interest in discriminatory practices, Plaintiff has an irrefutable interest in her own privacy whether she sues under the TCPA or whether she did not feel like Wells Fargo invaded her privacy when it called her initially and when it persisted in calling her after she instructed Wells Fargo's employees to cease calling.[5]

Defendant cites *Leyse v. Bank of Am. Nati. Ass'n*, where the court found that Congress' repeated references to privacy indicates that a mere houseguest or visitor who picks up a phone would likely fall outside the protected zone of interests, while a regular user of the phone line who occupies the residence being called undoubtedly has the sort of interest in privacy, peace, and quiet that Congress intended to protect. *Leyse v. Bank of Am. Nati. Ass'n*, 804 F.3d 316, 326 (3d Cir. 2015). This passage suggests that the regular user of a phone always has a reasonable expectation of privacy regardless of the user's mental state. The *Leyse* court also suggests that mental state becomes relevant only when analyzing the privacy expectations of other non-regular users of the phone such as roommates, spouses, children, and so forth. *Id.* Because Plaintiff was the sole account holder, sole owner, and the only user of the phones when she received calls from Wells Fargo, she was indisputably the "regular user" of the phones. Therefore under *Leyse*, her mental state is irrelevant. Plaintiff has an expectation of privacy and a privacy interest in the phones she alone owns, which squarely places her in the zone of interest.

---

[5] Because the ESA "encourage[s] enforcement by so called 'private attorneys general'" and does not require potential plaintiffs to be environmentalists seeking to protect wildlife, standing is "expanded to the full extent permitted by Article III." *Bennet v. Spear*, 520 U.S. at 165-66.

This assessment is consistent with the logic in *Rubio's* of there being no good-faith exception nor bad-faith defense in TCPA actions, and the FCC's position against placing any burden on consumers, such that the zone of interests of the statute extends to anyone not providing the requisite consent regardless of their state of mind or intent.[6] *See* 2015 FCC Order, p. 51, ¶ 95, p. 30, ¶47. As the *Gager* court recognized, "[b]ecause the TCPA is a remedial statute, it should be construed to benefit consumers." *Gager*, 727 F.3d at 271 (3d Cir. 2013).

Despite Defendant's constant emphasis in nearly every legal argument in opposition, Plaintiff did not "cause" her own harm. Plaintiff bought pre-paid phones and Wells Fargo unlawfully called them. As the court in *Procaps* stated:

> "[N]ot every infirmity in the causal chain deprives a plaintiff of [Article III] standing." *St. Pierre v. Dyer, 208 F.3d 394*, 402 (2d Cir. 2000). And"[t]he mere fact that the [plaintiff's] own decisions played a role in its [injury] does not obviate the causal connection between the defendants' conduct and the plaintiff's injury." [*Gulf States Reorganization Grp., Inc. v. Nucor Corp.*, 466 F.3d 961, 965 (11th Cir. 2006)]. ***Rather, an injury is self-inflicted only if it is so "completely due to the [complainant's] own fault as to break the causal chain." Petro-Chem Processing, Inc. v. E.P.A.*, 866 F.2d 433, 438, 275 U.S. App. D.C. 232 (D.C. Cir. 1989)(Ginsburg, J.) (citing 13A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure: Jurisdiction § 3531.5 (3d ed.)) (emphasis added).

*Procaps*, 2014 U.S. Dist. LEXIS 10874, at *17-20.

Wells Fargo's decision to place illegal robocalls to Plaintiff's telephone was a purposeful and voluntary choice for which Wells Fargo alone is responsible. If Wells Fargo had not placed those robocalls there would have been no violation of the TCPA. Plaintiff did not and could not cause Wells Fargo to first fail to enact any compliance measures to prevent it from making unlawful calls and then to continuously make those calls.

## F.    Plaintiff Has Article III Standing

Wells Fargo argues that Plaintiff "cannot manufacture standing by choosing to make expenditures based on hypothetical future harm that is not certainly impending" citing *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1151, 1155 (2013). Opp, p. 16. This discussion is related to

---

[6] The FCC's rejection of the *Rubio's* petition shows that the zone of interest not only extends to Plaintiff, but also that Plaintiff's conduct at no point removed her from the zone of interest from that of a "regular user" as discussed by the court in in *Leyse*.

respondents who "assert they are suffering ongoing injuries that are fairly traceable [to the statute] because the risk of surveillance under [the statute] requires them to take costly and burdensome measures to protect the confidentiality of their communications." *Id.* The Supreme Court concluded that ***"[a]ny ongoing injuries that respondents are suffering are not fairly traceable to [the statute]."*** (emphasis added) *Id.* The situation is different here because Wells Fargo's illegal robocalls in violation of the TCPA are directly traceable to minutes deducted from Plaintiff's phone. MSJ, p. 3. This is not injury based on a hypothetical future harm but is a cognizable injury-in-fact. *See Lathrop v. Uber Techs., Inc.*, 2016 WL 97511, at *4 (N.D. Cal. Jan. 8, 2016). Defendant similarly argues that standing cannot be created by "inflicting harm on themselves." *In re Horizon Healthcare Servs., Inc. Data Breach Litig.*, No. CIV.A. 13-7418 CCC, 2015 WL 1472483, at fn. 5 (D.N.J. Mar. 31, 2015). Plaintiff did not self-inflict her injury. Plaintiff bought a pre-paid phone, did nothing more, and Wells Fargo unlawfully called it.

The undisputed facts show that Plaintiff suffered injury-in-fact, she is the sole account holder and user of the phones to which she holds an objective expectation of privacy, as discussed in *Leyse*, and she holds a privacy interest regardless of her mental state. There are no triable issues of fact as to Plaintiff being in the zone of interest and her Article III standing.

### III. CONCLUSION

Wells Fargo's attempts at character assassination, semantic sleight of hand, and to shift blame to evade fault, for which it is solely responsible, do not raise any triable issues of fact. For the foregoing reasons, Plaintiff Melody Stoops respectfully requests that Plaintiff's Summary Judgment be granted in its entirety.

By: */s/ Joseph R. Manning, Jr.*
Joseph R. Manning, Jr.

Glenn C. Romano
Glenn C. Romano, P.C
3830 Lukens Lane
Hatboro, PA 19040
Telephone: 215-323-4949

Joseph Richard Manning , Jr., *pro hac vice*
The Law Offices of
Joseph R. Manning, Jr., APC
4667 MacArthur Blvd., Suite 150
Newport Beach, CA 92660
Telephone: 949-200-8755

Attorneys for Plaintiff
MELODY STOOPS