### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MELODY STOOPS,                           )
                                         )        CIVIL ACTION NO. 3:15-83
                        Plaintiff,       )
                                         )        JUDGE KIM R. GIBSON
        v.                               )
                                         )
WELLS FARGO BANK, N.A.,                  )
                                         )
                                         )
                        Defendant.       )


## MEMORANDUM OPINION AND ORDER

### I.      Introduction

This matter comes before the Court upon cross-motions for summary judgment filed by

Defendant Wells Fargo Bank, N.A. (ECF No. 44) and Plaintiff Melody Stoops (ECF No. 56).

These matters have been fully briefed (*see* ECF Nos. 44, 54, 55, 56, 61, 64, 65, 67, 68, 70, 76, 77)

and are ripe for disposition.  For the reasons that follow, Defendant's motion for summary

judgment will be **GRANTED**, and Plaintiff's motion for summary judgment will be **DENIED**.


### II.     Jurisdiction and Venue

The Court has jurisdiction over the instant action pursuant to 28 U.S.C. § 1331.  Venue is

proper under 28 U.S.C. § 1391.


### III.    Background

The following facts are not in dispute.  In June 2014, Plaintiff bought and activated pre-

paid cell phones that were serviced by Tracfone Wireless ("Tracfone").  (ECF Nos. 56-1 ¶ 1; 65-1

¶ 1.)  To activate the cell phones, Plaintiff provided Tracfone with the last four digits of each cell

phone's serial number and a zip code of her choosing.  (ECF Nos. 56-1 ¶ 2; 65-1 ¶ 2.)  Plaintiff selected Florida zip codes, and Tracfone assigned telephone numbers for each cell phone.  (ECF Nos. 56-1 ¶¶ 3-4; 65-1 ¶¶ 3-4.)  Despite residing in Pennsylvania, Plaintiff selected locations in Florida that she knew to be economically depressed "'because there is a depression in Florida,'" where "'people would be usually defaulting on their loans or their credit cards,'" and because it is the location with which "'[she] is most familiar.'"  (ECF Nos. 44-1 ¶¶ 8-9 (quoting ECF No. 44-4 at 16); 54-1 ¶¶ 8-9 (quoting ECF No. 54-7 at 35-36).)

Plaintiff has purchased at least thirty-five cell phones and cell phone numbers with prepaid minutes for the purpose of filing lawsuits under the Telephone Consumer Protection Act ("TCPA").  (See ECF Nos. 44-1 ¶¶ 3-4, 7; 54-1 ¶¶ 3-4, 7.)  Plaintiff added minutes to her cell phones by buying "airtime cards" for $19.99 so that the cell phones would receive more calls.  (See ECF Nos. 44-1 ¶¶ 10-11; 54-1 ¶¶ 10-11; 56-1 ¶¶ 15-16; 65-1 ¶¶ 15-16.)  She was not reimbursed for the purchase of the cell phones or for adding minutes to the cell phones.  (ECF Nos. 56-1 ¶ 17; 65-1 ¶ 17.)

After purchasing and charging the cell phones, Plaintiff waited for them to ring and sometimes answered the calls to identify the caller.  (ECF Nos. 44-1 ¶ 12; 54-1 ¶ 12.)  Plaintiff tracks the incoming calls to her cell phones on a call log sheet.  (ECF Nos. 44-1 ¶ 13; 54-1 ¶ 13.)  She carries her cell phones with her when she travels so that she can continue to record the incoming calls.  (ECF Nos. 44-1 ¶ 14; 54-1 ¶ 14.)  Although Plaintiff occasionally informed the caller to stop calling, she intended for the calls to continue because she "'was hopefully going to ask [her] lawyers to do trebling with knowing and willful'" violations of the TCPA if they did.

(ECF Nos. 44-1 ¶¶ 15-16 (quoting ECF No. 44-4 at 23); 54-1 ¶¶ 12, 15-16.)  Plaintiff has filed at least eleven TCPA cases in this jurisdiction, although she "[does not] know how many," and has sent at least twenty pre-litigation demand letters, although she "[does not] know" how many. (ECF Nos. 44-1 ¶ 18 (quoting ECF No. 44-4 at 5-6, 33-34); 54-1 ¶ 18.)  Plaintiff's sister, Taisha Campbell, has also filed TCPA lawsuits of her own.  (ECF Nos. 44-1 ¶ 27; 54-1 ¶ 27.)

In 2014, Plaintiff bought two cell phones that were assigned (863) XXX-6128 and (305) XXX-4589 as telephone numbers.  (ECF Nos. 44-1 ¶ 20; 54-1 ¶ 20.)  Plaintiff selected these area codes because she was familiar with the areas and because she believed that the areas were economically depressed.  (ECF Nos. 44-1 ¶ 21; 54-1 ¶ 21.)  Defendant had two delinquent customers in area codes 863 and 305 who had owned the telephone numbers prior to Plaintiff and consented to receiving auto-dialed calls or calls with a prerecorded voice.  (ECF Nos. 44-1 ¶ 22; 54-1 ¶ 22.)

On October 21, 2014, Defendant's agent, Yolanda Watson, spoke with Plaintiff.  (ECF Nos. 56-1 ¶ 6; 65-1 ¶ 6.)  On October 23, 2014, Defendant's agent, Mariam Aziz, spoke to Plaintiff.  (ECF Nos. 56-1 ¶ 7; 65-1 ¶ 7.)  Between September 15, 2014, and November 20, 2014, Defendant initiated seventy-three telephone calls to the telephone number (863) XXX-6128, and nineteen of these calls resulted in successful communication.  (ECF Nos. 56-1 ¶ 9; 65-1 ¶ 9.)  Collectors in Defendant's home mortgage group dialed the telephone number in an effort to reach customers with the last name of "Newman."  (ECF Nos. 56-1 ¶ 11; 65-1 ¶ 11.)  Between September 23, 2014, and November 13, 2014, Defendant initiated twelve telephone calls to the telephone number (305) XXX-4589, and five of these calls resulted in successful communication.

(ECF Nos. 56-1 ¶ 10; 65-1 ¶ 10.)  Defendant's collectors dialed the telephone number in an effort to reach customers with the last name of "Pereira."  (ECF Nos. 56-1 ¶ 12; 65-1 ¶ 12.)  Plaintiff did not provide Defendant with either of these telephone numbers and did not inform Defendant that it could call her at the telephone numbers.  (ECF Nos. 56-1 ¶¶ 18-19; 65-1 ¶¶ 18-19.)  She does not know Defendant's previous customers who used the telephone numbers.  (ECF Nos. 56-1 ¶ 20; 65-1 ¶ 20.)  Defendant placed the calls to (863) XXX-6128 and (305) XXX-4589 in an attempt to reach its customers, not Plaintiff.  (ECF Nos. 44-1 ¶ 23; 54-1 ¶ 23.)

Plaintiff filed a complaint in the Court of Common Pleas of Cambria County on March 4, 2015.  (ECF No. 1-2.)  Defendant removed the matter to this Court on March 31, 2015, (*see* ECF No. 1), and filed an answer to the complaint (ECF No. 5).  Defendant filed a motion for summary judgment on December 10, 2015, (ECF No. 44), and Plaintiff filed a cross-motion for summary judgment on January 21, 2016, (ECF No. 56).  After the parties fully briefed their respective motions, the Court held oral argument on May 23, 2016, (ECF No. 78), and this matter is now ripe for disposition.

## IV.    Applicable Law

A grant of summary judgment is appropriate when the moving party establishes that "'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Heffernan v. City of Paterson*, 777 F.3d 147, 151 (3d Cir. 2015) (quoting FED. R. CIV. P. 56(a)).  A genuine issue of material fact is one that could affect the outcome of litigation.  *Mahoney v. McDonnell*, 616 Fed. Appx. 500, 504 (3d Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)).  However, "'[w]here the record taken as a whole could not lead a

rational trier of fact to find for the non-moving party, there is no genuine issue for trial.'"  *Id.*

(quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The initial burden is on the moving party to adduce evidence illustrating a lack of

genuine issues.  *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  Once the moving

party satisfies its burden, the non-moving party must present sufficient evidence of a genuine

issue, in rebuttal.  *Id.* (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 587).  When considering the

parties' arguments, the Court is required to view all facts and draw all inferences in the light

most favorable to the non-moving party.  *Id.* (citing *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777

(3d Cir. 1994)).  Further, the benefit of the doubt will be given to allegations of the non-moving

party when in conflict with the moving party's claims.  *Bialko v. Quaker Oats Co.*, 434 Fed. Appx.

139, 141 n.4 (3d Cir. 2011) (citing *Valhal Corp. v. Sullivan Assocs.*, 44 F.3d 195, 200 (3d Cir. 1995)).

Nonetheless, a well-supported motion for summary judgment will not be defeated

where the non-moving party merely reasserts factual allegations contained in the pleadings.  *Id.*

(citing *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989)).  The non-moving

party must resort to affidavits, depositions, admissions, and/or interrogatories to demonstrate

the existence of a genuine issue.  *Connection Training Servs. v. City of Philadelphia*, 358 Fed. Appx.

315, 318 (3d Cir. 2009) (citing *Celotex Corp.*, 477 U.S. at 324).

## V.      Discussion

### A.      Defendant's Motion for Summary Judgment

Defendant makes four arguments in support of its motion for summary judgment.  First,

Defendant argues that it did not "make any call" to Plaintiff because she manufactured the calls.

(ECF No. 44 at 12-14.)  Second, Defendant contends that Plaintiff consented to receive the calls. (*Id.* at 14-17.)  Third, Defendant asserts that Plaintiff's claim is barred by the doctrine of assumption of the risk.  (*Id.* at 17-20.)  Finally, Defendant contends that Plaintiff lacks Article III standing to assert her claim because she is not a member of the class that the TCPA was designed to protect and did not suffer the type of harm that the TCPA was designed to prevent. (*Id.* at 20-25.)  The Court will separately address each of Defendant's arguments.

### 1.    Defendant's Argument that It Did Not "Make Any Calls"

Defendant argues that summary judgment must be granted in its favor because Plaintiff manufactured the TCPA claim for which she has filed suit.  (*Id.* at 12-14.)  Specifically, Defendant states that the TCPA makes it unlawful "'to make any call'" to a cell phone using an automatic telephone dialing system ("ATDS").  (*Id.* at 12 (quoting 47 U.S.C. § 227(b)(1)(A)).)  Because Plaintiff "caused the calls to happen," "invited them," and "willed them into existence," Defendant asserts that she intentionally "made" the calls at issue.  (*Id.* at 12-14.)

In response, Plaintiff asserts that Defendant has stipulated that it "initiated/made" the telephone calls to cell phone numbers (863) XXX-6128 and (305) XXX-4589.  (ECF No. 54 at 15.) Plaintiff further argues that she did not "make" the calls because she "made no 'affirmative choice' that caused [Defendant] to call her number."  (*Id.* at 16.)  Specifically, Plaintiff states that her actions did not "effectively program" a dialer, "upload data" to Defendant, or "make" any calls.  (*Id.* at 16-17.)  Rather, Defendant called the cell phone numbers "without any influence, inducement, or any prior contact whatsoever from Plaintiff."  (*Id.* at 17.)  In reply, Defendant

reiterates that Plaintiff "caused the calls to exist for TCPA purposes" because she took "crucial steps" to incite the phone calls.  (ECF No. 61 at 12.)

In a joint stipulation of facts, filed by the parties on November 24, 2015, Defendant "agree[d] and stipulate[d] that all of the telephone calls [it] initiated/made to cell phone numbers (305) XXX-4589 and (863) XXX-6128 . . . were made with an [ATDS] as defined under the [TCPA]."  (ECF No. 44-9 ¶ 1.)  In an attempt to explain away its stipulation, Defendant claims that it has only admitted that "calls existed" and that "[t]he fact that the calls were placed does not answer the question of who 'made' the calls."  (ECF No. 61 at 12.)  Defendant further asserts that "[t]he point of that stipulation was to alleviate the need for discovery on the use of regulated technology; it was not intended to — and did not on its face — stipulate away the foundational issue that Plaintiff 'made' the calls in the first place."  (*Id.*)

The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any [ATDS] or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service[.]"  47 U.S.C. § 227(b)(1)(A)(iii).  Defendant stipulated that it "initiated/made" telephone calls to cell phone numbers (305) XXX-4589 and (863) XXX-6128.  (ECF No. 44-9 ¶ 1.)  As Defendant acknowledged during oral argument on May 23, 2016, no court has addressed the difference between "initiate" and "make."  Moreover, Defendant concedes that the cases to which it cited in support of its argument that Plaintiff "made" the calls "are not a perfect fit" because they involve third parties inciting phone calls.  (ECF No. 61 at 12.)  Indeed, the legal authority to which Defendant has cited — *McKenna v. WhisperText*, No. 5:14-CV-424, 2015 U.S.

Dist. LEXIS 120090 (N.D. Cal. Sept. 9, 2015), and *Huricks v. Shopkick, Inc.*, No. C-14-2464, 2015

U.S. Dist. LEXIS 112596 (N.D. Cal. Aug. 24, 2015) — is factually inapplicable to the instant

matter and is not binding upon the Court.  (*See* ECF No. 44 at 13.)  In *McKenna*, the court

concluded that the defendant was not the maker or initiator of calls using an ATDS because the

application "sends text invitations only at the user's affirmative direction."  2015 U.S. Dist.

LEXIS 120090, at *9, 14.  Similarly, in *Huricks*, the court found that the defendant had not

violated the TCPA because the user was required to take affirmative steps to cause the

invitational text messages to be sent.  2015 U.S. Dist. LEXIS 112596, at *10-11.  The cases to

which Defendant cites from the July 10, 2015, declaratory ruling and order of the Federal

Communications Commission ("FCC") also relate to users making "affirmative choices," such

as inviting friends to install an application and programming a cloud-based dialer, before

receiving calls.  *See In re Rules Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961,

7986, 7982-84 (F.C.C. July 10, 2015).  Here, Plaintiff did not make an "affirmative" choice to

cause Defendant to call the telephone numbers by tapping buttons or by uploading data.  *See*

*McKenna*, 2015 U.S. Dist. LEXIS 120090, at *14-15.  Accordingly, having concluded that

Defendant's argument that Plaintiff "made" the calls is not persuasive, the Court cannot grant

Defendant's motion for summary judgment on this basis.

## 2.      Defendant's Argument that Plaintiff Consented to Receive the Calls

Defendant argues that Plaintiff consented to receiving the calls because she

"gratuitously created circumstances that would support a legal claim."  (ECF No. 44 at 14

(internal quotations omitted).)   Specifically, Defendant asserts that Plaintiff intentionally

solicited the harm from which she claims to suffer. (*Id.* at 16.) Defendant also argues that Plaintiff expressly consented to receiving the calls because she testified that she was "'okay with'" her cell phones ringing from calls from creditors. (*Id.* at 17 (quoting ECF No. 44-4 at 25).)

In response, Plaintiff asserts that Defendant has failed to demonstrate that it obtained her consent before placing the calls. (ECF No. 54 at 17-18.) Plaintiff notes that Defendant was attempting to reach its customers, not her, when it placed the calls. (*Id.* at 18.) She further states that Defendant had constructive knowledge that the telephone numbers of its customers had been reassigned. (*Id.*) In reply, Defendant argues that Plaintiff's affirmative conduct was "designed to create the calls" and therefore constitutes her express consent. (ECF No. 61 at 14.) In her sur-reply, Plaintiff contends that Defendant has failed to establish that she released her number to it or had any contact with it prior to Defendant's placement of the calls. (ECF No. 64 at 4.)

It is well settled that when a defendant invokes the affirmative defense of express consent, the defendant "bears the burden of establishing that [it] applies." *Daubert v. NRA Group, LLC*, No. 3:15-CV-718, 2016 U.S. Dist. LEXIS 69630, at *51 (M.D. Pa. May 27, 2016). "The FCC has 'conclude[d] that the creditor should be responsible for demonstrating that the consumer provided express consent' because the creditor is 'in the best position to have records kept in the usual course of business showing such consent, such as purchase agreements, sales slips, and credit applications.'" *Id.* (quoting *In re Rules Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd. 559, 565 (F.C.C. Jan. 4, 2008)).

9

Defendant has failed to meet its burden of establishing that Plaintiff expressly consented to receiving the calls. "Prior express consent is deemed to be granted only if the wireless number is provided by the consumer to the creditor, and the number was provided during the transaction that resulted in the debt owed." *Wattie-Bey v. Stephen & Michaels Assocs.*, No. 1:13-CV-396, 2014 U.S. Dist. LEXIS 4463, at *7 (M.D. Pa. Jan. 14, 2014) (denying the plaintiff's motion for summary judgment because there was evidence that he provided the number when applying for a T-Mobile account and therefore consented to contact about any debt in connection with that account). Because Defendant has not produced any evidence that Plaintiff provided the cell phone numbers to it, the Court cannot conclude that she expressly consented to receiving the calls. *See, e.g., Stuart v. AR Res., Inc.*, No. 10-CV-3520, 2011 U.S. Dist. LEXIS 27025, at *18 (E.D. Pa. Mar. 15, 2011) (permitting the plaintiff's TCPA claim to proceed because she maintained that she was not the debtor and therefore did not consent to receiving the calls).

While the Court recognizes that the facts presented in this matter are unique, the cases upon which Defendant relies in support of its argument that Plaintiff consented to receiving the calls — *Beyond Systems, Inc. v. Kraft Foods, Inc.*, 777 F.3d 712 (4th Cir. 2015), and *Ryabyshchuck v. Citibank N.A.*, No. 11-CV-1236, 2012 U.S. Dist. LEXIS 156176 (S.D. Cal. Oct. 30, 2012) — are inapposite. First, the Fourth Circuit Court of Appeals in *Beyond Systems, Inc.* concluded that the plaintiff consented to the harm at issue because it: (1) created fake e-mail addresses, solely for the purpose of gathering spam; (2) embedded the addresses in websites so that they were undiscoverable except to computer programs; (3) increased its e-mail storage capacity; and (4) intentionally routed spam e-mails between California and Maryland to increase its exposure to

spam.  777 F.3d at 718.  Similarly, *Ryabyshchuck* is distinguishable because the plaintiff received one inactionable text message, responded with a one-word, opt-out request, and received a response confirming receipt of the opt-out request.   2012 U.S. Dist. LEXIS 156176, at *7. Although Defendant has correctly stated that consent "is nothing more than 'a willingness in fact for conduct to occur,'" (ECF No. 61 at 13 (quoting *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013)), it has failed to establish that Plaintiff expressly consented to receiving the calls.  *See*, *e.g.*, *Stuart*, 2011 U.S. Dist. LEXIS 27025, at *18; *see also Daubert*, 2016 U.S. Dist. LEXIS 69630, at *56 (explaining that although "express consent can be found even where the plaintiff did not directly provide consent to the defendant . . . it must be shown that the plaintiff had given express consent to someone at some point" and concluding that the defendant "has failed to adduce sufficient evidence to establish this"); *Paradise v. Commonwealth Fin. Sys.*, No. 3:13-CV-01, 2014 U.S. Dist. LEXIS 132814, at *6 (M.D. Pa. Sept. 22, 2014) (rejecting the defendant's argument that the plaintiff consented to receiving the calls because it had previously obtained consent from the debtor it was attempting to contact).   Accordingly, having concluded that Defendant has failed to satisfy its burden to demonstrate that Plaintiff consented to receiving the calls, the Court cannot grant Defendant's motion for summary judgment on this basis.

### 3.   Defendant's Argument that Plaintiff's Claim is Barred by the Doctrines of Assumption of the Risk and *Volenti non fit Injuria*

Defendant argues that the doctrine of assumption of the risk applies to actions filed under the TCPA because Pennsylvania law applies the doctrine to strict liability statutes and to negligence claims.  (ECF No. 44 at 18-19.)  Defendant contends that the doctrine is applicable to Plaintiff's action because she testified that she assumed the risk of receiving calls to her cell

phones and because Plaintiff bought the cell phones to receive calls from creditors.  (*Id.* at 19.) Defendant further asserts that Plaintiff's claim is barred by the principle of *volenti non fit injuria* because she consented to the harm from which she allegedly suffered.  (*Id.* at 15-16.)

In response, Plaintiff argues that the doctrine of assumption of the risk is inapplicable because federal substantive law, rather than Pennsylvania law, applies to the TCPA.  (ECF No. 54 at 19-21, 24-26.)  Plaintiff also asserts that the principle of *volenti non fit injuria* is inapplicable because she "[has] not done anything deceptive or conducted falsity."  (*Id.* at 22.)

In reply, Defendant argues that common law applies to federal statutes.  (ECF No. 61 at 15-16.)  In support of its argument, Defendant notes that other common law doctrines, such as the revocation of consent and vicarious liability, have been applied to the TCPA.  (*Id.* at 17-19.) Because the doctrines of assumption of the risk and *volenti non fit injuria* are well settled and because the TCPA does not directly abrogate the doctrines, Defendant contends that they are both applicable.  (*Id.* at 19-22.)  Defendant requests that summary judgment be granted in its favor because it has presented uncontested evidence that "Plaintiff invited her own harm" and sought out "a known or obvious danger" by intentionally purchasing the cell phones.  (*Id.* at 22-23 (internal quotations omitted).)  In her sur-reply, Plaintiff argues that her intent is irrelevant because bad-faith defenses are inapplicable to the TCPA.  (ECF No. 64 at 4-5, 7-9.)  She also asserts that the doctrines of assumption of the risk and *volenti non fit injuria* do not apply because Defendant's calls were not a known or obvious danger when she purchased the cell phones.  (*Id.* at 6-7.)

Initially, the Court finds that the affirmative defenses of assumption of the risk and *volenti non fit injuria* do not apply to the TCPA. Defendant is correct that courts have applied common law principles to the TCPA. *See, e.g., Gager*, 727 F.3d at 270 (finding that the common law principle of revocation applied because "[a]lthough the TCPA does not expressly grant a right of revocation to consumers who no longer wish to be contacted on their cellular phones by autodialing systems, the absence of an express statutory grant of this right does not mean that the right to revoke does not exist"); *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1084 (C.D. Cal. 2012) (holding that the common law principle of vicarious liability applied to the TCPA because "[a]bsent a clear expression of Congressional intent to apply another standard, the Court must presume that Congress intended to apply the traditional standards of vicarious liability with which it is presumed to be familiar").

However, courts have not yet addressed whether the common law affirmative defenses of assumption of the risk and *volenti non fit injuria* apply to the TCPA. The Court will therefore follow the FCC's July 10, 2015, rules and regulations implementing the TCPA. *See Morse v. Allied Interstate, LLC*, No. 3:13-CV-625, 2014 U.S. Dist. LEXIS 171178, at *13 (M.D. Pa. 2014) (holding that a district court may not disregard the FCC's final orders "simply because Congress did not specifically grant the FCC express authority to regulate a specific subsection of the TCPA"). *See also Leyse v. Clear Channel Broad., Inc.*, 545 F. App'x 444, 453 (6th Cir. 2013) ("In sum, the [TCPA] is replete with evidence that Congress intended the FCC to promulgate rules carrying the force of law that determine what kinds of prerecorded calls are permissible and what kinds are not."); *Sook v. Nielsen Co., LLC*, No. 8:15-CV-264, 2015 U.S. Dist. LEXIS 76362,

at *3 (M.D. Fla. June 12, 2015) (declining to determine "whether there is an affirmative, bad-faith defense that vitiates TCPA where the plaintiff acts (or fails to act) unreasonably or intentionally" and staying the case pending the FCC's rules and regulations); *Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508, 512 n.4 (E.D. Wis. 2014) ("The Court is bound by all of the FCC's final orders relating to the TCPA.").

In its July 10, 2015, rules and regulations implementing the TCPA, the FCC addressed Rubio's Restaurant, Inc.'s argument that the FCC "should add an affirmative, bad-faith defense that vitiates liability upon a showing that the called party purposefully and unreasonably waited to notify the calling[]party of the reassignment in order [to] accrue statutory penalties." *In re Rules Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. at 8011 (internal quotations omitted).  The FCC rejected Rubio's Restaurant, Inc.'s request, explaining that "[n]either the TCPA nor our related rules place any affirmative obligation on the user of a wireless number to inform all potential callers when that number is relinquished or reassigned" and that "uninvolved new users of reassigned numbers are not obligated under the TCPA or our rules to answer every call, nor are they required to contact each caller to opt out in order to stop further calls." *Id.*; *see also id.* at 8091 ("In fact, the order expressly rejects a bad faith defense against call and text message recipients that intentionally deceive the caller or sender in order to induce more liability.") (O'Rielly, M., dissenting in part and approving in part).  Thus, in accordance with the FCC's rules and regulations implementing the TCPA, the Court cannot conclude that the common law affirmative defenses of assumption of the risk and *volenti non fit injuria* are applicable to the TCPA.

14

Even if, assuming arguendo, the common law affirmative defenses of assumption of the risk and *volenti non fit injuria* applied to the TCPA, Defendant would still not be entitled to summary judgment.  Assumption of the risk is an affirmative defense under the Restatement (Second) of Torts.  *Reott v. Asia Trend, Inc.*, 55 A.3d 1088, 1095 (Pa. 2012).  It is only relevant "'where there would otherwise be a breach of some duty owed by the defendant to the plaintiff. It is then a defense, which relieves the defendant of the liability to which he would otherwise be subject.  The burden of proof is therefore upon the defendant.'"  *Id.* at 1096 (quoting RESTATEMENT (SECOND) OF TORTS § 496G cmt. c).  To meet the burden of proof, "the defendant must produce evidence that the plaintiff fully understood the specific risk, and yet voluntarily chose to encounter it."  *Childers v. Power Line Equip. Rentals*, 681 A.2d 201, 208 (Pa. Super. Ct. 1996) (internal quotations omitted).  "Voluntary assumption of the risk involves a subjective awareness of the risk inherent in an activity and a willingness to accept it.  A plaintiff has voluntarily assumed the risk where he fully understands it and voluntarily chooses to encounter it."  *Id.* (internal quotations omitted).

In support of its argument that Plaintiff assumed the risk of receiving calls, Defendant cites to Plaintiff's deposition testimony wherein she responded affirmatively to the question, "So are you -- you're assuming the risk that these phones will ring.  Is that correct?"  (ECF No. 44 at 19 (citing ECF No. 44-4 at 25)).)  Defendant asserts that it should be granted summary judgment "on this admission alone."  (*Id.*)  However, Plaintiff's counsel objected to Defendant's question as a legal conclusion.  (ECF No. 44-4 at 25.)  The Court cannot grant summary judgment to Defendant on the basis of a question that elicited a legal conclusion.  *See, e.g.,*

*Cordance Corp. v. Amazon*, 631 F. Supp. 2d 477, 483-84 (D. Del. 2009) (explaining that "conclusions on what [the plaintiff] asserts as legal principles are not within [the witness's] particularized knowledge he has by virtue of his position in the Internet technology industry"); *Borough of Lansdale v. PP&L, Inc.*, 426 F. Supp. 2d 264, 306 (E.D. Pa. 2006) (finding that the witness's answers in a deposition were "unsubstantiated legal conclusions [that] are not sufficiently probative to enable the plaintiffs to defeat summary judgment").

Moreover, it is well settled that "[a]ssumption of the risk requires a factual analysis of the plaintiff's subjective understanding of the risks involved." *McKenzie v. Dematic Corp.*, No. 3:12-CV-250, 2015 U.S. Dist. LEXIS 81166, at *9 (W.D. Pa. June 18, 2015). Therefore, "[t]he question of assumption of the risk typically remains for the jury, and it is only where the evidence reveals a scenario so clear as to void all questions of material fact concerning the plaintiff's own conduct that the court can enter summary judgment." *Id.* Defendant's argument that "[t]he sole purpose of purchasing so many phones with recycled phone numbers was to receive as many calls from creditors as possible and bring TCPA lawsuits" is insufficient. (ECF No. 44 at 19.) Defendant has therefore failed to meet its burden of proof required to establish its affirmative defense of assumption of the risk.

Similarly, Defendant has failed to meet its burden of proof required to establish its affirmative defense of *volenti non fit injuria*. The affirmative defense of *volenti non fit injuria* means "he who consents cannot receive an injury." *Schelin v. Goldberg*, 146 A.2d 648, 651 (Pa. Super. Ct. 1958); *see also Smith v. Piper Aircraft Corp.*, 18 F.R.D. 169, 178 (M.D. Pa. 1955) (explaining that the affirmative defense of *volenti non fit injuria* is applicable when "in a legal

sense, [the plaintiff] consented to the injuries suffered") (internal quotations omitted).  Thus,

"[b]efore the maxim, *volenti non fit injuria*, can be invoked, it must be shown that the plaintiff

not only knew, or had full opportunity to know, the circumstances, but that he appreciated, or

should have appreciated, the extent of the danger, and that he voluntarily exposed himself to

it."  *Madden v. Lehigh Valley R.R. Co.*, 84 A. 672, 673 (Pa. 1912).  As discussed in detail above,

Defendant has failed to satisfy its burden to demonstrate that Plaintiff consented to receiving

the calls.  *See supra* Part V.A.2.  Accordingly, even if the common law affirmative defenses of

assumption of the risk and *volenti non fit injuria* applied to the TCPA, Defendant would still not

be entitled to summary judgment.

### 4.      Defendant's Argument that Plaintiff Lacks Standing

Defendant argues that Plaintiff lacks standing because she is not a member of the class

of persons that the TCPA was designed to protect and because she did not suffer the type of

harm that the TCPA was designed to prevent.  (ECF No. 44 at 20.)  Specifically, Defendant

asserts that the TCPA was enacted to protect consumers from unwanted, intrusive telephone

calls.  (*Id.* at 21-22.)  Because Plaintiff's only use of her cell phones is to receive calls from

creditors "to turn a profit," Defendant argues that she waived the privacy interests that the

TCPA protects.  (*Id.* at 22-24.)  Defendant further contends that Plaintiff cannot establish an

injury-in-fact because "[h]er entire purported injury is premised upon a bare statutory violation

for which she seeks statutory damages."  (*Id.* at 24.)

In response, Plaintiff argues that Congress "has empowered individuals and entities to

act as private attorneys general to pursue claims for well defined statutory damages."  (ECF No.

54 at 27 (internal quotations omitted).)  She therefore asserts that "[i]t does not matter whether a plaintiff actively seeks out opportunities to bring TCPA claims or is motivated by the significant damage awards available under the TCPA."  (*Id.* at 28.)  Plaintiff contends that she suffered an injury-in-fact because she bought the cell phones and added minutes to them.  (*Id.* at 29.)

In its reply, Defendant argues that Plaintiff does not have prudential standing because she is not within the zone of interest that is protected by the TCPA.  (ECF No. 61 at 27.) Specifically, Defendant asserts that the zone of interest protected by the TCPA is personal privacy.  (*Id.* at 28.)  Because Plaintiff "collect[ed] a shoe box full of cell phones to fish for accidental wrong number calls," Defendant contends that her personal privacy was not invaded.  (*Id.*)  Defendant further argues that Plaintiff lacks Article III standing because she has not suffered an injury-in-fact.  (*Id.* at 29-30.)  In her sur-reply, Plaintiff claims that she is within the zone of interest that is protected by the TCPA because she "has an irrefutable interest in her own privacy."  (ECF No. 64 at 10.)  She further argues that she did not cause her own harm because she did not cause Defendant to make the phone calls.  (*Id.*)  She asserts that she has suffered an injury-in-fact because minutes were deducted from her cell phones as a result of Defendant's calls.  (*Id.* at 11.)

There are three types of standing:  statutory, constitutional, and prudential.  "Statutory standing is simply statutory interpretation:  the question it asks is whether Congress has accorded *this* injured plaintiff the right to sue the defendant to redress his injury."  *Graden v. Conexant Sys. Inc.*, 496 F.3d 291, 295 (3d Cir. 2007) (emphasis in original).  "Constitutional and prudential standing are about, respectively, the constitutional power of a federal court to

resolve a dispute and the wisdom of so doing." *Id.*  The parties do not dispute that Plaintiff has statutory standing under the TCPA.  (*See* ECF No. 61 at 27.)  The Court will separately address constitutional and prudential standing.

a.       **Constitutional Standing**

Under Article III, constitutional standing requires a plaintiff to show that:  (1) he or she suffered an injury-in-fact, that is "concrete and particularized" and "actual or imminent," and not merely "conjectural or hypothetical;" (2) the defendant's complained of conduct caused that injury; and (3) it is likely, "as opposed to merely speculative," that a favorable decision by the court will redress the injury.  *Winer Family Trust v. Queen*, 503 F.3d 319, 325 (3d Cir. 2007) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  The plaintiff bears the burden of establishing constitutional standing.  *Id.*

The Supreme Court recently explained that "[f]or an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (internal quotations omitted).  The injury-in-fact must also be "concrete," which means "real" and "not abstract." *Id.* at 1556.  However, "concrete" is not necessarily synonymous with "tangible." *Id.*  "[B]ecause Congress is well positioned to identify intangible harms that meet minimum Article III requirements, its judgment is also instructive and important." *Id.* at 1555. The Supreme Court emphasized that "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to

sue to vindicate that right." *Id.* at 1549.  Thus, the Supreme Court made clear that "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.*

To have standing to pursue her TCPA claim, Plaintiff must allege that Defendant violated her "legally protected interest." *Lujan*, 504 U.S. at 560.  Plaintiff contends that Defendant violated her privacy interests when she received the calls and that Defendant violated her economic interests because she purchased airtime minutes for her cell phones.  To address Plaintiff's argument that her privacy interests were invaded, the Court must first examine the purpose of the TCPA.

Congress enacted the TCPA to protect consumers from "the proliferation of intrusive, nuisance [telemarketing] calls to their homes." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012) (internal quotations omitted).  Although most states had enacted legislation restricting telemarketing, members of Congress believed that federal law was necessary because telemarketers could evade state law through interstate operations.  *See id.*  The TCPA therefore prohibits "any person within the United States, or any person outside the United States if the recipient is within the United States," from using prerecorded messages to call residential phone lines without prior consent, "unless the call . . . is exempted by rule or order by the Commission under paragraph 2(B)."  47 U.S.C. § 227(b)(1)(B).  Paragraph 2(B) provides that the FCC may exempt noncommercial calls, *see id.* § 227(b)(2)(B)(i), and commercial calls if they "will not adversely affect the privacy rights that this section is intended to protect" and "do not include the transmission of any unsolicited advertisement," *see id.* § 227(b)(2)(B)(ii)(I)-(II).

In enacting the TCPA, Congress's intent "was to protect consumers from the nuisance, invasion of privacy, cost, and inconvenience that autodialed and prerecorded calls generate." *In re Rules Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. at 7979-80. Specifically, "Congress found that consumers consider these kinds of calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy." *Id.* at 7980 (internal quotations omitted). Congress therefore concluded that "banning such calls, except when made for an emergency purpose or when the called party consents to receiving the call, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion." *Id.* (internal quotations omitted). Senator Fritz Hollings, the sponsor of the TCPA, stated that "[c]omputerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall." *Mims*, 132 S. Ct. at 752.

Initially, the Court notes that several district courts, including district courts within the Third Circuit Court of Appeals, have held that a plaintiff demonstrates a violation of privacy interests, and therefore an injury-in-fact, after receiving automated calls. *See, e.g., Schumacher v. Credit Prot. Ass'n*, No. 4:13-CV-164, 2015 U.S. Dist. LEXIS 132752, at *15 (S.D. Ind. Sept. 30, 2015) (holding that the plaintiff had constitutional standing because he received over fifty calls over three months from an automated caller); *Ikuseghan v. Multicare Health Sys.*, No. 14-CV-5539, 2015 U.S. Dist. LEXIS 99175, at *5-6 (W.D. Wash. July 29, 2015) (holding that the plaintiff had standing because the defendant violated her privacy by making unsolicited, automated calls to her cell phone); *De Los Santos v. Millward Brown, Inc.*, No. 13-CV-80670, 2014 U.S. Dist. LEXIS

88711, at *8 (S.D. Fla. June 29, 2014) ("[B]ecause Defendant has invaded Plaintiff's legally

protected interest in being free from autodialed calls, Plaintiff has standing to sue."); *Martin v.*

*Leading Edge Recovery Solutions, LLC*, No. 11-CV-5886, 2012 U.S. Dist. LEXIS 112795, at *10 (N.D.

Ill. Aug. 10, 2012) (concluding that the plaintiffs' privacy interests were violated because "they

were forced to tend to unwanted calls"); *Anderson v. AFNI, Inc.*, No. 10-CV-4064, 2011 U.S. Dist.

LEXIS 51368, at *16 (E.D. Pa. May 11, 2011) (finding that the plaintiff demonstrated an injury-in-

fact because she received nearly fifty calls over eight months from an automated caller).  As the

parties recognize, however, the facts of the instant case have not arisen in other TCPA actions

because Plaintiff has admitted that she files TCPA actions as a business.  At her deposition,

Plaintiff testified as follows:

> Q.    [W]hat prompted you to bring this lawsuit?
> A.    Wells Fargo was calling me a phone -- on a phone.
> Q.    Okay.  Did anyone suggest to you to bring this lawsuit?
> A.    Suggest to bring a lawsuit?  Yes.
> Q.    Who?
> A.    Randy Miller.
> Q.    Who is Randy Miller?
> A.    My best friend from Lincoln, Nebraska.
> Q.    Okay.  Any why did Randy Miller suggest that?
> A.    Well, he was the first to mention the possibility of me doing TCPA violations as a business.
> Q.    Okay.  So are you bringing these lawsuits as a business?
> A.    Yes, I am.

(ECF No. 44-4 at 4-5.)  When questioned about the number of lawsuits she has filed, Plaintiff

testified:

> Q.    Have you -- you've filed other TCPA lawsuits, correct?
> A.    Yes, ma'am.
> Q.    How many?
> A.    Approximately, nine, I believe.  I don't know how many.

Q.      Against whom?

A.      Comenity, Credit One, Navient, Wells Fargo.

Q.      Why did you file so many lawsuits?

A.      Because I'm allowed to.

Q.      What do you mean by you're allowed to?

A.      They're calling my number as a wrong party, and I've told people that --
        I've told them not to call and they continue to call.

(*Id.* at 5.)  When questioned about her cell phones, Plaintiff testified:

Q.      More than 40 cell phone numbers?  Getting up there.

A.      Yes.  Yes.  Yes.  Can I tell you how they fit when I brought them here?

Q.      Sure.

A.      They fit in a shoebox.

Q.      Okay.

A.      Does that give you a . . .

Q.      Not really.

A.      Okay.

Q.      I don't know how big they are.  Okay.
        So at the point of 40 would you say that you can't estimate?  Do you have
        more then 40 cell phone numbers or you cannot say?

A.      I don't know.

Q.      You don't know.  Okay.  But you have more than 35?

A.      I do.

Q.      And you don't know if you have more than 40?

A.      I don't.  I'm sorry.

Q.      Okay.

A.      I don't count them.  I haven't counted them.

(*Id.* at 12-13.)  In discussing her business, Plaintiff testified:

Q.      Why do you have so many cell phone numbers?

A.      I have a business suing offenders of the TCPA business -- or laws.

Q.      And when you say business, what do you mean by business?

A.      It's my business.  It's what I do.

Q.      So you're specifically buying these cell phones in order to manufacture a
        TCPA?  In order to bring a TCPA lawsuit?

A.      Yeah.

(*Id.* at 13-14.)  Plaintiff also described the process of activating her cell phones:

Q.      When you purchase these phones, walk me through the process of how these cell phones get activated?

A.      I use my cell phone and I dial the number, and they ask me what ZIP code I want to put it in, and they also ask me the serial number.

Q.      Okay.  And so you -- do you select the ZIP code?

A.      Yes, I do.

Q.      And what ZIP code did you select or do you select?

A.      Normally, Florida number -- Florida ZIP codes.

Q.      And why is that?

A.      Because there's a depression in Florida.

Q.      Okay.  So you're -- what do you mean by there's a depression in Florida? Why are you selecting a Florida number?

A.      I knew that people had hardships in Florida, that they would be usually defaulting on their loans or their credit cards.

(*Id.* at 15-16.)  When questioned about her TCPA lawsuits, Plaintiff testified:

Q.      So is there another purpose that you use these cell phones for other than --

A.      No.

Q.      -- to -- no.
        So the purpose is to bring a TCPA lawsuit?

A.      Correct.

Q.      Does anyone you know ever call you at these phone numbers?

A.      No, ma'am.

Q.      Did you ever use any of these phone numbers to call anyone?

A.      No, ma'am.

                                *      *      *

Q.      How did you use this phone number after it was activated, if at all?

A.      For my business.

Q.      Okay.  When you say for your business, what do you mean?

A.      Suing clients like yours, Wells Fargo, for violating the TCPA.

Q.      Okay.  So would you keep -- you mentioned a shoe box.  Would you just keep the phone in a shoe box?

A.      No.  No.  No.  No.  You have to -- you have to plug them in to keep them active, batteries active.

Q.      Okay.  And then what would you do with these phones?  Would you wait for them to ring?

A.      Yes.

Q.      Okay.  And then when they ring, what would you do?

> A.      I would -- different -- different ways.  I would initially pick it up to see
>          who it was and document that or I would -- if I had already told them not
>          to call, I would just document it on a log that you've -- I believe you have.
> Q.      Did you -- was it your practice to pick up each of the phones when they
>          rang the first time?
> A.      I would try to, yes.

(*Id.* at 16-17, 20-21.)  When questioned regarding whether she requested that the callers stop

calling, Plaintiff testified:

> Q.      Did you also indicate to those callers to stop calling?
> A.      Yes.  Some of the times.  Not all of the times.  I would have to look at my
>          logs.
> Q.      Okay.  And when you picked up the phone -- do you know if you picked
>          up the phone ever with regard to Wells Fargo?
> A.      Yes.
> Q.      And do you know if you spoke with someone?
> A.      Yes.
>
> *      *      *
>
> Q.      If it was your intention for calls to continue, because as you've indicated
>          you believe this is a business to bring a TCPA lawsuit, why would you
>          tell the caller to stop calling?
> A.      I was hopefully going to ask my lawyers to do trebling with knowing and
>          willful.
> Q.      Can you explain to me what that means?
> A.      From my understanding is if a debt collector or a telemarketer continues
>          to call and they knowingly and willingly continue to do it, it can be a fine
>          of trebling.

(*Id.* at 22-24.)

As her testimony establishes, Plaintiff's privacy interests were not violated when she

received calls from Defendant.  Indeed, Defendant's calls "[did] not adversely affect the privacy

rights that [the TCPA] is intended to protect."  47 U.S.C. § 227(b)(2)(B)(ii)(I)-(II).  Because

Plaintiff has admitted that her only purpose in using her cell phones is to file TCPA lawsuits,

the calls are not "a nuisance and an invasion of privacy."  *In re Rules Implementing the Tel.*

*Consumer Prot. Act of 1991*, 30 FCC Rcd. at 7980.  Thus, Plaintiff was not required to "tend to unwanted calls," *Martin*, 2012 U.S. Dist. LEXIS 112795, at *10, and the calls did not constitute "the nuisance, invasion of privacy, cost, and inconvenience" from which Congress intended to protect consumers, *In re Rules Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. at 7979-80.  The Court therefore must reject Plaintiff's argument that she suffered an injury-in-fact because her privacy interests were violated.

Regarding Plaintiff's argument that she suffered an injury-in-fact because her economic interests were violated, Defendant asserts that Plaintiff has not suffered an injury-in-fact because "Plaintiff does not allege or seek any actual damages in this case." (ECF No. 44 at 23.) The Court initially notes that "an injury-in-fact may be satisfied by the invasion of a legal right that Congress created even in the absence of monetary damages." *Schumacher*, 2015 U.S. Dist. LEXIS 132752, at *14, 16 n.4 (rejecting the defendant's argument that the plaintiff did not have standing because he did not seek actual damages); *see also Martin*, 2012 U.S. Dist. LEXIS 112795, at *14 ("Plaintiffs need not allege monetary loss in order to bring suit for violations of the TCPA.").  Additionally, several courts have held that a plaintiff demonstrates a violation of economic interests, and therefore an injury-in-fact, after suffering monetary loss.  *See, e.g.*, *Ikuseghan*, 2015 U.S. Dist. LEXIS 99175, at *5 (explaining that "[e]conomic injury is a sufficient basis for Article III standing" and holding that the plaintiff suffered an economic injury because calls were charged against the cell phone minutes she purchased); *Martin*, 2012 U.S. Dist. LEXIS 112795, at *11 (finding that the plaintiffs "were directly injured by defendants' violations of the TCPA because they had to spend time tending to unwanted calls and their cell phone minutes

were depleted"); *Torres v. Nat'l Enter. Sys.*, No. 12-CV-2267, 2012 U.S. Dist. LEXIS 110514, at *5-6 (N.D. Ill. Aug. 7, 2012) (concluding that the plaintiff suffered a "monetary harm" because the calls "used up [her] cellular phone minutes"). However, as discussed above and as the parties recognize, the facts of the instant case have not arisen in other TCPA actions. When questioned about the purchase of her cell phones, Plaintiff testified:

> Q. Are you purchasing these phones purposefully to cause them to ring?
> A. Yes.
> Q. Okay. And you understand that the phones ringing is -- is with -- is it your intention that these phone calls are going to result then in some sort of a demand whether it's pre-litigation or an actual lawsuit?
> A. I believe so.

(ECF No. 44-4 at 26.)  In discussing the two cell phones at issue in the instant matter, Plaintiff testified:

> Q. [D]o you know where you bought these two specific ones?
> A. No, I don't.
> Q. Did you have to purchase a coverage plan?
> A. No. They're prepaid.
> Q. Okay. Any they're prepaid for how many minutes?
> A. Initially, 60 minutes. Sixty minutes. No. No. No. No. Ten minutes for 60 days. I'm sorry.
> Q. Okay. And did you ever add minutes to these phones?
> A. Yes, I did.
> Q. Do you know if you added minutes specifically to the two phone numbers at issue here?
> A. Yes, I did.
> Q. Okay. How many minutes did you add?
> A. I have no way of knowing.
> Q. How much does it cost to add minutes?
> A. I use a 19.99 airtime card.
> Q. And how many times have you added minutes to the various --
> A. I have no way of knowing.
> Q. Okay. Have you added minutes to almost all of the 35 phones?
> A. Yes, ma'am.

> Q.     Okay.  And the purpose of adding minutes is so that they will -- these phones will receive more calls?
>
> A.     Correct.

(*Id.* at 17-19.)

Plaintiff's testimony once again establishes that she has not suffered an injury-in-fact.  It is well settled that a plaintiff "cannot manufacture standing by choosing to make expenditures based on hypothetical future harm that is not certainly impending."  *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1143, 1151 (2013) (finding that "Respondents' contention that they have standing because they incurred certain costs as a reasonable reaction to a risk of harm is unavailing--because the harm respondents seek to avoid is not certainly impending" and holding that "respondents cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending"); *see also Reilly v. Ceridian Corp.*, 664 F.3d 38, 46 (3d Cir. 2011) ("[The plaintiffs'] alleged time and money expenditures to monitor their financial information do not establish standing, because costs incurred to watch for a speculative chain of future events based on hypothetical future criminal acts are no more 'actual' injuries than the alleged 'increased risk of injury' which forms the basis for [the plaintiffs'] claims."); *Crisafulli v. Ameritas Life Ins. Co.*, No. 13-CV-5937, 2015 U.S. Dist. LEXIS 56499, at *10 (D.N.J. Apr. 29, 2015) (holding that the plaintiff "may not rely on expenses for identity theft protection as a basis for standing"); *In re Horizon Healthcare Servs. Data Breach Litig.*, No. 3:13-CV-7418, 2015 U.S. Dist. LEXIS 41839, at *18 n.5 (D.N.J. Mar. 31, 2015) (holding that the plaintiffs did not have standing because they "may not rely on the expense of credit monitoring and other preventative measures for standing").

Because Plaintiff has admitted that her only purpose in purchasing her cell phones and minutes is to receive more calls, thus enabling her to file TCPA lawsuits, she has not suffered an economic injury. *See, e.g., Leyse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316, 323 (3d Cir. 2015) (explaining that "only certain plaintiffs will have suffered the particularized injury required to maintain an action in federal court for a [TCPA] violation" and that "[s]omeone with a generalized interest in punishing telemarketers, for example, would not qualify on that basis alone"); *Schumacher*, 2015 U.S. Dist. LEXIS 132752, at *13 (explaining that "an interest in statutory damages cannot be the sole injury to satisfy Article III requirements"); *Cellco P'ship v. Wilcrest Health Care Mgmt.*, 2012 U.S. Dist. LEXIS 64407, at *23-25 (D.N.J. May 8, 2012) (in concluding that the plaintiffs lacked standing, noting the significance that "Plaintiffs have abandoned any claim to actual damages, but solely seek statutory damages of $500 per call" and stating that "[t]he TCPA . . . anticipates damages on an individual basis because the contemplated plaintiff is an individual natural person or business *with a limited number of phone lines on which it might receive telemarketing calls*") (emphasis added). The Court therefore must reject Plaintiff's argument that she suffered an injury-in-fact because her economic interests were violated.

The Court finds unavailing Plaintiff's argument that well-settled law provides that she has constitutional standing. Specifically, Plaintiff contends that "Article III standing can exist even where the plaintiff purposefully chose to interact with a defendant engaged in illegal misconduct." (ECF No. 54 at 26 (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982).) In *Coleman*, the United States Supreme Court determined that "testers," or "individuals who,

without an intent to rent or purchase a home or apartment, pose as renters or purchasers for the

purpose of collecting evidence of unlawful steering practices," had standing.  455 U.S. at 373.

*Coleman* is distinguishable from the instant matter because the tester was not collecting evidence

as a business.   Rather, the tester collected evidence to establish that she was told that

apartments were not available, while white testers were informed that apartments were

available.  *Id.* at 374.   The tester suffered an injury-in-fact because the purpose of the Fair

Housing Act was to "prohibit[] discriminatory refusals to sell or rent."  *Id.*   Therefore, unlike

Plaintiff, the tester in *Coleman* suffered the very harm that the Fair Housing Act was designed to

prevent.  Similarly, Plaintiff's reliance upon *Fitzhenry v. ADT Corp.*, No. 14-CV-80180, 2014 U.S.

Dist. LEXIS 166243 (S.D. Fla. Nov. 3, 2014), is inapposite.  In *Fitzhenry*, the District Court held

that the plaintiff, who was a "professional plaintiff" and "pursue[d] TCPA claims as a source of

income," had standing.  *Id.* at *11-12.   The Court disagrees with and is not bound by the

*Fitzhenry* decision.   Moreover, the District Court in *Fitzhenry* did not conduct an in-depth

analysis of constitutional and prudential standing.  *See id.*  Additionally, the evidentiary record

in *Fitzhenry* did not contain the extensive and undisputed admissions present in this case.

Finally, the Court notes that Defendant has argued that Plaintiff failed to respond to its

requests for admission, which were served upon Plaintiff on November 5, 2015.  (ECF No. 44 at

11 n.4.)  Defendant contends that, as a result of Plaintiff's failure to respond, the requests for

admission are deemed admitted.   (*Id.*)  Defendant's requests for admission included several

topics related to Plaintiff's business of filing TCPA lawsuits.  (*See* ECF No. 44-5.)  In response to

Defendant's argument, Plaintiff asserts that she did not respond to the requests for admission

because "[she] was required to respond on December 5, 2015, well after the close of discovery on December 1, 2015." (ECF No. 54 at 30.)

The Court's initial scheduling order, which was issued on June 30, 2015, included a discovery deadline of December 1, 2015, and stated that "[a]ll interrogatories, notices of deposition, requests for admissions and requests for production shall be served within sufficient time to allow responses to be completed and filed prior to the close of discovery." (ECF No. 16 at 2.)  A party must respond to requests for admission within thirty days after being served.  FED. R. CIV. P. 36(a)(3).  Thus, because Defendant did not serve Plaintiff with its requests for admission until November 5, 2015, the Court must reject its argument that the requests are deemed admitted.  *See, e.g.*, *Allen v. DeRose*, No. 1:07-CV-1720, 2009 U.S. Dist. LEXIS 63335, at *3 n.1 (M.D. Pa. July 23, 2009) (noting that the plaintiff's discovery request was untimely because he served it only two weeks before the close of discovery); *Tech. Dev. Co. v. Onischenko*, No. 05-CV-4282, 2009 U.S. Dist. LEXIS 9288, at *6-7 (D.N.J. Feb. 9, 2009) (holding that the defendant's discovery requests were untimely because they were not served in time for the responses to be due before the discovery deadline); *Nesselrotte v. Allegheny Energy*, No. 06-CV-1390, 2008 U.S. Dist. LEXIS 36100, at *4-5 (W.D. Pa. Apr. 30, 2008) (finding that the plaintiff's discovery requests were untimely because the defendant's deadline to respond was three days after the expiration of the discovery period).  The Court therefore finds that it is not in the interest of justice to consider Defendant's requests for admission as part of the record. Nonetheless, the admissions contained in Plaintiff's deposition testimony, as delineated above,

amply support the Court's conclusion that Plaintiff has not suffered an injury-in-fact and therefore lacks constitutional standing to assert her claim against Defendant.

### b.    Prudential Standing

Even if, assuming arguendo, Plaintiff had suffered an injury-in-fact, Plaintiff would still lack standing because she does not have prudential standing. *See UPS Worldwide Forwarding v. United States Postal Serv.*, 66 F.3d 621, 625 (3d Cir. 1995) ("Standing has constitutional and prudential components, both of which must be satisfied before a litigant may seek redress in the federal courts."). Prudential standing requires that:  (1) "a litigant assert his or her own legal interests rather than those of third parties;" (2) "courts refrain from adjudicating abstract questions of wide public significance which amount to generalized grievances;" and (3) "a litigant demonstrate that her interests are arguably within the zone of interests intended to be protected by the statute, rule or constitutional provision on which the claim is based." *Id.* at 626 (internal quotations and alterations omitted).

To satisfy the first element of prudential standing, "the litigant [must] demonstrate that it has asserted its 'own legal interests rather than those of third parties.'" *Id.* at 627 (quoting *Wheeler v. Travelers Ins. Co.*, 22 F.3d 534, 538 (3d Cir. 1994)). Specifically, "[t]he first element only mandates that litigants assert their own legal rights, not those of others." *Id.* "This test generally comes into play in those cases in which a party seeks to challenge agency action that affects another party." *Id.* at 627-28. Thus, Plaintiff has satisfied the first element of prudential standing because she is asserting her own legal interests.

The second element of prudential standing "admonishes courts to 'refrain from adjudicating abstract questions of wide public significance which amount to generalized grievances.'" *Id.* at 628 (quoting *Wheeler*, 22 F.3d at 538). Examples of generalized grievances include cases in which plaintiffs sued to protest the Vietnam War and to challenge the legality of the Central Intelligence Agency. *Id.* (citing *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 220 (1974), and *United States v. Richardson*, 418 U.S. 166, 175 (1974)). Plaintiff's action is therefore not the type of "generalized grievance" that precludes prudential standing. *See, e.g.*, *Robins*, 136 S. Ct. at 1548 n.7 ("The fact that an injury may be suffered by a large number of people does not of itself make that injury a nonjusticiable generalized grievance."); *Anderson*, 2011 U.S. Dist. LEXIS 51368, at *17 (finding that the plaintiff's TCPA action did not amount to generalized grievances because "she assert[ed] a specific grievance against [the defendant]").

The parties dispute whether Plaintiff's interests are arguably within the zone of interests intended to be protected by the TCPA. "'[T]he zone of interest test is a guide for deciding whether, in view of Congress' evident intent to make every agency action presumptively reviewable, a particular plaintiff should be heard to complain of a particular agency decision.'" *Chem Serv., Inc. v. Envtl. Monitoring Sys. Lab.-Cincinnati*, 12 F.3d 1256, 1262 (3d Cir. 1993) (quoting *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399 (1987)). "'[T]he test denies a right of review if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit.'" *Id.* (quoting *Clarke*, 479 U.S. at 399). In addressing a statute's purpose, a court "'[is] not limited to considering the statute under which [the plaintiff] sued, but may consider any provision that

helps us to understand Congress' overall purposes in the [statute].'"  *Id.* at 1264 (quoting *Clarke*, 479 U.S. at 401).

There must be an "'integral relationship'" between the statutory provisions that a plaintiff claims have been violated and the provisions under which the plaintiff claims standing. *Davis by Davis v. Philadelphia Hous. Auth.*, 121 F.3d 92, 98 n.8 (3d Cir. 1997) (quoting *Air Courier Conference v. Am. Postal Workers Union*, 498 U.S. 517, 530 (1991)).  "This 'integral relationship' requirement, however, only necessitates that 'the plaintiff must establish that the injury he complains of . . . falls within the 'zone of interests' sought to be protected *by the statutory provision whose violation forms the legal basis for his complaint*."  *Id.* (quoting *Bennett v. Spear*, 520 U.S. 154, 176 (1997) (emphasis in original)).

"In applying the zone of interest test, the Court has focused its inquiry on the Congressional intent of the statute and whether the complainant's interests were 'among the sorts of interests those statutes were specifically designed to protect.'"  *Chem Serv., Inc.*, 12 F.3d at 1262 (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 886 (1990)).  A court therefore must "determine, using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim."  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1387 (2014).

In discussing constitutional standing above, the Court examined in depth Congress's intention to protect consumers from "the proliferation of intrusive, nuisance [telemarketing] calls to their homes" by enacting the TCPA.  *Mims*, 132 S. Ct. at 745 (internal quotations omitted); *see also supra* Part V.A.  In addition to its above analysis, the Court notes that the Third

Circuit Court of Appeals has addressed the zone of interests protected by the TCPA.  *See Leyse*, 804 F.3d 316.  Specifically, the Third Circuit Court of Appeals explained that "[i]n passing the Act, Congress was animated by outrage over the proliferation of prerecorded telemarketing calls to private residences, which consumers regarded as an intrusive invasion of privacy and a nuisance."  *Id.* at 325-26 (concluding that "a regular user of the phone line who occupies the residence being called undoubtedly has the sort of interest in privacy, peace, and quiet that Congress intended to protect") (internal quotations and alterations omitted); *see also Gager*, 727 F.3d at 271 (stating that "[t]he TCPA is a remedial statute that was passed to protect consumers from *unwanted* automated telephone calls") (emphasis added).

As discussed above, Plaintiff has not suffered an injury-in-fact because her privacy and economic interests were not violated when she received calls from Defendant.  *See supra* Part V.A.  Similarly, Plaintiff's interests are not within the zone of interests intended to be protected by the TCPA.  Plaintiff's interests, which include purchasing cell phones with the hope of receiving calls from creditors for the sole purpose of collecting statutory damages, are not "among the sorts of interests [the TCPA was] specifically designed to protect."  *Chem Serv., Inc.*, 12 F.3d at 1262 (internal quotations omitted).  Given her admissions, which are described above, the Court finds that Plaintiff's interests "'are so marginally related to or inconsistent with the purposes implicit in the [TCPA] that it cannot reasonably be assumed that Congress intended to permit the suit.'"  *Id.* (quoting *Clarke*, 479 U.S. at 399).  Indeed, it is unfathomable that Congress considered a consumer who files TCPA actions as a business when it enacted the TCPA as a result of its "outrage over the proliferation of prerecorded telemarketing calls to private

35

residences, which consumers regarded as an intrusive invasion of privacy and a nuisance." *Leyse*, 804 F.3d at 325 (internal quotations and alterations omitted).

Because Plaintiff does not have "the sort of interest in privacy, peace, and quiet that Congress intended to protect," *id.* at 326, the Court finds that she has failed to establish that the injury she complains of "falls within the zone of interests sought to be protected by the statutory provision whose violation forms the legal basis for [her] complaint," *Davis by Davis*, 121 F.3d at 98 n.8 (internal quotations and emphasis omitted).  *See, e.g., Maiden Creek Assocs., L.P. v. United States DOT*, 123 F. Supp. 3d 638, 649 (E.D. Pa. 2015) (noting that courts have held that plaintiffs "whose sole motivation . . . was their own economic self-interest and welfare" were not within the zone of interests to be protected by the National Environmental Policy Act) (internal quotations omitted); *Cellco P'ship*, 2012 U.S. Dist. LEXIS 64407, at *17, 23 (holding that the plaintiffs did not fall within the zone of interests protected by the TCPA because "they attempt[ed] to use the statute in a way not intended or contemplated by Congress" and because "[t]heir damages are not of the vexatious and intrusive nuisance nature sought to be redressed by Congress in enacting the TCPA"); *cf. Anderson*, 2011 U.S. Dist. LEXIS 51368, at *17 (holding that the plaintiff had prudential standing because "*her interests in avoiding harassment* via the telephone line installed in her home are not so marginally related to or inconsistent with the purposes implicit in the statute that they fail to fall within the TCPA's zone of interests")  (internal quotations omitted) (emphasis added).   Accordingly, not only does Plaintiff lack constitutional standing, but she also lacks prudential standing.  Because both constitutional and prudential standing must be established "before a litigant may seek redress in the federal

courts," *UPS Worldwide Forwarding*, 66 F.3d at 625, the Court will grant Defendant's motion for summary judgment.

As a final matter, the Court notes that "[t]he district courts are coping with large volumes of litigation, and parties with real losses frequently are delayed in obtaining adjudications on the merits." *Wheeler*, 22 F.3d at 539. "The mission of the federal courts best can be fulfilled if the courts recognize and enforce the constitutional and prudential limitations on the exercise of their jurisdiction." *Id.* at 539-40. Enforcing constitutional and prudential standing ensures that "the courts will have time to devote to claims by parties who actually have been injured and may be entitled to relief on their own behalf." *Id.* at 540.

**B.      Plaintiff's Cross-Motion for Summary Judgment**

Plaintiff has filed a cross-motion for summary judgment, arguing that she has established each element of the TCPA and is entitled to judgment. (*See* ECF No. 56.) Having concluded that Plaintiff lacks standing to assert her claim against Defendant, the Court need not address Plaintiff's cross-motion for summary judgment.

**VI.      Conclusion**

For the foregoing reasons, Plaintiff has not established that she has constitutional or prudential standing to assert her claim against Defendant. Accordingly, Defendant's motion for summary judgment is **GRANTED**. Plaintiff's cross-motion for summary judgment is **DENIED**.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MELODY STOOPS, | ) | |
| | ) | CIVIL ACTION NO. 3:15-83 |
| Plaintiff, | ) | |
| | ) | JUDGE KIM R. GIBSON |
| v. | ) | |
| | ) | |
| WELLS FARGO BANK, N.A., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

**AND NOW**, this 24th day of June, 2016, upon consideration of Defendant Wells Fargo
Bank, N.A.'s motion for summary judgment (ECF No. 44) and Plaintiff Melody Stoops' cross-
motion for summary judgment (ECF No. 56), and for the reasons set forth in the accompanying
memorandum, **IT IS HEREBY ORDERED** as follows:

(1) Defendant Wells Fargo Bank, N.A.'s motion for summary judgment is **GRANTED**.

(2) Plaintiff's Melody Stoops' cross-motion for summary judgment is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment in favor of
Defendant Wells Fargo Bank, N.A. and against Plaintiff Melody Stoops and shall mark this case
closed.

BY THE COURT:

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**